MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
ROXANNE BAHADURJI (SBN 290117)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Proposed Attorneys for Debtor-in-Possession,
AQH, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

AQH, LLC,

          Debtor.

Case No. 15-50553-11-ASW

Chapter 11

MOTION FOR AUTHORITY TO PAY PRE-PETITION WAGES AND TAXES

Date:    TBD
Time:    TBD
Place:   280 South First Street, Room 3020
           San Jose, California

Honorable Arthur W. Weissbrodt

COMES NOW AQH, LLC, Debtor-in-Possession herein, moving for authority to pay pre-petition wages within the priority amount and to pay taxes as they become due pursuant to Bankruptcy Code Sections 105(a), 363(b), 507(a)(4)(A) & (a)(8), 1122(b) and 1129(a)(9)(c), and respectfully represents as follows:

## I. INTRODUCTION

1.    As described in the accompanying Motion for Authority to Use Cash Collateral, the Debtor is a Bitcoin transaction processing and Blockchain data center infrastructure operation. Bitcoin entails peer-to-peer transfers of value recorded on a public ledger of all transactions to prevent double-spending. Bitcoin is issued to transaction processers who contribute computer processing power to maintain said ledger. Verifying vast numbers of encrypted transactions recorded upon the ledger requires enormous computing power. Accordingly, transaction processors

1

dedicate their highly specialized computers servers to such work and receive newly-issued Bitcoin and small transaction fees in return. For further particulars, reference is made to the aforesaid Motion for Authority to Use Cash Collateral.

2. In order to perform the above-described activities, the Debtor has entered into independent contractor agreements with seven individuals. The Debtor pays the independent contractors on a weekly basis, except for Thomas Bautista, who is paid periodically as work is completed and submitted. In addition, the Debtor has three employees, namely: (1) Anthony Brough, who is the Debtor's Chief Operations Officer and Chief Financial Officer; (2) Sean Walsh, who is the Debtor's Chief Executive Officer; and (3) Yan Ebyam, an independent contractor who is the Debtor's facilities engineer.

3. The Debtor filed its petition on an emergency basis on February 19, 2015, in the midst of a payroll period. Prior to that date, the Debtor paid the independent contractors in the ordinary course of business on February 6, 2015, the sum of $3,900.00 and on February 13, 2015, the sum of $3,603.78. The Debtor paid said contractors the total amount of $6,480.00 post-petition on February 20, 2015. The following table summarizes said payments:

| Employee | February 20, 2015 | February 13, 2015 | February 6, 2015 |
|---|---|---|---|
| Jeremy Shoemaker | N/A | N/A | $ 570.00 |
| Jacob Lopez | $ 800.00 | $ 640.00 | $ 800.00 |
| Michael White | $ 600.00 | $ 600.00 | $ 480.00 |
| Austin Roberts | $ 800.00 | $ 800.00 | $ 650.00 |
| Brian Friend | $ 800.00 | $ 800.00 | $ 800.00 |
| Tricia Hayward | $ 480.00 | $ 592.50 | $ 600.00 |
| Thomas Bautista | $ 3,000.00 | $ 171.28 | - |
| Total Wages | $ 6,480.00 | $ 3,603.78 | $ 3,900.00 |

4. Brough's salary is $12,000 per month plus employment tax expenses (e.g. unemployment insurance and medicare) of $492, for a total of $12,492. Brough is paid twice per month; he was last paid on February 15 and will next be paid on February 28, 2015. The Debtor estimates the pre-petition portion of said payment to be no more than $3,123.

5. Ebyam's salary is $3,000 per month, paid twice per month. Ebyam's last payment of $1,500 was paid on February 15 and his next payment of $1,500 is due on February 28, 2015, which

2

will include a small amount on account of pre-petition work.

6. All of the pre-petition amounts were accrued within the priority period (180 days) and are less than the priority amount ($12,475.00) provided in Bankruptcy Code Section 507(a)(4)(A). Moreover, said would likely be paid in full on the effective date of a chapter 11 plan pursuant to a convenience class under Bankruptcy Code Section 1122(b) (with the potential exception of Mr. Bautista's claim). There are no claims for sick leave, vacation pay or other benefits. Accordingly, payment of said claims will not upset the order of priorities established under the Bankruptcy Code.

7. Walsh's pre-petition compensation was deferred, and the Debtor does not request authority to pay Walsh on account of said deferred compensation. Rather, the Debtor intends to pay Walsh $4,000 on February 28, 2015, which the Debtor estimates to be the portion of his compensation attributable to post-petition work and is not intended to include any pre-petition portion. Walsh's compensation is further discussed in the accompanying Motion for Authority to Use Cash Collateral.

8. The services of the independent contractors are critical to the continued operation of the Debtor. Accordingly, the Debtor requests authority to pay said pre-petition wages to the independent contractors and to pay post-petition wages as they come due.

9. The Debtor is a limited liability company, and its income taxes pass through to its members. The Debtor is not aware of any pre-petition tax claims owed by the Debtor. However, although the Debtor is current on all of its taxes that have become due as of the petition date, there may be a delay between the time when the Debtor incurs an obligation to pay certain taxes and the date such taxes become due, as is typical for California businesses. Such taxes (if any) are entitled to priority status under Bankruptcy Code Section 507(a)(8)(C) and must be paid in full under a chapter 11 plan pursuant to Bankruptcy Code Section 1129(a)(9)(c). In addition to the sales, use and franchise taxes paid by a typical business, the Internal Revenue Service considers Bitcoin to be property subject to capital gains tax, and Bitcoins may accrue small amounts of capital gains taxes between the time they are obtained and the time they are sold (typically the same day). As a convenience to Bitcoin transaction processors, the Bitcoin exchange utilized by the Debtor to sell Bitcoin automatically calculates the capital gains taxes and provides reports of capital gains and

3

losses. It would be burdensome to apportion and segregate funds to be held for such pre-petition tax claims, and the Debtor requests authority to continue paying pre- and post-petition sales, use, franchise and capital gains taxes as they become due in the ordinary course of business.

10. The Debtor's budget is sufficient to pay the aforesaid obligations, to continue to pay taxes, and to pay other regular expenses.

## II. JURISDUCTION

11. The Court has jurisdiction over this case and this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

12. The statutory bases for the relief requested herein are Bankruptcy Code Sections 105(a), 363(b), 507(a)(4)(A) & (a)(8), 1122(b) and 1129(a)(9)(c).

13. The Debtor is a small business debtor as defined by Bankruptcy Code Section 101(51D).

## IV. ARGUMENT

### A. PAYMENT OF WAGES FOR PRE-PETITION AMOUNTS EARNED WITHIN THE PRIORITY AMOUNT AND PERIOD SHOULD BE AUTHORIZED

14. The Debtor should be authorized to pay the pre-petition wages to the independent contractors and to allow these payments to clear, all within the priority amount and period provided in Bankruptcy Code Section 507(a)(4)(A). The statute provides that wages, among other compensation, accrued within 180 days prior to the petition date are entitled to priority of distribution if the amount is $12,475.00 or less. As discussed above, each independent contractor's aggregate pre-petition wages is less than $12,475.00. There are no claims for vacation pay, sick leave or other benefits. Payment of the priority amounts does not upset the priorities of distribution set forth in the Bankruptcy Code and will not prejudice general unsecured creditors. Moreover, the Debtor's employment and payment of said independent contractors is within the Debtor's sound business judgment. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (applying business judgment rule under § 363(b) and holding that the debtor articulated "sound business reasons for its decision to pay pre-petition wages.").

15. It is generally recognized that the continuation of a stable employee base and harmonious employee relations in operating a Chapter 11 case is critical to a successful reorganization. As the court noted in *In re Chateauguay Corporation*, 116 B.R. 887 (Bankr. S.D.N.Y. 1990) "[e]mployee good will and contentment is an asset which is vital to the continuation of a debtor's business operations and its ability to effectively reorganize during the Chapter 11 process." *Id.* at 898 (citations omitted). Failure to pay the independent contractors will likely result in ill will and discontent; they may consequently withdraw from performing services for the Debtor.

16. Courts have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts. *In re Adams Apple*, 829 F.2d 1484, 1490 (9th Cir. Wash. 1987). This is especially appropriate in the case of honoring priority claims that would otherwise inevitably be paid. Numerous Chapter 11 cases in this District have authorized debtors-in-possession to pay pre-petition wages and benefits within the statutory priority cap under 11 U.S.C. § 507(a)(4). See, e.g., *In re Round Table Pizza, Inc.*, Case No. 11-41431-RLE (Bankr. N.D. Cal. February 9, 2011); *In re Pacific Metro, LLC*, Case No. 10-55788-RLE (Bankr. N.D. Cal. June 15, 2010); *In re Globalign, Inc.*, Case No. 08-31329-DM (Bankr. N.D. Cal. July 28, 2008); *In re Heller Ehrman, LLP*, Case No. 08-32514-DM (Bankr. N.D. Cal. December 30, 2008); and *In re SecuGen Corporation*, Case No. 05-53834-ASW (Bankr. N.D. Cal. July 1, 2005).

17. It is important to note that the importance of paying the priority wages to the independent contractors rises to the level of importance necessary to pay a critical non-priority pre-petition claim in other jurisdictions. Payment of pre-petition claims is appropriate if "it is critical that the debtor deal with the claimant; [unless the debtor] deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim; and [] there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 498 (Bankr. N.D. Tex. 2002).

18. It bears repeating that the services of the independent contractors are critical to the

operation of the Debtor, and any delay or fluctuation is likely to result in discontent. If the independent contractors are not timely paid, they may abandon the Debtor. Payment to the independent contractors is warranted in light of the disruptions and harm to be avoided.

**B.     PAYMENT OF PRE-PETITION TAXES SHOULD BE AUTHORIZED**

19.     The foregoing authorities apply and militate in favor of authorizing the Debtor to pay pre-petition taxes. Such taxes are entitled to priority status under Bankruptcy Code Section 507(a)(8)(C) and must be paid in full under a chapter 11 plan pursuant to Bankruptcy Code Section 1129(a)(9)(c). To the extent that the taxes constitute "trust fund" taxes, the withholdings are not property of the estate. *In re Shank*, 792 F.2d at 832-833; *Begier v. Internal Revenue Service*, 496 U.S. at 57-60 (pre-petition payment of trust fund taxes is not avoidable preference because funds are not property of the estate). It would be burdensome to apportion and segregate funds to be held for pre-petition tax claims, and the Debtor requests authority to continue paying pre- and post-petition taxes as they become due.

## V.  PRAYER FOR RELIEF

WHEREFORE, the Debtor prays for entry of an order:

1.     Authorizing the Debtor to pay pre-petition wages up to $10,626.78, as described above;

2.     Authorizing the Debtor to pay post-petition wages as they become due;

3.     Authorizing the Debtor to pay taxes as they become due, including any pre-petition taxes; and

4.     For such other and further relief as is appropriate in the premises.

DATED: February 24, 2015          MACDONALD | FERNANDEZ LLP

By: /s/ Reno F.R. Fernandez III
    Reno F.R. Fernandez III
    Proposed Attorneys for Debtor-in-Possession,
    AQH, LLC

6