MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
ROXANNE BAHADURJI (SBN 290117)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor-in-Possession,
AQH, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>AQH, LLC,<br><br>            Debtor. | Case No. 15-50553-11-ASW<br><br>Chapter 11<br><br>MOTION TO APPROVE LOAN TO PAY UTILITY DEPOSIT AND WAGES AND SUPPLEMENTAL MOTION TO AUTHORIZE USE OF CASH COLLATERAL<br><br>(11 U.S.C. §§ 363(b)(a), (c) & 364(b))<br><br>Date: TBD<br>Time: TBD<br>Place: 280 South First Street, Room 3020<br>        San Jose, California<br><br>Honorable Arthur S. Weissbrodt |

      COMES NOW AQH, LLC, Debtor-in-Possession herein, moving for interim and final orders approving an unsecured loan pursuant to Bankruptcy Code Section 364(b) to partially pay the security deposit proposed in the accompanying Motion for Order Compelling Riverbank Local Redevelopment Agency (the "Riverbank LRA") to Provide Electricity Upon Payment of Adequate Assurance Deposit (the "Utilities Motion") and wages and related payroll expenses due on February 27, 2015; approving said use of the loan proceeds pursuant to Bankruptcy Code Section 363(b)(1); and approving the Debtor's use of cash collateral to pay the remainder of the security deposit, and respectfully represents:

///

1

## INTRODUCTORY STATEMENT – DIP FINANCING

1. The within case was commenced by filing a voluntary chapter 11 petition on February 19, 2015. A trustee has not been appointed and the Debtor is in possession of the estate.

2. As discussed in the Utilities Motion, the Debtor needs to fund an electricity security deposit of $127,080. The Debtor has at hand liquid assets estimated to be worth at least $89,100, and the Debtor requires debtor-in-possession financing to pay the estimated remainder of $37,980. The Debtor requires further financing to pay post-petition wages and related payroll expenses of $2,742.50 due on February 27, 2015. This motion requests authority to use said liquid assets (assumed to be cash collateral, but the Debtor reserves the right to contend that they are not) and obtain said financing.

3. Family members of Sean Walsh, CEO and Managing Member of the Debtor (and also an unsecured creditor of the Debtor), have agreed to make a loan to the Debtor upon the terms described herein. Mr. Walsh's family members (his wife and mother in law) are referred to herein collectively as "Lender".

4. <u>Total Amount (up to $55,000)</u>: Upon the Debtor's request, Lender shall loan up to $55,000 to the Debtor upon the terms provided in the Promissory Note, a copy of which is attached as Exhibit "C" to the Declaration of Chris Cunningham, filed herewith (the "Cunningham Decl."). The Debtor shall first use up to $89,100 of its own liquid assets (described below) to partially pay a security deposit to the Riverbank LRA of $127,080, and the Debtor shall request that Lender loan only up to an amount sufficient to pay the unpaid balance of said deposit plus the amount of $2,742.50 to pay the post-petition wages and related payroll expenses due on February 27, 2015, which are as follows:

| First Name | Last Name | Amount |
| --- | --- | --- |
| Jacob | Lopez | $640.00 |
| Michael | White | $240.00 |
| Austin | Roberts | $820.00 |
| Brian | Friend | $510.00 |

2

| Tricia | Hayward | $532.50 |
|--------|---------|---------|
|        | Total:  | $2,742.50 |

Said amounts do not include any pre-petition portion. The Debtor intends to tentatively borrow the amount of $2,742.50 from Lender to pay said wages and payroll expenses on February 27, 2015, subject to Court approval such that, if the loan is not approved, Walsh will waive any claim and consider the transfer to be a capital contribution. It is important to note that the Debtor's cash flow is sufficient to pay said wages, but the Debtor wishes to avoid using any purported cash collateral prior to the hearing on its cash collateral motion.

5. <u>Liens and Priority</u>: Lender's claim for repayment of the loan shall be secured by a lien subject to the security interests (if any) of Andrew L. Faris and Emergent Systems Exchange (which lien is disputed) and allowed as an administrative priority claim under Bankruptcy Code Section 364(c).

6. <u>Interest Rate (10.0%)</u>: The loan will bear interest at the rate of ten percent (10.0%) per annum. Upon the occurrence of an Event of Default (as defined in the Promissory Note), at the election of Lender, the entire principal sum remaining unpaid, together with all accrued interest thereon and any other sum payable under the Promissory Note shall immediately become due and payable. In addition, in the event of default, a late fee equal to five percent (5.0%) of the unpaid payment shall be charged.

7. <u>Maturity</u>: The loan will mature and be due and payable in full on the later of dismissal of the bankruptcy case, the effective date of a confirmed chapter 11 plan, or February 26, 2016. There are no payments due under the Loan prior to the maturity date.

8. <u>Events of Default</u>: The following shall constitute an "Event of Default" under the loan:

    a. Borrower's failure to pay any of its obligations under the Promissory Note when due after accounting for applicable grace periods;

    b. Borrower's failure to perform any of the obligations, agreements, covenants, or conditions contained in the Promissory Note; and

3

c. Conversion of this Bankruptcy Case to a Chapter 7 bankruptcy.

9. <u>Borrowing Limits</u>. The amount of the loan shall not exceed $55,000.

10. <u>Borrowing Conditions</u>. The loan is conditional upon approval by the Bankruptcy Court.

11. <u>Additional Rights</u>. In returning for making the loan, Lender shall also receive an option to purchase 2.75% of the member interest in the Debtor for $55,000. This option may be exercised by Lender or their assigns within five (5) years of this Court's approval of the loan. Additional terms related to this option are set forth in the Promissory Note.

12. <u>Provisions for "Carve-Outs" for Professional Fees and Expenses</u>: The loan not subject to a "carve-out" for compensation and expenses of professionals.

13. This motion is supported by the Utilities Motion and any declarations, pleadings and evidence submitted or that may be submitted in support thereof. For further particulars, reference is made thereto.

## INTRODUCTORY STATEMENT – CASH COLLATERAL

14. As set forth in the Motion for Authority to Use Cash Collateral (Docket No. 10) (the "Cash Collateral Motion"), the following parties assert liens against the Debtor's assets in the following amounts (estimated as of the petition date):

| Name | Estimated Claim Amount | Collateral | Estimated Value of Collateral | Priority |
|---|---|---|---|---|
| Andrew L. Faris | $308,410.00 | Substantially all assets | $3,193,750[1] | First |
| Emergent Systems Exchange, LLC | $1,136,924.75 | Certain computers and related hardware | $1,200,000 | Purchase Money (Disputed) |
| Total: | $1,445,334.75 | | | |

The Debtor disputes a portion of Faris' lien, and Emergent Exchange has no *bona fide* claim of a security interest. Moreover, the Debtor contends that there is no cash collateral as its revenue is

---

[1] Includes value of purported collateral for disputed purchase money lien asserted by Emergent Systems. The fair market value of the collateral exceeds its book value; Faris' claim is vastly oversecured in either case.

4

generated by post-petition transaction-processing services, for which the Debtor is compensated contemporaneously without the creation of an account receivable. The Debtor reserves all rights with respect thereto. Nevertheless, the Debtor requests authority to use cash collateral in an abundance of caution.

15. The purpose for the proposed use of cash collateral and the proposed terms of use of cash collateral are set forth in the Cash Collateral Motion and, for further particulars, reference is made thereto. The Debtor suggests that repeating the same information in this Motion will unnecessarily burden the Court and parties in interest, and the Debtor requests that the Court excuse said requirement. The Debtor requests authority to use cash collateral upon the same terms and conditions as set forth in the Cash Collateral Motion, as follows.

16. The Debtor has on hand liquid assets estimated to be worth at least $89,100, consisting of at least $50,000 in cash and Bitcoin ("XBT") worth at least $39,100. A sources-and-uses table is included in the revised cash collateral budget attached to the Cunningham Decl. as Exhibit "C" and repeated below for the convenience of the Court and parties in interest:

**Security Deposit for Electricity**
  Sources
    Minimum Cash on hand as of 2015.02.26                         $50,000
    Proceeds from Sale of 170 XBT on hand as of 2015.02.26        $39,100
    DIP Loan                                                      $37,980
                                                    **Total Sources  $127,080**
  Uses
    Security Deposit for Electricity                             ($127,080)
                                                    **Total Uses   ($127,080)**

17. The Debtor requests authority to use up to $89,100 in purported cash collateral to partially pay the aforesaid security deposit of $127,080.

WHEREFORE, the Debtor prays for entry of an order:

1. Authorizing the Debtor to use of up $89,100 of its liquid assets (described above) to partially pay a security deposit of $127,080 to the Riverbank LRA;

2. Authorizing the Debtor to borrow funds from Lender upon the terms described above up to $55,000 only to the extent necessary to pay the balance of said security deposit plus $2,742.50

5

for post-petition wages and payroll expenses;

    3.    Authorizing the Debtor to use the proceeds of said loan to pay the balance of said security deposit and said wages and payroll expenses;

    4.    Allowing Lender' claim for repayment of the loan as an administrative expense;

    5.    Granting Lender a lien against all of the Debtor's personal property, subject to the liens (if any) of Faris and Emergent Systems (which lien is disputed); and

    6.    For such other and further relief as is appropriate in the premises.

DATED: February 27, 2015                  MACDONALD | FERNANDEZ LLP

By: /s/ Reno F.R. Fernandez III
     Reno F.R. Fernandez III
     Proposed Attorneys for Debtor,
     AQH, LLC

## CERTIFICATION

The undersigned Certifying Professional has read the accompanying motion or stipulation and the Introductory Statement; to the best of my knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the motion or stipulation are in conformity with the Court's Guidelines For Cash Collateral And Financing Motions and Stipulations except as set forth above. I understand and have advised the debtor in possession or trustee that the court may grant appropriate relief under Fed. R. Bankr. P. 9024 if the court determines that a material element of the motion or stipulation was not adequately disclosed in the Introductory Statement.

/s/ Reno F.R. Fernandez III
RENO F.R. FERNANDEZ III