S. Craig Hunter – SB# 125247
Karl A. Schweikert - SB# 291497
Nubia I. Goldstein – SB# 272305
CHURCHWELL WHITE LLP
1414 K Street, 3rd Floor
Sacramento, CA 95814
(916) 468-0950 Phone
(916) 468-0951 Fax

Attorneys for Creditor
RIVERBANK LOCAL REDEVELOPMENT AUTHORITY

FILED
MAR 09 2015
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

AQH, LLC,

    Debtor.

Case No.: 15-50553-11-ASW

**DECLARATION OF DEBBIE OLSON**

DATE: March 9, 2015
TIME: 3:00 p.m.
LOC: 280 South First Street, Rm 3020
     San Jose, California
JUDGE: Hon. Arthur W. Weissbrodt

I, DEBBIE OLSON, declare as follows:

    1.    I am the Executive Director for Riverbank Local Redevelopment Authority ("RLRA"), located at 5300 Claus Road, Modesto, California 95357. I have personal knowledge of the facts stated herein and I could and would testify competently thereto if called upon to do so.

    2.    To assist the Court with visualization of the site, a true and correct copy of a Google aerial map of the RLRA facility is attached as **Exhibit A**.

    3.    RLRA currently leases the Riverbank Industrial Complex ("RLRA Premises") from the United States Army pursuant to the terms memorialized in the Riverbank Army Ammunition Plant Lease No. DACA05-3-1-525 (the "Army Lease").

    4.    RLRA has leased several areas of the RLRA Premises to AQH, LLC ("AQH"). The initial lease, dated March 12, 2014, was for all of building 3 with an option for additional space ("Initial Lease"). A true and correct copy of the Initial Lease was attached as Exhibit A to

the Declaration of Chris Cunningham in Support of Motion for Order Compelling RLRA to Provide Electricity, filed on February 27, 2015, Docket Item number 23.

5. On July 25, 2014, the first amendment to the Initial Lease was executed providing for five parking spaces within the security fence. A true and correct copy of this amendment is attached as **Exhibit B**.

6. An unsigned second amendment exists deferring rent due in July and August 2014 to be paid over the following ten (10) months, beginning September 1, 2014. A true and correct copy of the second amendment is attached as **Exhibit C**.

7. On December 10, 2014, a third amendment to the lease was executed ("Third Amendment"). The Third Amendment memorializes AQH's exercise of its option to lease space in buildings 5, 21, and 50. A true and correct copy of the Third Amendment is attached as **Exhibit D**.

8. To assist the Court with visualization of AQH's leased premises, an annotated building map created by my staff is attached as **Exhibit E**.

9. Under Section 17(a) of the Army Lease, the U.S. Army requires prior written consent from the Army before the construction of any tenant improvements on the RLRA Premises. If the Army fails to respond within fourteen (14) business days of RLRA's notification of proposed tenant improvements, the improvements are deemed approved. A true and correct copy of Section 17(a) of the Army Lease is attached as **Exhibit F**.

10. The language of Section 15.2 of the Initial Lease requires that any alterations AQH desires to make in or about the leased premises shall be presented to RLRA in written form, with plans and specifications which are sufficiently detailed to obtain a building permit. It further requires AQH to get a building permit, furnish a copy of the permit to RLRA prior to commencing work, and to comply with all terms of the permit.

11. Since the RLRA Premises remain federal lands, RLRA acts as the permitting agency for the RLRA Premises instead of the local municipality. Thus tenants making any alterations to their leased space must seek a building permit from RLRA to commence construction under the terms of their leases.

12. A true and correct copy of the RLRA Tenant Improvement Process document is attached as **Exhibit G**.

13. A true and correct copy of RLRA's Tenant Improvement application checklist is attached as **Exhibit H**. In the past, RLRA has outsourced the building permit review process to San Joaquin Engineering Services ("SJES") who also serves as RLRA's facilities management provider.

14. In December 2014, RLRA was aware of six (6) tenant improvements being proposed for the RLRA Premises, including AQH's proposed improvements. SJES did not have the bandwidth available to handle these tenant improvement requests simultaneously with its facilities obligations. RLRA hired Interwest Consulting Group ("Interwest") in January 2015 to address this critical need for building permit services.

15. Interwest maintains a staff of experts to quickly and efficiently evaluate proposed tenant improvements as well as maintains a staff of inspectors for final on-site construction inspections.

16. Plans submitted to Interwest are handled just like plans submitted to a city building department. They are reviewed for compliance with Title 24 of the California Code of Regulations, commonly known as the California "Building Code." If the submitted plans meet the requirement of the Building Code, they are approved and a permit for construction is issued. If they are not, the application for the permit is rejected and the applicant is invited to submit revised materials that address the deficiencies noted. Once the permit is issued, construction may begin. Once construction is complete, an inspection occurs to ensure construction was also completed in compliance with the Building Code and the permitted plans. Assuming this has happened, the inspector would sign off on the permit as complete.

17. Once the initial plan checks are complete and a building permit is issued, RLRA forwards the completed plans to the Army for compliance with Section 17(a) of the Army Lease. This allows for the Army review to occur during construction.

18. AQH's proposed tenant improvement is substantial and involves connecting a 13,800 Volt line from RLRA's electrical system to AQH's transformers, ultimately delivering

3
Declaration of Debbie Olson

4,000 Amps at 480 Volts to the newly leased spaces referenced in the Third Amendment.

19. The electrical systems of the RLRA facilities are interconnected, which means the failure to properly connect to the system by one tenant, such as AQH, could result in a total site-wide failure affecting one or more of the other 39 other tenants and interrupting ongoing Army remediation.

20. On January 16, 2015, AQH submitted its first set of plans to Interwest for review. In its submission to Interwest for plan review to grant the building permit, AQH indicated it had completed its first phase of construction. This means construction has occurred without the appropriate permit. A true and correct copy of AQH's email is attached herein as **Exhibit I**.

21. On January 21, 2015, Interwest issued a memo indicating the failure of AQH's initial plans to comply with the submittal guidelines and failure to comply with the Building Code. A true and correct copy of Interwest's memo is attached herein as **Exhibit J**.

22. On January 28, 2015, Interwest issued a second memo indicating the failure of amended electrical plans to comply with the Building Code. A true and correct copy of Interwest's memo is attached herein as **Exhibit K**.

23. On February 17, 2015, AQH submitted its second set of proposed plans to Interwest for review. Those plans are currently in review at Interwest.

24. On March 4, 2015, Judge Weissbrodt asked counsel for RLRA to ensure the review of AQH's plans continued with the goal of turning up power in 14 calendar days. In light of Judge Weissbrodt's request, I have asked Interwest to review AQH's second set of plans. I have also, contrary to standard RLRA policy, sent AQH's second set of plans currently under review by Interwest to the Army for review, to speed the process along. This was done on March 6, 2015, a true and correct copy of my submission to the Army is attached as **Exhibit L**.

25. Our contract with Interwest mandates it complete building permit application reviews within ten (10) business days for an initial review and within seven (7) business days for all subsequent reviews. Once a permit has been issued, inspections are to occur within 1 business day of the request. RLRA expects Interwest will be able to maintain its commitment.

26. It is my experience the Army allows the 14-business day period to expire without

comment, however, if the Army finds AQH's submitted plan to be insufficient and requests additional information, the 14-business day period restarts upon submission of additional materials.

27. The 14-business day review period by the Army expires on Thursday, March 26, 2015.

28. RLRA contracts with Applied Power Systems ("APS") for electrical contractor maintenance of the RLRA Premises electrical infrastructure. They are responsible for handling any electrical issues that arise within the system. APS has a single qualified high voltage expert on staff, Kevin Elkins. Mr. Elkins is on an assignment and is unavailable for work at the RLRA Premises until Monday, March 23, 2015.

29. This presents a problem for any attempt to connect high voltage wires to AQH's transformers because of RLRA's use of federal grant dollars in its operation of the RLRA Premises. By accepting these federal grant dollars, RLRA is obligated to follow the public procurement process to hire a substitute expert. This process would take at least three weeks and could not be accomplished prior to March 30, 2015, and would further delay any connection for AQH. Thus, March 23, 2015, is the earliest date RLRA can acquire the services of a high voltage specialist to connect power to AQH.

30. APS's Kevin Elkins has indicated that the process to safely and properly connect high voltage service to transformers includes approximately three days of necessary safety checks.

31. RLRA believes the earliest possible date for electricity connection could be March 26, 2015, assuming AQH, LLC successfully passes all plan checks, site checks, functional checks, safety tests, and the Army does not oppose the proposed tenant improvements.

32. In addition to the requirements under the Initial Lease, Section 12.1, AQH is obligated to procure and maintain commercial general liability insurance. Under Section 12.3, AQH is obligated to provide RLRA with copies of its renewals of expiring policies thirty (30) days prior to policy expiration.

33. AQH's current evidence of insurance provided to RLRA expired on February 26,

2015. RLRA has not received any renewal notices. A true and correct copy of the first 5 pages of the Certificate of Insurance provided to RLRA is attached as **Exhibit M**.

34. In light of RLRA's billing practices, AQH's proposed expansion of its electricity use, and after further review of the situation with our experts, RLRA believes AQH's proposed amount of adequate assurance leaves RLRA inadequately protected.

35. RLRA procures power, receives and bills invoices to tenants on the same day, typically between the 10th and 15th of each month. Attached hereto as **Exhibit N** are true and correct copies of AQH's pre-petition electrical bills solely to demonstrate typical billing dates.

36. Due to RLRA's procurement and invoicing of electricity, if AQH utilizes $127,080.00 worth of electricity and RLRA is required to seek payment by the trustee, AQH will likely have used at least $80,000 of additional electricity prior to default on the present administrative obligation.

37. Thus RLRA believes an amount of $200,000 would be required to provide adequate assurances.

38. AQH has not yet paid its rent for March due March 1, 2015 in the amount of $22,100.02.

39. AQH will be late on March 10, 2015.

40. Separate and apart from AQH's lease and this bankruptcy proceeding, AQH is presently occupying approximately 8,100 square feet of space outside their leased area, including a storage room adjacent to a bathroom it appears they unlocked and occupied as an office and a large area being utilized for storage.

41. I asked facilities management to take pictures of the space AQH is illegally squatting in. True and correct copies of those pictures are attached as **Exhibit O**.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: March 9, 2015

*/s/ Debbie Olson*
DEBBIE OLSON

**EXHIBIT A**



**EXHIBIT B**



# City of Riverbank

## Local Redevelopment Authority

July 25, 2013

AQH
440 N. Wolfe Road, MS #46
Sunnyvale, CA 94085

Subject:     Lease Amendment # 1 – On-Site Parking

Dear Anthony,

Per your request, this letter will serve as an amendment to your Lease dated and executed March 12, 2014, to include five typical sized vehicle, on-site parking spaces, within the security fence line. These spaces shall consist of five - 10 foot by 20 foot spaces on the west side of Building 14 and between the main gate and Building 13. The attached Exhibit 1 shows the parking slots currently available and unassigned where parking is allowed. These parking spaces are available on a first come, first serve basis.

The additional cost of these spaces shall be $20/month per space for a total additional cost of $100/month. Your new total lease rate per month will be $13,857.00. This amendment will become effective upon signing <u>and</u> providing facility management with the all required documents.

If this amendment meets with your requirements and you are ready to proceed, please sign below.

Sincerely,                                          Accepted and Approved:

_____                           _____
Debbie Olson                                        Anthony Brough
Executive Director                                  CFO

*5300 Claus Rd. Ste. # 1 Modesto, CA  95357*
*Phone: 209-863-8352*
*Fax: 209-863-8071*

# AQH Lease Amendment #1
## Exhibit 1 – Unassigned Parking Slots Inside Security Fence Line




Shading indicates unassigned parking stalls inside security fence line available for tenant use

**EXHIBIT C**



# City of Riverbank

## Local Redevelopment Authority

July 16, 2014

AQH, LLC
440 N. Wolfe Road, MS #46
Sunnyvale, CA 94085

Subject: Amendment No. 2 – Rent Deferral

Dear Anthony,

Pursuant to our discussion, we will defer $20,685.50 in base rent that was due in July and August and add that amount to the rent payments over the next 10 months beginning September 1, 2014. In order to accomplish this, the following changes to your lease agreement dated March 12, 2014 are needed:

Section 1.11 shall be amended to read:

BASE RENT:

| | | | |
|---|---|---|---|
| 1.11.1 | YEAR 1: | | |
| | 1.11.1.1 YEAR 1: As of the Effective Date: | $ | 0.00/month |
| | 1.11.1.2 Year 1: As of August 1, 2014 | | $ 6,978.50/month |
| | 1.11.1.3 Year 1: As of September 1, 2014 | | $ 15,925.55/month |
| | 1.11.1.4 Year 1: As of April 1, 2015 | | $ 16,238.26/month |
| 1.11.2 | YEAR 2: As of July 1, 2015 | | $ 14,169.71/month |
| 1.11.3 | YEAR 3: As of April 1, 2016 | | $ 14,584.80/month |
| 1.11.4 | YEAR 4: As of April 1, 2017 | | $ 15,032.65/month |
| 1.11.5 | YEAR 5: As of April 1, 2018 | | $ 15,483.62/month |

The above rates are based on $0.35 per square foot for indoor space, $0.10 per square foot for outdoor space and $20 per parking space for the 5 allocated parking spaces approved in Lease Amendment #1. The Base Rent shall be increased annually by 3% on the anniversary of the Lease Commencement Date (April 1).

This amendment will take effect immediately. It is agreed that you have already made the August 1, 2014 payment of $6,878.50. The $100 fee for onsite parking is still owed and has been included in the attached lease payment schedule. Beginning September 1, 2014 your lease rate will increase to $15,925.55/mo. Exhibit A to this amendment shows a revised schedule of payments through June 30, 2015. If this amendment meets with your approval and you are ready to proceed, please sign below.

Sincerely,                                    Accepted and Approved:


_____               _____
Debbie Olson                                  Anthony Brough
LRA Executive Director                        CFO

Date: _____                 Date: _____

AQH, LLC
LEASE AMENDMENT NO. 2 – RENT DEFERRAL

EXHIBIT A – SCHEDULE OF LEASE PAYMENTS AUGUST 2014 THROUGH JUNE 2015

| | AUG | SEPT | OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUNE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AMENDED LEASE PAYMENTS | $6,978.50 | $15,925.55 | $15,925.55 | $15,925.55 | $15,925.55 | $15,925.55 | $15,925.55 | $15,925.55 | $16,238.26 | $16,238.26 | $16,238.26 |

Note: The amount shown includes onsite parking charges.

**EXHIBIT D**



# City of Riverbank

## Local Redevelopment Authority

December 1, 2014

AQH, LLC
440 N. Wolfe Road, MS #46
Sunnyvale, CA 94085

Subject: Amendment No. 3 – Additional Space

Dear Anthony,

Pursuant to our discussion, this amendment would result in an additional 18,916 square feet of space in Buildings 5 (9,706 sq. ft.), 21 (3,000 sq. ft.) and 50 (6,210 sq. ft.) as shown on the attached map. The lease rate of $0.35/sf results in an additional base rent of $6,620.60/month. In order to accomplish this, the following changes to your lease agreement dated March 12, 2014, as previously amended are needed:

Section 1.6 shall be amended to add the following leased space: 9,706 square feet in Building 5, 3,000 square feet in Building 21 and 6,210 square feet in Building 50.

Section 1.8 shall be amended so that the space included in this amendment shall be leased for a period of 52 months beginning December 3, 2014 and ending April 30, 2019.

Section 1.11 shall be amended to read:

BASE RENT:

| | | | |
|---|---|---|---|
| 1.11.1 | YEAR 1: | | |
| | 1.11.1.1 YEAR 1: | As of the Effective Date: | $ 0.00/month |
| | 1.11.1.2 Year 1: | As of December 3, 2014 | $ 15,319.42/month |
| | 1.11.1.3 Year 1: | As of January 1, 2015 | $ 22,065.02/month |
| | 1.11.1.3 Year 1: | As of April 1, 2015 | $ 22,477.73/month |
| 1.11.2 | YEAR 2: | As of July 1, 2015 | $ 20,915.31/month |
| 1.11.3 | YEAR 3: | As of July 1, 2016 | $ 21,529.02/month |
| 1.11.4 | YEAR 4: | As of July 1, 2017 | $ 22,181.44/month |
| 1.11.5 | YEAR 5: | As of July 1, 2018 | $ 22,843.13/month |

The above rates are based on $0.35 per square foot for indoor space, $0.10 per square foot for outdoor space, $20 per parking space for the 5 allocated parking spaces approved in Lease Amendment #1 and $125.00 per month for janitorial and restroom maintenance.

Section 1.13 Security Deposit shall be amended to read as follows:

Section 1.13.1 – Security Deposit for Space: A security deposit is required equal to one month's lease rate or $22,546.15. It is recognized that tenant has, prior to Amendment No. 3 already paid $13,800 of this amount.

Section 1.16 Other Lease Considerations shall be amended by adding the following paragraphs:

Beginning December 3, 2014 and continuing the full term of the lease (until March 31, 2019) or later if extended), Tenant shall pay additional base rent in the amount of $ 125.00/month for their share of janitorial supplies and restroom maintenance as allowed by paragraph 1 of this section. This amount shall be increased as the costs incurred by the LRA for this service increases. Tenant shall be notified of said increases 30 days before the increases are imposed. In no instance shall this amount exceed the LRA's cost of providing the service.

The only water to be used by Tenant shall be for "domestic" purposes or to maintain a specific humidity level (i.e., misting system). Domestic purposes are defined as washing stations, restrooms, drinking water, etc., but in no case shall water be allowed to pool or run into other tenant-occupied or common areas.

Fencing of any areas added to this lease, including those subject to Lease Amendment No. 3, shall be at Tenant's sole cost.

Should Tenant continue to provide their own security, they shall be responsible for all lighting costs needed to facilitate their security's ability to function.

Building 21 is provided "as-is" with no guarantee that it is suitable for Tenant's specific purpose or use. There is an HVAC system not currently operating. Landlord agrees to provide air conditioning for the area by June 1, 2015, however maintenance of the unit shall be Tenant's responsibility

Section 10.1 shall be amended by adding the following language at the end of the section:

Landlord currently charges a surcharge for electricity. This surcharge is applied to the amount charged by Hetch Hecthy to Landlord for the provision of electricity. In addition to the cost incurred from Hetch Hetchy, Landlord incurs costs for supplying energy from the Hetch Hetchy lines to the tenants. The surcharge shall not exceed the cost of providing this service to the tenants. Tenant has agreed to pay 5% over and above the standard surcharge in return for not providing a security deposit for electricity. For example, if the standard surcharge is 10% and Tenant shall pay a surcharge of 15%. The additional 5% will be assessed and accrue for 24 months.

After 24 consecutive months of on-time electrical payments are received, the accrued amount will be refunded to the Tenant, without payment of interest or other amount. If the Tenant fails to make electrical payments on time, Landlord may use all or any portion of accrued assessment for the payment of electrical charges or any other fees, costs or charges due to which Landlord may become obligated by reason of Tenant's default or to compensate Landlord for any loss or damage which Landlord may suffer thereby. If Landlord so uses or applies all or any portion of said deposit, Tenant shall within ten (10) days after written demand therefor deposit cash with Landlord in an amount sufficient to restore said deposit to its full amount.

If this amendment meets with your approval and you are ready to proceed, please sign below.

Sincerely,

*signature: pp. Debbie Olson*

Debbie Olson
LRA Executive Director

Date: 12/11/14

Accepted and Approved:

*signature*

Anthony Brough
CFO

Date: Dec. 10, 2014

**EXHIBIT E**

