MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
ROXANNE BAHADURJI (SBN 290117)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Proposed Attorneys for Debtor in Possession,
AQH, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

AQH, LLC,

           Debtor.

Case No. 15-50553-ASW-11

Chapter 11

**MOTION FOR RETROACTIVE APPOINTMENT OF DBMAC, INC. AS CONSULTANT FOR DEBTOR-IN-POSSESSION AND APPROVAL OF POST-PETITION RETAINER**

[No Hearing Set]

      COMES NOW AQH, LLC, d/b/a Aquifer, LLC, Debtor-in-Possession herein, who respectfully requests entry of an order pursuant to 11 U.S.C. § 327 for appointment of DBMAC, Inc. as consultant to the Debtor-in-Possession retroactive to the petition date, and respectfully represents:

**FACTS**

      1.    The within case was commenced by filing a voluntary chapter 11 petition on February 19, 2015. A trustee has not been appointed and the Debtor is in possession of its estate.

      2.    The Debtor leases substantial space at 5300 Claus Road, Buildings 5, 21 and 50 in Modesto, California, (the "Datacenter Facility") from the Riverbank Local Redevelopment Authority (the "Riverbank LRA"), which is affiliated with the City of Riverbank. The Datacenter Facility is owned by the United States Army and administered by the Riverbank LRA.

      3.    The Debtor's lease of the Datacenter Facility is critical to its operations, its ability to repay creditors, and its long-term growth.

      4.    The Debtor requires an experienced consultant to assist it in navigating through

1

various governmental channels to secure the financing of its electrical infrastructure requirements in the Datacenter Facility, other relevant governmental agencies, (namely, Alliance - Stanislaus Economic Development & Workforce Alliance) and other private funding sources. Additionally, the Debtor requires a seasoned governmental affairs professional to assist it with maintaining the Debtor's relationship with the Riverbank LRA.

5. On January 21, 2015, prior to the petition date (February 19, 2015), AQH, LLC, d/b/a Aquifer, LLC entered into a retention agreement with Daron McDaniel of DBMAC, Inc. to provide consulting services. DBMAC, Inc.'s consultation services pertaining to the Debtor are critically important to preserving assets of the Debtor's estate. DBMAC, Inc. agreed to waive any prepetition claim it may have against the bankruptcy estate.

**DISCUSSION**

6. The Debtor wishes to employ DBMAC, Inc. as its consultant retroactive to the petition date. In selecting such consultant, the Debtor has made diligent and careful inquiries into the qualifications and connections of DBMAC, Inc., and has found DBMAC, Inc. to be qualified to serve in the needed consultant role in this case by reason of its ability, integrity, and professional experience. Daron McDaniel will lead the engagement.

7. Daron McDaniel and DBMAC, Inc. have no connection with the Debtor, nor its known employees, creditors, attorneys or accountants, the United States Trustee, or any person employed with the Office of the United States Trustee, and is a "disinterested person" within the meaning of 11 U.S.C. § 101(14) and as required by 11 U.S.C. § 327(a).

8. The Debtor understands that its obligation to pay fees and costs is subject to the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees, promulgated by the United States Bankruptcy Court for the Northern District of California and payment of such fees and costs are subject to prior court approval.

I. <u>THE COURT SHOULD APPROVE DBMAC, INC. EMPLOYMENT RETROACTIVE TO THE PETITION DATE.</u>

9. Retroactive employment is authorized upon motion where:

    a. The debtor, trustee or committee expressly contracted with the professional

2

|   |   |   |
|---|---|---|
| 1 | | person to perform the services which were thereafter rendered; |
| 2 | b. | The party for whom the work was performed approves the entry of the *nunc pro tunc* order; |
| 4 | c. | The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections; |
| 6 | d. | No creditor or party in interest offers reasonable objection to the entry of the *nunc pro tunc* order; |
| 8 | e. | The professional satisfied all the criteria for employment pursuant to 11 U.S.C. § 327 and Rule 2014 (formerly Rule 215) of the Federal Rules of Bankruptcy Procedure at or before the time services were actually commenced and remained qualified during the period for which services were provided; |
| 12 | f. | The work was performed properly, efficiently, and to a high standard of quality; |
| 13 | g. | No actual or potential prejudice will inure to the estate or other parties in interest; |
| 14 | h. | The applicant's failure to seek pre-employment approval is satisfactorily explained; and |
| 16 | i. | The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals. |

*Atkins v. Wain, Samuel & Co. (In re Atkins)*, 69 F.3d 970, 974 (9th Cir. 1995). It is not necessary to considered or met for the bankruptcy court to properly grant retroactive approval of professional employment. *Id.* at 975. Employment may be approved retroactively if the applicant has satisfactorily explained its failure to apply for court approval of its employment on a timely basis and the applicant's services have benefitted the estate. *In re Gutterman*, 239 B.R. 828, 830 (Bankr. N.D. Cal. 1999); *see also Okamoto v.THC Financial Corp. (In re THC Financial Corp.)*, 837 F.2d 389, 392 (9th Cir. 1988). Approval of employment retroactively is within the sound discretion of the Court. *Atkins*, 69 F.3d at 973 (retroactive employment approved where services were rendered on an emergency basis and there was an apparent miscommunication regarding obtaining approval for employment).

10. Many of the factors discussed above are self-evident, including the fact that the

3

Debtor approves of DBMAC's employment and creditors have been provided with notice and an opportunity to object, and these factors do not warrant separate discussion. Chiefly, DBMAC's work in advocating on behalf of the Debtor to political leaders is vital to preserving the Debtors' assets because of the nature of the Debtor's lease for the Datacenter Facility. Furthermore, no party will be prejudiced by approval of DBMAC's employment retroactively; in fact, there has been no objection to Trowbridge's employment.

11. There was a delay in obtaining Court approval of DBMAC's employment due to an internal review by the Debtor on the need to continue DBMAC's service post-petition, the focus of the Debtor's attention on resolving utilities issues with the Riverbank LRA, and an evaluation on whether Court approval was necessary. The Debtor moves for approval of DBMAC's employment out of an abundance of caution and any delay may be cured by approval of its employment retroactively.

12. In *Gutterman*, the court approved retroactive employment of counsel for a chapter 7 trustee where there was a delay in obtaining approval due to a clerical error in that the application was not transcribed, submitted to the trustee or filed, although "the exact circumstances surrounding the failure to transcribe cannot be ascertained." *Gutterman*, 239 B.R. at 830. The court noted that counsel provided valuable services to the estate (*id.*) and that no party was prejudiced by the delay (*id.* at 833), and the court found that the clerical error was a satisfactory explanation of the delay (*id.*).

II. THE COURT SHOULD APPROVE THE PAYMENT OF A POST-PETITION RETAINER TO DBMAC, INC.

13. The Debtor agreed to pay DBMAC a retainer in the amount of $12,000. Said retainer is appropriate to the size and complexity of the case, including the DBMAC's continuing advocacy to local government officials on behalf of the Debtor. DBMAC's familiarity and relationships with local government officials and the local legislative process is essential to the protection of the Debtor's interests in the Datacenter Facility.

14. It is beyond cavil that the estate requires competent advice on accounting issues. Bankruptcy Code Section 363(b)(1) provides that a debtor in possession, after notice and a hearing,

4

may use, sell or lease property of the estate other than in the ordinary course of business. The standard under Section 363(b)(1) is the "business judgment" standard, and a debtor may use property of the estate so long as there is "some articulated business justification" for the proposed use. *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (9th Cir. BAP 1988) (quoting *In re Continental Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986)).

15. Payment of the aforesaid post-petition retainer is within the Debtor's sound business judgment. "[T]he bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (applying business judgment standard in context of rejection of executor contract). Payment of a post-petition retainer is in the best interests of the estate in that it is necessary in order to obtain the services of competent counsel.

16. The aforesaid retainer is reasonable in proportion to the size and complexity of the within case. Bankruptcy Code Section 328(a) provides that the Debtor, with Court approval, may employ professionals "on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingent fee basis." As discussed above, the Datacenter Facility is key to the Debtor's reorganization and the relationship with the Riverbank LRA, the City of Riverbank, and other local government entities is essential to the Debtor's success.

17. Payment of the retainer is necessary in order to obtain competent consultants to assist in the administration of the within case. Bankruptcy Code Section 105(a) provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. The proper administration of the case is in the best interests of the estate.

III. THE DEBTOR SHOULD BE AUTHORIZED TO USE CASH COLLATERAL TO PAY THE RETAINER BECAUSE PAYMENT OF THE RETAINER IS IN THE BEST INTERESTS OF THE ESTATE

18. The purpose for the proposed use of cash collateral and the proposed terms of use of cash collateral are set forth in the Cash Collateral Motion and, for further particulars, reference is made thereto. The Debtor suggests that repeating the same information in this Motion will

5

unnecessarily burden the Court and parties in interest, and the Debtor requests that the Court excuse said requirement. The Debtor requests authority to use cash collateral to pay the retainer to DBMAC, Inc. upon the same terms and conditions as set forth in the Cash Collateral Motion.

WHEREFORE, the Debtor prays that it be authorized to employ and appoint Daron McDaniel of DBMAC, Inc. retroactive to the petition date as its consultant, to approve the payment of a post-petition retainer, and for such other and further relief as is proper in the premise.

DATED: April 23, 2015                             MACDONALD | FERNANDEZ LLP

                                                  By: /s/ Matthew J. Olson
                                                      Matthew J. Olson
                                                      Attorneys for Debtor in Possession,
                                                      AQH, LLC