

**IT IS SO ORDERED.**
**Signed June 9, 2015**

Arthur S. Weissbrodt
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>AQH, LLC,<br><br>Debtor. | Case No. 15-50553-ASW<br><br>Chapter 11<br><br>Hrg. Date: June 11, 2015<br>Hrg. Time: 1:45 p.m. |

**TENTATIVE DECISION RE: MOTION FOR RETROACTIVE APPOINTMENT;
MOTION TO EXTEND TIME TO ASSUME OR REJECT LEASES**

Before the Court are two motions filed by Debtor AQH, LLC, who is represented by attorney Matthew Olson. The first is a motion to approve the retroactive appointment of DBMAC, Inc. ("DBMAC") as a consultant to the Debtor; the second is a motion to extend the time to assume or reject Debtor's lease with the Riverbank Local Redevelopment Authority (the "Riverbank LRA"). Riverbank LRA, which is represented by attorney Karl Schweikert, opposes the motion to employ DBMAC. No oppositions have been filed to the motion to extend.

Taking the second motion first, Debtor seeks a 90-day extension of time, to September 17, 2015, to assume or reject unexpired nonresidential leases under § 365(d)(4). Debtor wishes to extend the time to assume or reject its lease with Riverbank LRA

with respect to the Debtor's primary database facilities at 5300 Claus Road, Buildings 3, 5, 21 and 49, Modesto, CA.

Debtor estimates it owes Riverbank LRA approximately $243,000 in pre-petition arrears for rent and electricity. According to the Declaration of Anthony Brough in support of the motion, Debtor is current on its post-petition obligations under the lease.

Section 365(d)(4)(B) authorizes this Court to extend the deadline to assume or reject unexpired nonresidential real property leases for cause. Factors to consider in determining whether to grant an extension of time in which to assume or reject leases are whether leases are primary assets of debtor, whether lessor continues to receive rental payments, and whether case is exceptionally complex and involves a large number of leases. <u>In re Victoria Station Inc.</u>, 88 B.R. 231, 236 (9th Cir. BAP 1988).

The Court concludes that the relevant factors support extension of the deadline. The lease with the Riverbank LRA is one of Debtor's primary assets, and Debtor is current on post-petition lease obligations. Although the case is not exceptionally complex, at the beginning of this case there were exigent circumstances that prevented Debtor from focusing on reorganization efforts. Specifically, the Debtor needed to have the electricity turned on in its expanded facility in order to continue operating at full capacity, which necessitated the filing of various motions and a number of hearings in this Court.

In addition, according to the Brough declaration, Debtor is diligently working on formulating its plan, including working with potential lenders for further debtor-in-possession financing to address short-term capital needs, but needs additional time for

these plans to crystalize. Delays associated with obtaining electricity for the Debtor's expanded datacenter and the underperformance of the servers purchased from Emergent Systems Exchange undercut the Debtor's initial projections, and Debtor needs more time to reformulate its projections, raise funds through operations, and negotiate with potential lenders.

Based on the foregoing, the Court finds that the Debtor has established cause for the extension. The motion is granted.

Turning to the Motion for Retroactive Appointment, Debtor seeks approval of the retroactive employment of DBMAC as a consultant for DIP, and for approval of a post-petition retainer of $12,000.

Debtor's facility at 5300 Claus Road in Modesto, CA (the "Datacenter Facility") is leased from the Riverbank LRA, which is affiliated with the City of Riverbank. The Datacenter Facility is owned by the United States Army and administered by the Riverbank LRA.

According to the motion, Debtor requires an experienced consultant to assist it in navigating governmental channels to secure the financing of its electrical infrastructure requirements in the Datacenter Facility, other relevant governmental agencies, (namely, Alliance - Stanislaus Economic Development & Workforce Alliance) and other private funding sources. Debtor also asserts that it requires a seasoned governmental affairs professional to assist it with maintaining the Debtor's relationship with the Riverbank LRA.

Debtor entered into a retention agreement with DBMAC for consulting services on January 21, 2015, prior to the petition date

of February 19, 2015. The agreement, which is in the form of an email attached to the declaration of Daron McDaniel, Chief Operations Officer of DBMAC, provides that DBMAC is to:

> 1) Assist Debtor in navigating through governmental channels in its desire to secure financing of its electrical infrastructure requirements in our facility from the City of Riverbank and in particular through Mayor O'Brien. We have estimated that our next build will require $500,000 - $1,000,000.
>
> 2) Same as above except adding any relevant governmental agencies, including regional development agencies such as the Alliance (Stanislaus County), etc.
>
> 3) Same again except with any private funding sources.
>
> 4) Act as a go-between on an as-needed basis with any issues with the LRA.

The agreement also calls for the Debtor to pay a $4,000 per month retainer for an initial 90-day period.

Debtor wishes to employ DBMAC as its consultant retroactive to the petition date. DBMAC has agreed to waive any prepetition claim it may have against the bankruptcy estate. Debtor believes DBMAC is qualified to serve in the needed consultant role in this case by reason of its ability, integrity, and professional experience.

According to Mr. McDaniel's declaration, neither he nor DBMAC have any connection with the Debtor or its known employees, creditors, attorneys or accountants, the United States Trustee, or any person employed with the Office of the United States Trustee, and are "disinterested persons" within the meaning of 11 U.S.C. § 101(14) and as required by 11 U.S.C. § 327(a).

According to the motion and declaration, the Debtor and the applicant understand that any application for fees and costs is subject to this Court's Guidelines for Compensation and Expense

Reimbursement of Professionals and Trustees, and that payment of such fees and costs is subject to prior court approval.

Retroactive employment is authorized upon motion where:

a. The debtor, trustee or committee expressly contracted with the professional person to perform the services which were thereafter rendered;

b. The party for whom the work was performed approves the entry of the nunc pro tunc order;

c. The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;

d. No creditor or party in interest offers reasonable objection to the entry of the nunc pro tunc order;

e. The professional satisfied all the criteria for employment pursuant to 11 U.S.C. § 327 and Fed. R. Bankr. P. 2014 at or before the time services were actually commenced and remained qualified during the period for which services were provided;

f. The work was performed properly, efficiently, and to a high standard of quality;

g. No actual or potential prejudice will inure to the estate or other parties in interest;

h. The applicant's failure to seek pre-employment approval is satisfactorily explained; and

i. The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals. In re Atkins, 69 F.3d 970, 974 (9th Cir. 1995).

Not all of these factors need to be considered or met for the bankruptcy court to properly grant retroactive approval of

professional employment. Id. at 975. Employment may be approved retroactively if the applicant has satisfactorily explained its failure to apply for court approval of its employment on a timely basis and the applicant's services have benefitted the estate. In re Gutterman, 239 B.R. 828, 830 (Bankr. N.D. Cal. 1999).

According to the motion, the delay in obtaining Court approval of DBMAC's employment was due to an internal review by the Debtor on the need to continue DBMAC's service post-petition, the focus of the Debtor's attention on resolving utilities issues with the Riverbank LRA, and an evaluation of whether Court approval was necessary.

Debtor also asks the Court to approve the payment of a $12,000 retainer. Debtor contends that the retainer is appropriate to the size and complexity of the case. Debtor also contends that payment of the retainer is within the Debtor's sound business judgment, citing In re Pomona Valley Medical Group, Inc., 476 F.3d 665, 670 (9th Cir. 2007) (applying business judgment standard in context of rejection of executory contract). Debtor requests that it be authorized to use cash collateral to pay the retainer upon the same terms and conditions already approved by this Court for use of cash collateral. The Court has reviewed the budgets attached to the orders approving the use of cash collateral and notes that the budgets do not appear to include a line item for this expenditure. Thus it is not clear what funds are to be used for this purpose. **Debtor's counsel should be prepared to address this issue at the hearing.**

Riverbank LRA opposes the motion on four grounds. Riverbank LRA contends first, that the form of Notice provided by the Debtor

is defective; second, that DBMAC is not a disinterested person; third, that the proposed fees are not justified; and fourth, that the Debtor has not met its burden of showing that retroactive employment is necessary.

Regarding the language in the Notice, Riverbank LRA points out that Debtor's initial notice, which was filed under Local Bankruptcy Rule 9014-1(b)(3) (pertaining to matters that are set on a Notice and Opportunity basis), does not recite verbatim the language required by that rule. Riverbank LRA also complains that the Notice did not set a tentative hearing date.

The Court has compared the language of the Debtor's notice with the language required by the local rule and concludes that the language of Debtor's Notice substantially complies with the requirements of Local Bankruptcy Rule 9014-1(b)(3). The rule does require that the language be verbatim. However, there is no evidence that in this instance any party has been prejudiced by the variance in the language, but in the future, the Debtor should strictly comply with that requirement. With respect to the tentative hearing date, that requirement is an alternative to the requirement to give at least seven days written notice of the hearing. Here, the Debtor chose to do the latter, thus complying with the rule. Riverbank's objection to the Notice is overruled.

Regarding the disinterestedness requirement, the Court finds that this requirement has been met by the declaration of Daron McDaniel asserting facts supporting disinterestedness and by the fact that DBMAC has waived any pre-petition claim. Riverbank LRA seems to assert that this waiver is not effective to render DBMAC disinterested on a theory that the waiver somehow exchanges a

pre-petition claim for a post-petition claim. Riverbank LRA's concerns should be alleviated by the fact that DBMAC will be required to seek Court approval of any fees incurred before any funds are authorized to be released to DBMAC from the retainer. This Court will approve only those fees that are incurred after the petition date.

Riverbank LRA also objects to the $4,000 per month proposed to be charged as not being necessary to the administration of the estate, or beneficial at the time the service was rendered. Riverbank LRA notes that the contract requires DBMAC to act as a go-between on an as-needed basis with any issues with the LRA but notes that DBMAC was not utilized to provide these services when there were issues with Riverbank LRA at the beginning of the case.

As noted, no fees will be authorized to be paid to DBMAC unless and until DBMAC files an application that is approved by this Court after notice and a hearing. Thus, Riverbank LRA's objection is premature. Additionally, as will be discussed, Debtor has provided a declaration outlining the post-petition services that have been performed.

With regard to the circumstances warranting nunc pro tunc employment, under In re Atkins, 69 F.3d 970, 974 (9th Cir. 1995), professionals seeking retroactive approval must (1) satisfactorily explain their failure to receive prior judicial approval; and (2) demonstrate that their services benefitted the estate in a significant manner.

Riverbank LRA also asserts that Debtor has not provided sufficient evidence of the need for the services of a consultant or why doing so is supported by a good business justification. The

Declaration of Daron McDaniel in support of Debtor's reply is detailed and explains the services DBMAC provided to Debtor during the months of March, April, and May 2015. From that declaration the Court finds that DBMAC has performed substantial services to assist the Debtor by acting as a liaison with local leaders to facilitate the Debtor's operations – for example, DBMAC met with leaders in the City of Riverbank and advocated for the Debtor's positions on issues relevant to its presence in Riverbank, including access to electricity and water for its operations, and explained how the Debtor provides a benefit to the local area.

In summary, the Court finds that the requirements for retroactive approval of the employment of DBMAC have been met. Riverbank LRA's objections are overruled, and the motion is granted. The Court may require that Debtor amend its cash collateral budget and submit an amended order approving the use of cash collateral, if appropriate.

This is a Tentative Decision. The parties may argue the matter at the hearing scheduled for June 11, 2015 at 1:45 p.m. If the Tentative is made final at the hearing, Debtor's counsel shall submit proposed forms of order for each motion.

**\*\*\*END OF TENTATIVE DECISION\*\*\***

Court Service List

All parties to be served electronically.