E. P. Keiffer
WRIGHT GINSBERG BRUSILOW P.C.
325 North St. Paul Street, Suite 4150
Dallas, TX 75201
(214) 651-6500
pkeiffer@wgblawfirm.com

Kathryn Diemer
DIEMER, WHITMAN & CARDOSI, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
(408) 971-6270
kdiemer@diemerwhitman.com

ATTORNEYS FOR COLLATERAL AGENT AND FE

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re | Case No. 15-50553-SLJ |
|---|---|
| AQH, LLC, | Chapter 11 |
| Debtor. | MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MISCELLANEOUS RELIEF PURSUANT TO SECTION 105(A) RELATED TO THE TERMS OF THE INTERLOCUTORY ORDER FOR USE OF CASH COLLATERAL. |
| | Honorable Stephen L. Johnson |

COMES NOW Fortis Advisors LLC, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement[1] and other applicable Transaction Documents ("**Collateral Agent**") and Future Electronics Corporation ("**FE**" sometimes collectively the "**Movants**") pursuant to 11 U.S.C.

---

[1] Any capitalized terms not defined herein are as defined in the Cointerra, Inc. Security and Pledge Agreement, the Collateral Agent Agreement and multiple Secured Convertible Notes all dated August 1, 2014.

1

§105(a) requesting this Court review specific elements of this Court's Cash Collateral Orders [DKT #69 and 89] (the "**Interlocutory CC Orders**") regarding AQH, LLC's (the "**Debtor**") use of specific collateral and the provision of adequate protection payments to Emergent Systems Exchange, LLC ("**Emergent**") as described in 11 U.S.C. §361(1) for the continued use of specific machinery and ancillary materials used in the Debtor's business operations as to which there are conflicting claims as to the extent, validity and priority of Emergent's asserted lien as to that collateral. The Movants request that this Court require Emergent return the adequate protection payments made under the Interlocutory CC Orders (as defined herein). Movants request this Court order the disgorged funds be placed in Debtor's counsel's trust account, which is what Debtor, Emergent and Fortis have agreed to do with prospective payments starting in August 2014, or with this Court, until this Court makes its determination on the substantive issues.

## Introductory Statement

1. The Debtor filed its voluntary Chapter 11 on February 19, 2015. No trustee has been appointed. There is no creditors committee. The Debtor is a debtor-in-possession operating its business. The case is identified, by the Debtor, as a small business case under Bankruptcy Code Section 101(51D).

## Cointerra, Inc., the Basis for the Movants Interest in the Debtor's Case

2. Movants are the holders of secured claims against Cointerra, Inc., ("**Cointerra**"). Movants are secured, collectively: a) in specific inventory supplied and utilized by the Cointerra in the production of TerraMiners; and b) by virtually all of the assets of Cointerra save for certain specific items not relevant to this proceeding. The Collateral Agent has an allowed first priority

2

Case: 15-50553   Doc# 115   Filed: 08/17/15   Entered: 08/17/15 15:32:50   Page 2 of 11

contractual secured claim against all of the assets of Cointerra and has had such status since August 4, 2014 when it perfected its security interests as detailed in the Transaction Documents (a true and correct copy of the Collateral Agent's filed UCC-1 is attached to the Declaration of E. P. Keiffer as **Exhibit A**). FE has a first priority PMSI in and to specific parts placed into each of the TerraMiners based upon its perfected purchase money security interest ("PMSI") based claim as to specific parts incorporated into each TerraMiner, as well as Cointerra's equipment, and has had such status since March 7, 2014 when it perfected same (a true and correct copy of FE's filed UCC-1 is attached to the Declaration of E. P. Keiffer as **Exhibit B**).

3. On or about November 18, 2014, Cointerra violated its security agreements with the Movants as to the following equipment: a) 990 TerraMiner IV 1.6TH/s Bitcoin Miners; b) 1,400 TerraMiner IV 2.0TH/s Bitcoin Miners; and c) Modular Power Supply/Liquid Cooling Assembly (100 each) and Fans (250) (collectively the "**Transferred Collateral**") by selling the Transferred Collateral to Emergent for $1,000,000 without having secured authority or permission from Movants to do so (the "**First TC Transaction**"). Contemporaneously, Emergent, sold the Transferred Collateral to the Debtor for $1,200,000 (the "**Second TC Transaction**").

4. Emergent details the Second TC Transaction in the claim it filed in this case: Claim # 9 for $1,136,925.50). Emergent was largely a financing party for the Second TC Transaction. Cointerra did not send any of the funds from the First TC Transaction to either of the Movants nor did it provide recompense of any kind for the violations of the Movant's security agreements. Cointerra consumed the proceeds of the First Transaction in the next six or so weeks after receipt of same.

5. Under applicable provisions of the UCC applicable to the sales of the Transferred Collateral, the Movant's perfected liens remain attached to the Transferred Collateral

3

notwithstanding the First TC Transaction or the Second TC Transaction having brought the Transferred Collateral into the Debtor's possession. Neither of the Movants was made aware of the Transferred Collateral transaction until at or near the time of Cointerra's Chapter 7 filing.

### Cointerra's Chapter 7 Proceeding

6. Cointerra filed a Chapter 7 case in the U.S. Bankruptcy Court for the Western District of Texas, Austin Division, Case No. 15-10109-HCM-7 on January 24, 2015. Cointerra did not list any of the Transferred Collateral as being property of it Chapter 7 estate. Both the Collateral Agent and FE timely filed proofs of claim in Cointerra's Chapter 7 case. The Collateral Agent and FE both have security interests completed TerraMiners. The Collateral Agent and FE have an agreement as to what proportion of the value of each TerraMiner is subject to their respective liens.

7. FE filed a limited motion for relief from the automatic stay and secured an order modifying the automatic stay as to Cointerra's parts inventory at its "consignee". FE has pending another motion for relief pending in that case as to other property that Cointerra stated was property of its estate and not this Debtor's.

8. The Collateral Agent filed a motion to terminate the automatic stay as to all of its collateral in the Cointerra Chapter 7 estate on March 19, 2015. On the last day to object to the Collateral Agent's requested stay relief, April 2, 2015, an objection was filed by another significant creditor in that case. The effect of the objection was to redirect the Collateral Agent's efforts to address and resolve the objection filed in the Cointerra case and to cause the then nascent efforts by the Collateral Agent to take a back seat until the issues in the Cointerra matter were resolved and a motion to approve an intricate and detailed compromise was filed.

9. A resolution was not secured, on a final basis, until the compromise settlement agreement filed in that case on June 9, 2015, was approved by entry of an order in the Cointerra Chapter 7 case on July 6, 2015. The now final resolution resulted in the Collateral Agent's secured claim being allowed and provided for sharing provisions, net of costs, with the Cointerra Chapter 7 estate depending upon what collateral or rights of the Collateral Agent were at issue. As to the Transferred Collateral, the Cointerra Chapter 7 estate gets 20% of the net proceeds of any collections and the Movants split the remaining 80% per there agreement as to values each of the Movant's collateral represents.

### Movants' Interactions with the Debtor's Chapter 11

10. The Collateral Agent's counsel had initial contact with Debtor's counsel on March 27, 2015, when an e-mail was sent that detailed the Movant's assertions as to their position that the Movants had a superior lien position as to the Transferred Collateral, notwithstanding the First TC Transaction and the Second TC Transaction. That e-mail contained a draft proof of claim that was to be filed once local counsel could be secured. However, as noted above, shortly thereafter the Collateral Agent's efforts to become involved in the case before this Court were sidetracked by the April 2, 2015 objection filed in the Cointerra case. The next contact between counsels for the Movant and the Debtor was had on July 8, 2015 and was initiated by Debtor's counsel, who had been following the events in the Cointerra case. Subsequent contacts resulted in the Stipulation filed in this Case at DKT# 107.

\\

\\

\\

## Pertinent Events in Debtor's Chapter 11

11. The Debtor sought authority for the interim use of cash collateral on February 24, 2015 [DKT#10] (the **Initial CC Motion**"). The Initial CC Motion set out the Debtor's detailed and ardent assertions that: a) Emergent did not have a security interest; b) any security interest that might exist had been perfected preferentially just prior to the Debtor's petition date; and c) that Emergent had no right to cash collateral use protection. The Initial CC Motion, nonetheless, also detailed a sequence of proposed adequate protection payments to be proffered to Emergent, noting that none of the Debtor's positions as to Emergent's secured status were being waived. The request to use cash collateral was supplemented by Debtor's Motion to Approve Loan to Pay Utility Deposit and Wages and Supplemental Motion to Authorize Use of Cash Collateral field on February 27, 2015 [DKT#21] (the "**Utility/CC Motion**").

12. Interim cash collateral use was granted from the bench on March 9, 2015 and a final cash collateral hearing was set for April 24, 2015 per this Court's docket entry. An order regarding the Utility/CC Motion was entered on March 9, 2015 [DKT# 50]. No adequate protection payments were addressed or approved in that order. Interim use of cash collateral related to operations was entered on April 8, 2015 [DKT# 69] for operations through May 15, 2015. Included therein was the payment of adequate protection to Emergent. The reference to an adequate protection payment was contained in the budget attached to that order. A subsequent cash collateral order [DKT#89] covering through the end of July 2015 was entered on May 7, 2015 after the scheduled April 24, 2015 hearing. Adequate protection to Emergent as set forth in the Initial CC Motion was also provided for in the budget attached the subsequent cash collateral order (hereinafter collectively DKT # 69 and #89 are the "**Interlocutory CC Orders**"). Emergent was paid adequate protection payments through July 2015 of $64,980.

6

13. Although parties disagree profoundly on the issues in this case, Debtor, Emergent and Movant were able to reach a stipulation as to future adequate protection payments. In the latter part of July, 2015, as the existing cash collateral order was nearing the end of its stated term, discussions were had with counsels for both Emergent and the Debtor and the Movants. As a result of those discussions a Stipulation for Authority to Use Collateral and for Adequate Protection was executed and filed with this Court [DKT #107] (the "**Stipulation**") which touches upon the issues raised in this Motion, from and after August, 2015. As referenced in paragraph 2 of the Stipulation, starting with the second sentence therein, all payments that heretofore had been sent to Emergent will thereafter be held in the Debtor's trust account pending further order of this Court. The Stipulation notes that its terms do not prohibit or affect Movants' ability to seek the relief requested herein or the Debtor or Emergent to oppose same.

### The Movants' Contentions

14. The Movants each have valid and subsisting perfected security interest in the Transferred Collateral now in Debtor's possession, based upon the their respective security agreements timely filed UCC-1's. The Movants' perfected security interests in the Transferred Collateral: a) are unaffected by the unauthorized transfer from Cointerra to Emergent and then to the Debtor; and b) are superior in time and right to any security interest that may be claimed by Emergent or by Andrew Faris. As such the Movants have had non-recourse secured claims[2] against the Transferred Collateral in an amount equal to the value of same as of the Petition Date and as same may change through the course of this case.

---

[2] Passage of the bar date in this case does not affect either of the Movants' secured claims per Bankruptcy Code Section 506(d)(2).

7

## Legal Analysis

15. The Interlocutory CC Orders are just that, interlocutory. Neither order is a final order. Moreover, were leave sought to appeal either of same, neither would be granted appellate review: these orders do not make any determinations of any substances other than allowing for use of the cash flow of the Debtor by agreement with the then understood secured creditors that might have an interest in cash collateral and might have a right to adequate protection. The Debtor's right or any party in interest's right to contest the extent, validity or priority of Emergent's asserted claim has not been affected. There were no motions filed by either of the beneficiaries of the Interlocutory CC Orders, nor was there any opposition filed to cash collateral usage.

16. This Court retains plenary power to adjust and revise and come to a different conclusion as to the Interlocutory CC Orders if circumstances warrant. (See generally *In re 450 S. Burlington Partners LLC* 2009 WL 2460880 (D. C.D. Cal- 2009) citing *In re NSB Film Corp.* 167 B.R. 176 (B.A.P. 9th Cir. 1994)). The Movants assert that such is case at bar.

17. Rule 9023, often used to seek "reconsideration" of an order, only applies to final orders, not interlocutory ones. As stated in *In re Arms* 238 B.R. 259, 261 (D. Vermont -1999) "Similarly, Rule 59(e), entitled 'Motion to Alter or Amend Judgment,' relates only to motions made after entry of a final judgment. See, e.g., *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir.1991) ('... Rule 60(b) was not available for relief from an interlocutory order. Rule 59(e) is equally applicable only to a final judgment.')" Rule 9024, better known by its civil procedure counterpart Rule 60(b), also only addresses final orders. While appellate review may be possible in certain instances not present here, an issue covered by an

8

interlocutory order that is not otherwise appealable, is subject to the issuing court's plenary power to modify its interlocutory orders if circumstances warrant.

18. In *NSB Film*, where appellate jurisdiction of an interlocutory order regarding use of cash collateral where the order on appeal stated that "this lien and administrative claim is without prejudice to the court's further consideration of whether a lien or administrative claim is appropriate in connection with any subsequent approvals of the use of cash collateral." *Id* at 179 the *NSB Film* court went on to note in determining that there was no appellate jurisdiction, as the interlocutory order at issue did not meet the limited jurisdictional requirements for appellate review of an interlocutory order, that:

> The bankruptcy court's order also does not affect any substantive rights because any party may still file an adversary proceeding to determine these issues. Furthermore, the bankruptcy court's order does not determine the discrete issue of whether or not the Creditors are entitled to the replacement lien or alternatively an administrative expense because the bankruptcy court's order is clearly conditioned on a future determination. *Id* at 180

Moreover, the Movants do not here seek a determination of which party is entitled to the previously made adequate protection payments, as that decision has to be addressed in an adversary proceeding regarding the extent, validity and priority of the liens at issue. The Movants merely seek the return of the adequate protection payments to a neutral site (this Court's registry or Debtor's counsel's trust account), in effect, while the dispute which generated this Motion, is addressed in a soon to be filed adversary proceeding or by means of a resolution approved by this Court under Rule 9019 (with the Debtor's imprimatur ).

19. Nothing in the Interim CC Orders determines that Emergent holds a valid security interest or that the payments made to them under those orders are not subject to later contest either by the Debtor or by any other party in interest. There is nothing in the Interim CC Orders that validates the extent, priority or validity of Emergent's asserted lien, nor shelters its eve of

filing perfection from avoidance. Emergent should be made to return such payments made to it solely by dint of this Court's prior orders that do not grant any specific relief to Emergent whatsoever, to the registry of this Court, as there is a bona fide dispute as to who is entitled to those payments.

20. In this instance, the Movants are asserting facts and circumstances which have not been presented to this Court heretofore. These facts and the applicable case law which addresses them, presents more than a rehash of a losing party's position that was addressed by a court's entered, albeit interlocutory, order. This Motion seeks to address facts and circumstances heretofore unknown to this Court, which nevertheless existed at the time of the entry of the Interlocutory CC Orders.

## PRAYER FOR RELIEF

WHEREFORE the Movants prays for the entry of an order, after notice and a hearing as may be required, which:

1. Requires Emergent to deposit into the registry of this Court or in Debtor's counsel's trust account, all adequate protection payments made prior to the effect of the Stipulation ($64,980) until there is a determination of which asserted secured creditor is entitled to same or an approved Rule 9019 settlement regarding same; and

\\
\\
\\
\\
\\

10

2. Such other and further relief to which the Movants may show themselves justly entitled.

Respectfully submitted:

Dated: August 17, 2015       **WRIGHT GINSBERG BRUSILOW P.C.**

By: *E. P. Keiffer*

325 North St. Paul Street, Suite 4150
Dallas, TX 75201
(214) 651-6500
pkeiffer@wgblawfirm.com

and

**DIEMER, WHITMAN & CARDOSI, LLP**

Kathryn Diemer
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
(408) 971-6270
kdiemer@diemerwhitman.com  (Local Counsel)

ATTORNEYS FOR FORTIS ADVISORS LLC, AS COLLATERAL AGENT AND FUTURE ELECTRONICS CORPORATION