MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor in Possession,
AQH, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>AQH, LLC,<br><br>                Debtor. | Case No. 15-50553-SLJ-11<br><br>Chapter 11<br><br>MOTION TO APPROVE DEBTOR IN POSSESSION FINANCING, USE OF SPACE FOR THIRD-PARTY HOSTING, AND RESALE CONTRACT<br><br>Proposed Preliminary Hearing:<br><br>Date:  October 15, 2015<br>Time:  3:30 p.m.<br>Place:  Courtroom 3099<br>          280 South First Street<br>          San Jose, California<br><br>Honorable Steven L. Johnson |

COMES NOW AQH, LLC, Debtor-in-Possession herein, moving for an order approving its agreement with Beijing Canaan Creative Information Technology Co., Ltd. ("Avalon") for the purchase of Avalon 6 Bitcoin Servers on credit terms, approving the use of space for hosting of additional Avalon 6 Bitcoin Servers owned by Avalon, and authorizing AQH to serve as an authorized, non-exclusive end-user reseller of all of Avalon's products for a 24-month period starting on October 1, 2015, and respectfully represents as follows:

## BACKGROUND

1. The within case was commenced by filing a voluntary chapter 11 petition on February 19, 2015. A trustee has not been appointed and the Debtor is in possession of the estate.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§1334 and 157(a).

3. This is a "core" proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B), and (D).

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the relief requested herein are Bankruptcy Code Sections 105(a), 363(b)(1), 364(c) & (d) and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure.

6. AQH leases facilities located at 5300 Claus Road, Buildings 3, 5, 21 and 49, in Modesto, California, to serve as its primary datacenter (the "Riverbank Datacenter"). AQH has constructed various tenant improvements in the Riverbank Datacenter which are not being fully utilized because of a lack of servers to perform the Bitcon blockchain security function.

7. AQH needs to purchase additional servers to supplement and replace its existing servers to improve electricity efficiency and increase revenue to fund its successful reorganization.

8. Avalon, a manufacturer of Bitcoin servers, has agreed to sell Avalon 6 Bitcoin Servers to AQH on favorable pricing and credit terms. AQH and Avalon entered into a definitive agreement to document the proposed transaction, subject to Court approval.

9. This Motion is supported by the Declaration of Sean Walsh, filed herewith (the "Walsh Decl."), and the following Introductory Statement submitted pursuant to Rule 4001(c) of the Federal Rules of Bankruptcy Procedure and the Court's Guidelines for Cash Collateral and Financing Motions.

## INTRODUCTORY STATEMENT

10. AQH seeks Court approval to purchase Avalon 6 Bitcoin Servers from Avalon on a secured basis under 11 U.S.C. § 364(c)(2) and (d). Additionally, the agreement between AQH and Avalon requires that AQH provide hosting services in its Riverbank Datacenter and that Avalon appoint AQH as an authorized reseller of its products in markets outside of the People's Republic of China.

11. Under the terms of that certain *Contract for Purchase and Sale of Equipment, Provision for Hosting Service, and Resale Contract Between AQH, LLC and Beijing Canaan Creative Information Technology Co., Ltd.*, a copy of which is attached as Exhibit "1" to the Walsh

Decl. (the "Agreement"), AQH and Avalon have agreed as follows:

    a.    <u>Total Amount</u>: Avalon will sell AQH approximately ▇ Avalon 6 Bitcoin Servers at the price of ▇ per server,[1] exclusive of taxes, shipping, and other government-imposed fees,[2] for an initial extension of credit of $819,000. This amount represents a discount on the normal retail price at which these servers are offered, which is approximately $1,100 per unit. The Agreement contemplates that additional advances may be made to fund additional purchases on an ongoing basis on similar terms, including purchases of servers for resale to consumers throughout the world. The terms of the credit extended by Avalon are provided in the Agreement. *See* Agreement §§ 1–3.

    b.    <u>Liens and Priority</u>: The aforesaid trade credit shall be secured by a purchase-money security interest in the new servers purchased from Avalon pursuant to Bankruptcy Code Section 364(c)(2) and, to the extent Andrew L. Faris contends that his pre-petition lien on all of AQH's assets is superior to the proposed lien in favor of Avalon, a priming lien on the new servers purchased from Avalon to grant Avalon's lien priority over the lien of Andrew L. Faris. *See* Agreement § 7. Priming the lien of Andrew L. Faris to the extent it attaches to the assets sold by Avalon is appropriate because AQH is unable to the proposed trade credit without offering a purchase-money security interest, AQH has been unable to obtain more favorable financing, and Faris's interest is already protected by his existing collateral and the adequate protection payments he already receives. The new lien created by the agreement only attaches to new equipment purchased from Avalon.

    c.    <u>Interest Rate</u>: The extension of credit to AQH is without interest.

    d.    <u>Maturity</u>: The initial payment of $819,000 (plus costs of shipping and import duties, if any) is due 90 days after Avalon delivers the first shipment of servers. Future purchases

---

[1] By separate motion, the Debtor is seeking to file the motion, this declaration, and the agreement and under seal pursuant to 11 U.S.C. § 107(b) to redact certain confidential commercial information, including pricing. The Debtor will make the information available to parties in interest after the execution of an appropriate nondisclosure agreement.

[2] Avalon will make additional advances to cover the costs of shipping and any import duties, which AQH will reimburse to Avalon.

for servers to be installed in the datacenter will be paid for in advance. Future purchases for servers to be resold to consumers may be on credit, but payment for such purchases is due monthly at the same time that AQH bills Avalon for the hosting services contemplated by the contract. *See* Agreement §§ 1, 2, 4(b). AQH has the option to prepay any obligation without penalty.

   e. <u>Payment of Expenses</u>. The Agreement requires AQH to reimburse Avalon for costs of shipping, import duties, and other government-imposed charges. These costs will be paid form additional advances of trade credit. The parties agreed to bear their own costs in connection with the Agreement, but in the event of a breach of the Agreement, the breaching party is obligated to pay the attorneys' fees and costs of the nonbreaching party. *See* Agreement § 17.

   f. <u>Events of Default</u>: The Agreement defines an event of default as failure to make a payment required by the Agreement, or failure to comply with another term of the Agreement, including not providing notice of sales of more than 50 units (§ 4(d)), complying with the approved price range when reselling the servers (§ 4(e)), not providing sales support to consumers (§ 4(f)), or the unauthorized use of Avalon's trademarks (§ 4(g)). *See* Agreement § 7.

   g. <u>Borrowing Limits</u>. Other than the initial purchase of servers, the Agreement does not have a preset borrowing limit. The parties intend for the agreement to provide a framework for standard trade credit between AQH and Avalon.

   h. <u>Borrowing Conditions</u>. The Agreement is conditional upon approval by the Bankruptcy Court.

   i. <u>Provisions Regarding the Automatic Stay</u>. The Agreement contains no provisions concerning the automatic stay.

   j. <u>Limitations on AQH's Right to Procure Post-petition Credit</u>. The Agreement contains no provisions concerning AQH's right to procure post-petition credit.

   k. <u>Indemnification Provisions; Release of Liability</u>. Section 6 of the Agreement provides a limited warranty and limitation of remedies in the event of a fault with any of the products purchased from Avalon, including a right to have Avalon to repair or replace defective equipment. Additionally, paragraph 13 contains a mutual indemnification clause for claims arising

out of the Agreement.

l. <u>Waiver of Claims</u>. The Agreement contains no provisions concerning the waiver of claims.

m. <u>No Surcharge</u>. The Agreement contains no provisions concerning surcharging Avalon.

n. <u>Deadlines for Filing a Plan of Reorganization and Confirmation Thereof</u>. The Agreement does not contain any provisions setting deadlines for filing a plan of confirming a plan.

o. <u>Provisions for "Carve-Outs" for Chapter 11 Professional Fees and Expenses, Chapter 7 Trustee</u>. The Agreement does not contain any provisions regarding carve-outs for professional fees. The proposed lien only encumbers new equipment and inventory purchased from Avalon; the lien does not attach to existing property of the estate.

12. There is no known connection between AQH and Avalon.

13. The proposed transaction allows 90 days following delivery to make the payment on the initial purchase, permitting AQH time to install the servers in the Riverbank Datacenter and generate the cash necessary to repay the advance.

## DISCUSSION

A. **APPROVAL OF PURCHASE OF SERVERS ON CREDIT SECURED BY A PURCHASE-MONEY SECURITY INTEREST IN THE ASSETS PURCHASED.**

14. Approval of the DIP Financing on a secured basis is appropriate because more favorable financing is not available. Bankruptcy Code § 364 provides an escalating series of inducements which a debtor-in-possession may offer to attract credit during the post-petition period, including liens equal to or senior to existing liens on encumbered property. *In re Photo Promotion Associates, Inc.*, 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), *aff'd*, 881 F.2d 6 (2d Cir. 1989). Specifically, a debt may be "secured by a lien on property of the estate that is not otherwise subject to a lien" with court approval. 11 U.S.C. § 364(c)(2). Here, AQH has insufficient cash to purchase additional servers and its cash position is eroding. AQH's current servers are relatively power inefficient and additional servers are needed to utilize the Riverbank Datacenter to full capacity.

15. AQH is entitled to offer to secure new financing by a lien against its assets if it

"reasonably attempted, but failed, to obtain unsecured credit…." *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990). AQH attempted to secure post-petition financing from traditional banks, but these efforts were unsuccessful and AQH's management determined that seeking a loan from a bank was futile given its financial position. AQH has not been able to otherwise obtain financing on terms acceptable to AQH and its other secured creditors. AQH entered in to discussions with several other potential lenders regarding post-petition debtor in possession financing and received only one offer aside from the proposed transaction with Avalon. This offer for credit in the approximate amount of $400,000 at an effective rate of interest much greater than the 0% offered in the proposed transaction with Avalon and included substantial loan fees. Additionally, the lender required AQH to sell certain assets to the lender and then lease those assets back from the lender and grant super-priority liens to the lender on all of AQH's remaining assets to secure the loan. *See Walsh Decl.* ¶ 12. AQH has been able to obtain financing from Avalon to provide trade credit on favorable terms: allowing AQH to obtain servers, deferring payment for 90 days with no interest charges, and securing the claim with a purchase-money lien on the servers themselves. Accordingly, the terms on the Agreement are appropriate and should be approved.

16. AQH negotiated with Avalon regarding the status of its lien rights, and Avalon insists that its liens be first position, purchase-money liens on the assets sold by Avalon. AQH understands this may require the priming of the lien held by Andrew Faris that attaches to all assets of AQH, and AQH requests that the Court approve such priming. AQH has not been able to procure credit on a more favorable basis and seeks the Court's approval of the priming liens pursuant to Section 364(d). Mr. Faris' lien is adequately protected because the new liens attach to new equipment only. In other words, the basket of assets to which Faris' lien attaches will not be diminished. Moreover, Faris is receiving adequate protection payments.

17. Immediate approval of the extension of trade credit is necessary to avoid immediate and irreparable harm to the estate. *See* Fed. R. Bankr. P. 4001(c)(2). The estate's cash position has eroded as AQH's existing servers have been failing at an increasing rate (as AQH ran out of spare parts and is unable to repair the existing systems) and AQH's market share in the global Bitcon

blockchain security market has reduced, undercutting AQH's income. Immediate infusion of additional servers is needed to backfill the lost processing power cause by the server failures. The income derived from the addition of the new Avalon servers to AQH's operations and the additional lines of business related to server hosting and server sales will immediately improve AQH's cash positon, allowing it to meet its ongoing post-petition obligations and repay the proposed extension of credit by Avalon.

18. AQH seeks immediate approval of the purchase of the first tranche of ▇ servers for the total price of $819,000 (plus costs of shipping and import duties, if any), subject to final approval of the agreement at a future hearing.

B. **THE SERVER HOSTING AND RESALE AGREEMENTS ARE WITHIN THE DEBTOR'S SOUND BUSINESS JUDGMENT AND SHOULD BE APPROVED.**

19. The remaining provisions of the agreement provide for AQH to host servers owed by Avalon at the Riverbank Datacenter and to become an authorized reseller of Avalon products. Both of these items are new lines of business that diversify and supplement AQH's income stream and make AQH's operations less sensitive to the day-to-day shifts in the value of Bitcoin. While AQH contends that these actions are within the ordinary course of its business, it moves for Court approval out of an abundance of caution.

20. The Court may authorize the Debtor in Possession to use assets of the estate outside the ordinary course of business. 11 U.S.C. § 363(b). The relevant legal standard is business judgment. *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (standard under 11 U.S.C. § 363(b)(1) is "business judgment"); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997). "[T]he bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (applying business judgment standard). Where a proposed action by a debtor in possession or trustee is proposed in good faith and upon a reasonable basis, "[t]he court will not entertain objections to a trustee's conduct of the estate . . . ." *In re Curlew Valley Associates*, 14 B.R. 506, 513–514 (Bankr. D. Utah 1981); *see also In re Southern Biotech,*

*Inc.*, 37 B.R. 318, 322–323 (Bankr. M.D. Fla. 1983).

21. The Debtor submits that the proposed offering of space in its Riverbank Datacenter is within its sound business judgment. The space is currently unused and the price for AQH's services ($0.08 per kilowatt hour) exceeds its actual cost of electricity (estimated at $0.04 per kilowatt hour going forward); said 100% markup fairly compensates the estate. Additionally, the hosting of Avalon-owned servers will allow AQH to quickly take delivery of additional product from Avalon as product is sold to third parties by purchasing servers already on site in the United States rather than waiting for shipments from China.[3]

22. The proposed resale agreement between AQH and Avalon is also within AQH's sound business judgment. The Agreement allows for AQH to further diversify its income streams while leveraging its experience and placement in the Bitcon blockchain security market. While final market price sheets have not yet been developed by AQH and Avalon, AQH anticipates that it will earn a fair mark-up on each sale, creating additional income which AQH may commit to repayment of claims. The market price sheets may be revised from time to time by Avalon. Once available, AQH will file a copy of the final market price sheet with the Court and will provide notice of changes to the final market price sheet.

23. For these reasons, the proposed server hosting and resale agreements are within AQH's sound business judgment and should be approved.

## CERTIFICATION

The undersigned Certifying Professional has read the accompanying motion or stipulation and the Introductory Statement; to the best of my knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the motion or stipulation are in conformity with the Court's Guidelines For Cash Collateral And Financing Motions and Stipulations except as set forth above. I understand and have advised the debtor in possession or trustee that the court may grant appropriate relief under Fed. R. Bankr. P. 9024 if the court determines that a material element

---

[3] Performance concerns regarding the sale of used equipment do not apply as usual in the Bitcoin processing industry. A Bitcoin processor is an income-producing asset, and actual demonstrated performance is attractive to buyers.

of the motion or stipulation was not adequately disclosed in the Introductory Statement.

/s/ Matthew J. Olson
Matthew J. Olson

WHEREFORE, the Debtor prays for entry of an order:

1. Approving the aforesaid Agreement, including the purchase of the first tranche of servers for the total price of $819,000 (plus costs of shipping and import duties, if any), on an interim basis pending final approval;

2. Granting the Avalon a first-priority purchase-money lien against all of the assets purchased from Avalon; and

3. For such other and further relief as is appropriate in the premises.

DATED: October 12, 2015        MACDONALD | FERNANDEZ LLP

By: /s/ Matthew J. Olson
Matthew J. Olson
Attorneys for Debtor in Possession,
AQH, LLC