MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor in Possession,
AQH, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>AQH, LLC,<br><br>            Debtor. | Case No. 15-50553-SLJ-11<br><br>Chapter 11<br><br>*EX PARTE* MOTION TO FILE REDACTED DOCUMENTS RE SUPPLEMENT TO DEBTOR'S MOTION TO APPROVE DEBTOR IN POSSESSION FINANCING, USE OF SPACE FOR THIRD-PARTY HOSTING, AND RESALE CONTRACT AND DOCUMENTS FILED IN SUPPORT THEREOF |

COMES NOW AQH, LLC, Debtor-in-Possession herein, moving *ex parte* pursuant to 11 U.S.C. § 107(b) for an order sealing portions of the Supplemental Declaration of Sean Walsh offered in support of AQH's motion to approve its agreement with Beijing Canaan Creative Information Technology Co., Ltd. ("Avalon") for the purchase of Avalon 6 Bitcoin Servers on credit terms, approving the use of space for hosting of additional Avalon 6 Bitcoin Servers owned by Avalon, and authorizing AQH to serve as an authorized, non-exclusive end-user reseller of all of Avalon's products for a 24-month period starting on October 1, 2015, (the "Financing Motion") and respectfully represents as follows:

    1.    The within case was commenced by filing a voluntary chapter 11 petition on February 19, 2015. A trustee has not been appointed and the Debtor is in possession of the estate.

    2.    This Court has jurisdiction pursuant to 28 U.S.C. §§1334 and 157(a).

    3.    This is a "core" proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B), and (D).

1

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the relief requested herein are Bankruptcy Code Sections 105(a) 107(b) and Rule 9018 of the Federal Rules of Bankruptcy Procedure.

6. Avalon, a manufacturer of Bitcoin servers, has agreed to sell Avalon 6 Bitcoin Servers to AQH on favorable pricing and credit terms, avoiding the need for the Debtor to procure more expensive debtor in possession financing on the market. AQH and Avalon entered into a definitive agreement to document the proposed transaction, subject to Court approval. The Financing Motion to approve said agreement is currently pending before the Court.

7. The Court requested that the Debtor file a supplemental declaration to provide additional evidentiary support for its motion, including more detailed projections for its operations and how the Debtor expects to generate the revenue figures included in the initial declaration. To this end, the Debtor is offering the supplemental declaration of Sean Walsh in support of the Financing Motion.

8. In the Walsh Supplemental Declaration and supporting exhibits, references are made to confidential commercial information, including the pricing information for the products purchased by AQH and other information which could be used to compute the pricing information. Both AQH and Avalon consider such information to be confidential commercial information because its release would reveal to the market the special pricing negotiated by the parties. If such information became known by the general public, it may have a negative impact on Avalon's business interests, including its retail pricing scheme and its relationships with other purchasers. Additionally, disclosure of the pricing information will provide an unfair advantage to Avalon's competitors by providing insight into Avlaon's costs of operating and its margins. Therefore, all references to unit pricing in the Motion and supporting pleadings have been redacted and AQH seeks Court authority for such redaction from the public record.

9. Because the pricing information can be calculated by knowing a combination of the total price paid, the total number of units purchased, the total amount of electricity used by AQH, the computational power of the servers operated by AQH, the projected number of systems AQH

2

anticipates will be sold, and the profit per machine, AQH considers this information to be confidential commercial information. Therefore, all references these matters have been redacted and AQH seeks Court authority for such redaction from the public record.

10. This information should be protected from public disclosure because by combining this information which other known data points (such as the Avalon 6's processing power or amount of electricity used per terrahash (a unit of processing power)) can be easily used to compute total number of servers purchased, and thereby the price per machine.

11. In an effort to afford all parties in interest the ability to fully evaluate the proposed transaction, the Debtor is prepared to share unredacted copies of the Motion, Declaration, the Supplemental Declaration, credit agreement, and other exhibits with the parties in interest upon execution of a nondisclosure agreement, which is attached hereto as Exhibit "1."

12. Because the aforesaid pricing information is confidential commercial information, the Court should previously described information, including information which a party could use to compute the pricing information, from public disclosure. 11 U.S.C. § 107(b)(1); *see also In re Alterra Healthcare Corp.*, 353 B.R. 66, 75–76 (Bankr. D. Del.2006) (commercial information is information which would result in an unfair advantage to competitors by providing them information as to the commercial operations of the party requesting that the records be sealed) (citing *Ad Hoc Protective Comm. for 10 1/2% Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)).

WHEREFORE, the Debtor prays for entry of an order:

1. Approving the redaction of the unit price, the total price paid, the total number of units purchased, the total amount of electricity used by AQH, the computational power of the servers operated by AQH, the projected number of systems AQH anticipates will be sold, and the profit per machine in the Financing Motion and supporting pleadings and exhibits from public disclosure; and

2. For such other and further relief as is appropriate in the premises.

DATED: October 18, 2015            MACDONALD | FERNANDEZ LLP
                                   By: /s/ Matthew J. Olson
                                       Matthew J. Olson, Attorneys for
                                       Debtor in Possession, AQH, LLC

3

# EXHIBIT 1

# CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

This Confidentiality and Nondisclosure Agreement (the "Agreement") is entered into by and between _____ ( "You"), and AQH, LLC (the "Debtor"), sometimes collectively referred to as "Parties" and individually as a "Party."

## RECITALS

A. On February 19, 2015, the Debtor commenced a voluntary chapter 11 bankruptcy petition (Case Number 15-50553-SLJ-11). The case remains pending under chapter 11 of Title 11 of the United States Code before the United States Bankruptcy Court for the Northern District of California (the "Court"). A trustee has not been appointed and the Debtor remains in possession of the estate.

B. On October 12, 2015, the Debtor filed its motion to approve its agreement with Beijing Canaan Creative Information Technology Co., Ltd. ("Avalon") for the purchase of Avalon 6 Bitcoin Servers on credit terms, approving the use of space for hosting of additional Avalon 6 Bitcoin Servers owned by Avalon, and authorizing AQH to serve as an authorized, non-exclusive end-user reseller of all of Avalon's products for a 24-month period starting on October 1, 2015 (the "Motion"). The Motion, *inter alia*, seeks Court authority under § 364(c) to purchase the aforesaid servers on credit terms, with an initial extension of credit of $819,000 (plus costs of shipping and import duties, if any).

C. To protect confidential commercial information, including certain pricing information, the Debtor filed the motion under seal pursuant to § 107(b). A redacted copy of the motion was filed in the public record with the price per unit and the total units purchased redacted.

D. You desire to review the confidential commercial information, including pricing information and information from which the pricing information may be computed, in order to evaluate the proposed financing. To this end, You desire to review certain documents or receive certain information that is or may be subject to a privilege, right of privacy, claim to work product, obligation to maintain confidentiality, or other restriction upon disclosure.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement, the Parties agree to enter into a confidential relationship with respect to the disclosure by the Parties of the aforesaid confidential commercial information, as follows:

1. Confidential Information. As used herein, the term "Information" means any and all confidential commercial information (whether written, oral or in another form), including pricing information and information from which the pricing information may be computed, concerning the Debtor or Avalon (whether prepared by either the Debtor or Avalon or either's agents, officers, managers, advisors, professionals or members, or otherwise, and irrespective of the form of communication) that is furnished to You or any of Your agents, attorneys, professionals or advisors (collectively, "Representatives") now or in the future. In addition,

"Information" shall be deemed to include all correspondence, emails, notes, summaries, analyses, compilations, studies, interpretations and other documents, whether written or electronic, prepared by You or Your Representatives which contain, reflect or are based upon, in whole or in part, the information furnished to You or any of Your Representatives pursuant to this Agreement. The term "Information" does not include information which: (i) is or becomes available to the public generally (other than as a result of a disclosure by You or any of Your Representatives); (ii) becomes available to You on a non-confidential basis from a source other than the Debtor, provided that such source is not, to the best of Your knowledge, bound by a confidentiality agreement with, or any contractual, legal or fiduciary obligation of confidentiality to, the Company or any other person with respect to such information; (iii) has been independently acquired or developed by You or any of Your Representatives without violating any of the obligations under this Agreement; or (iv) was within the possession of You or any of Your Representatives prior to being furnished by or on behalf of the Debtor whether pursuant to this Agreement or otherwise. You hereby acknowledge that the Debtor is not affirmatively obligated to provide any Information hereunder.

2. Accuracy of Information. Although the Debtor will provide You with such Information as it believes to be relevant, it does not make any representation or warranty, express or implied, as to the accuracy or completeness of any of the Information. You agree that neither the Debtor, nor any of its officers, directors, professionals, employees, or agents shall have any liability to You or to any of Your Representatives relating to or resulting from the use of the Information or any errors therein or omissions therefrom.

3. Use of Information and Confidentiality.

a. As a condition to the furnishing of the Information to You, You agree that all Information furnished to You or Your Representatives, whether prior to or after execution of this Agreement, will be kept strictly confidential; provided, however, that You may disclose Information to the extent that the Debtor gives its prior written consent to such disclosure. You agree to take all reasonable measures to keep the Information confidential and to take all reasonable measures to restrain Your Representatives from prohibited or unauthorized disclosure or use of the Information.

b. In the event that You or any of Your Representatives are requested or required (by oral questions, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process) to disclose any of the Information, You shall provide the Debtor with written notice as promptly as reasonably practicable of any such request or requirement so that the Debtor may seek a protective order or other appropriate remedy or waive compliance with the provisions of this Agreement. If the Debtor waives compliance with the provisions of this Agreement with respect to a specific request or requirement, You and Your Representatives shall disclose only that portion of the Information that is covered by such waiver and which is necessary to disclose in order to comply with such request or requirement. Notwithstanding the foregoing, in the event that You or any of Your Representatives discloses Information under the terms of this subsection, You shall take all reasonable measures to preserve the confidentiality of the Information, including, without

2

limitation, by cooperating with the Debtor to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded the Information.

        c.      You hereby acknowledge that You are aware (and that any person to whom You disclose Information has been, or upon receiving such information will be, advised) of the restrictions imposed by federal and state securities laws on a person possessing material nonpublic information about a company, including certain Information. You agree that You shall not use any of the Information in making any new investment or loan, and You shall not use any of the Information in managing any existing investment or loan, except Your claim or claims against the Debtor (if any) and except to the extent that the Debtor consents in writing.

    4.    <u>Remedies</u>. It is understood and agreed that money damages would not be a sufficient remedy for any breach of this Agreement by You or any of Your Representatives and that the Debtor shall be entitled to equitable relief, including injunction and specific performance, as a remedy for such breach. Such remedies shall not be deemed to be the exclusive remedies for a breach by You of this Agreement, but shall be in addition to all other remedies available at law or equity to the Debtor. If the Debtor institutes any action or proceeding to enforce by specific performance or other equitable relief the provisions of this Agreement, You hereby waive the claim or defense that the Parties have an adequate remedy at law, and You further waive any requirement for the posting of a bond. In the event of litigation relating to this Agreement, if a court of competent jurisdiction determines that You or any of Your Representatives has breached this Agreement, You shall be liable for and shall pay to the Debtor on demand the legal fees and expenses incurred by the Debtor in connection with such litigation, including any appeal therefrom.

    5.    <u>Waiver and Amendments</u>. No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege hereunder. No provisions of this Agreement can be amended without the specific written consent of each of the parties hereto.

    6.    <u>Counterparts</u>. This Agreement may be executed in counterparts. Each such counterpart shall be, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same agreement. If this Agreement is signed in counterparts, no signatory hereto shall be bound until both Parties have duly executed, or caused to be duly executed, a counterpart of this Agreement. The signature appearing upon a copy of this Agreement transmitted by one Party to the other Parties by facsimile or email shall constitute an original signature for all purposes. The person signing on behalf of each Party represents that he or she has the right, power and authority to execute this Agreement.

    7.    <u>Governing Law</u>. This agreement shall be governed by and construed in accordance with the laws of the State of California without giving effect to the conflicts of laws principles thereof. Any dispute arising under this Agreement shall be litigated in the Court. The Parties hereby consent to the sole and exclusive personal jurisdiction and venue of said Court.

Dated: October ___, 2015                AQH, LLC, Debtor in Possession

                                        By: _____
                                            CHRISTOPHER CUNNINGHAM,
                                            Responsible Individual


                                        By: _____
                                            SEAN WALSH,
                                            Managing Member



Dated: October ___, 2015                _____
                                        (Name of Counter-Party)

                                        By: _____

                                            Name: _____

                                            Title: _____

4