Matthew J. Olson
MACDONALD | FERNANDEZ LLP
221 Sansome Street, Third Floor
San Francisco, CA 94104
(415) 362-0449 Ext. 205
matt@macfern.com

ATTORNEY'S FOR THE DEBTOR

E. P. Keiffer
WRIGHT GINSBERG BRUSILOW P.C.
325 North St. Paul Street, Suite 4150
Dallas, TX 75201
(214) 651-6500
pkeiffer@wgblawfirm.com

Kathryn Diemer
DIEMER, WHITMAN & CARDOSI, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
(408) 971-6270
kdiemer@diemerwhitman.com

ATTORNEYS FOR COLLATERAL AGENT AND FE

David B. Galle
Oppenheimer Wolff & Donnelly, LLP
222 South 9th Street
Suite 200
Minneapolis, MN 55402
DGalle@oppenheimer.com

ATTORNEYS FOR EMERGENT SYSTEMS, INC.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>AQH, LLC,<br><br>      Debtor. | Case No. 15-50553-11-SLJ<br>Chapter 11<br><br>STIPULATION RESOLVING SECTION 105(a) MOTION REQUESTING REVIEW OF TERMS OF INTERLOCUTORY ORDER AND TO INTRODUCE EVIDENCE IN SUPPORT<br>      Honorable Stephen L. Johnson |

1

COMES NOW: a) Fortis Advisors LLC, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement[1] and other applicable Transaction Documents ("**Collateral Agent**") Future Electronics Corporation ("**FE**" sometimes collectively these parties are "**CA/FE**"); b) Emergent Systems Exchange, LLC. ("**ESE**") and AQH. LLC ("**Debtor**") and file this Stipulation Resolving Section 105(a) Motion Requesting Review of Specific Elements of this Court's Cash Collateral Orders [DKT #69 and 89] (the "**Interlocutory CC Orders**") regarding the Debtor's use of specific collateral and the provision of adequate protection payments to ESE for the continued use of specific machinery and ancillary materials used in the Debtor's business operations.

## Background Regarding the Stipulation

1. As noted in the Motion, there are conflicting claims as to the extent, validity and priority of ESE's asserted lien as to specific collateral, as well as rights to adequate protection payments ordered to be paid by to them by the Debtor. As noted in the Motion, CA/FE sought a determination of who is entitled to such adequate protection, as CA/FE asserted various bases for their security interests having priority over ESE's position. As also noted in the Motion the CA/FE anticipated that a resolution would likely be sought to be approved by this Court under Rule 9019 as to the underlying issues which generated same, if it was not litigated. This Stipulation is intended to enable a motion to approve compromise and settlement as to certain of the issues herein regarding the dueling claims as to the collateral at issue, to be initiated, forthwith by the Debtor, while also resolving the issues set forth in the Motion without a lengthy and costly

---

[1] Any capitalized terms not defined herein are as defined in the Cointerra, Inc. Security and Pledge Agreement, the Collateral Agent Agreement and multiple Secured Convertible Notes all dated August 1, 2014.

2

hearing on October 21, 2015 and a subsequent adversary proceeding to address extent, priority or validity of the asserted liens by CA/FE and ESE.

## The Underlying Issues

2. The Debtor filed its voluntary Chapter 11 on February 19, 2015. No trustee has been appointed, there is no creditors committee and the Debtor is a debtor-in-possession operating its business and has admitted its small business status under Bankruptcy Code Section 101(51D).

3. CA/FE are holders of allowed secured claims in the Chapter 7 case of Cointerra, Inc., U.S. Bankruptcy Court for the Western District of Texas, Austin Division, Case No. 15-10109-HCM-7 ("**Cointerra**"). The Collateral Agent has an allowed first priority contractual secured claim against all of the assets of Cointerra (with certain specific exceptions detailed in the compromise settlement agreement approved in the Cointerra Chapter 7 case) and has had such status since August 4, 2014 when it perfected its security interests as detailed in the Transaction Documents. FE has an allowed secured first priority PMSI in and to specific parts placed into all of the TerraMiners that Cointerra caused to be manufactured.

4. On or about November 18, 2014, Cointerra sold the following equipment: a) 990 TerraMiner IV 1.6TH/s Bitcoin Miners; b) 1,400 TerraMiner IV 2.0TH/s Bitcoin Miners; and c) Modular Power Supply/Liquid Cooling Assembly (100 each) and Fans (250) (collectively the "**Transferred Collateral**") to ESE for $1,000,000 (the "**First TC Transaction**"). Contemporaneously, ESE, sold the Transferred Collateral to the Debtor for $1,200,000 (the "**Second TC Transaction**") (details of the sale are set forth in ESE's filed claim in this case – Claim # 9 for $1,136,925.50). ESE was largely a financing party for that transaction.

5. ESE asserts that its secured claim is superior to those asserted by the CA/FE because the First TC Transaction was in the ordinary course of Cointerra's business as inventory or in the

3

alternative, that the sale was authorized by specific terms of the Collateral Agent's security agreement with Cointerra. CA/FE assert that the First TC Transaction and the Second TC Transaction were done without having secured authority or permission from CA/FE to do so, as required by their respective security agreements relative to Cointerra's equipment (CA/FE also deny that the Transferred Collateral was inventory) and specifically as to the Collateral Agent's collateral, that the conditions for selling free of the Collateral Agent's security interest were not present in this instance.

### Background – Post Petition

6. The Debtor has, after securing necessary revisions and improvements to its operating situs, re-initiated and maintained operations utilizing the Transferred Collateral. In the Interlocutory CC Orders adequate protection was provided to Emergent as detailed in the attachments to the Interlocutory CC Orders. The Interlocutory CC Orders functionally allow for the use of cash collateral by the Debtor, if such even exists (a point raised by the Debtor in the motions). There is no deadline to object to the extent or validity of Emergent's asserted lien and there are no replacement liens granted in the Interlocutory CC Orders. Since the entry of the Interlocutory CC Orders Emergent has been paid a total of $64,980 (the "**AP Payments**").

7. Emergent was being paid adequate protection payments notwithstanding the Debtor's stated opposition to Emergent's assertion of secured status, wherein the Debtor notes that there is no security agreement and that even if there was a security interest granted, the UCC-1 was filed on the eve of the Debtor filing this case and was thus an avoidable transfer under Section 547 of the Bankruptcy Code. Emergent disputes the Debtor's assertions.

8. In the latter part of July, 2015, as the existing cash collateral order was nearing the end of its stated term, discussions were had with counsels for both Emergent and the Debtor and

the Movants. As a result of those discussions a Stipulation for Authority to Use Collateral and for Adequate Protection was executed and filed with this Court [DKT #107] (the "**AP Stipulation**") which addresses the issues raised in the Motion, from and after August, 2015. All such payments heretofore being sent to Emergent are to be held in the Debtor's counsel's trust account pending further order of this Court. The only payment made so far is being held in accordance with the AP Stipulation.

### The Stipulation Resolving the Motion

9. All AP Payments made or set aside to date will be split 50/50 (Emergent will either: i) fund CA/FE via its counsel $24,015; or ii) fund CA/FE via its counsel the next $24,015 that ESE receives in any way or manner on account of any transaction with the Debtor related to the Transferred Collateral or the ESE Claim and agree that the $16,950 held by Debtor's counsel will be sent to CA/FE's counsel by Debtor's counsel. All future AP payments, if any, after the 50/50 split as to prior payments and funds set aside has been achieved, will be split 50/50 as well or directed to be made to each party;

10. The ESE Claim and the CA/FE Claims, by virtue of the approval of a Rule 9019 Motion to be filed by the Debtor forthwith, consistent to the terms of this Stipulation, will be combined into a total allowed claim of $1,200,000 (the "**Allowed Resolution Claim**"). The split of the Allowed Resolution Claim as between secured and unsecured portions will be as agreed to with the Debtor or as determined by the Bankruptcy Court if no agreement can be reached and approved. Nevertheless, the Debtor shall promptly file a Rule 9019 Motion to Compromise Controversy, which at a minimum, approves the Allowed Resolution Claim in all respects as to allowance and resolves any and all issues relative to same or any rights or powers the Debtor may have to otherwise contest same, save for the means by which its secured and unsecured portions may be determined if not agreed upon and detailed in the that Rule 9019 filing.

11. The agreed or determined secured portion of the Allowed Resolution Claim shall be shared 50/50 between ESE and CA/FE. The unsecured portion of the Allowed Resolution Claim will be split such that ESE will be entitled to an unsecured claim that is $100,000 greater than the portion that is allowed for CA/FE. By way of example, if the unsecured claim total out of Allowed Resolution Claim is $600,000 then ESE will have a 350,000 unsecured portion and CA/FE will have the remaining $250,000 unsecured portion.

12. The Debtor is relieved from having to make any future adequate protection payments to ESE or CA/FE, provided that the Debtor promptly moves forward and files an approval disclosure statement and a confirmable plan of reorganization in the near future, consistent with the deadlines which govern an admitted small business debtor.

13. CA/FE and ESE have agreed to other issues as between themselves as to their future conduct and positions in this case which do not require approval to be binding upon them. Such other elements of that agreement do not need to be in this Stipulation as they relate to negotiations to be had with the Debtor regarding how this case can proceed to confirmation.

14. This Stipulation shall not affect or prejudice the rights or remedies of any party hereto other than as specifically provided herein, which rights include but are not necessarily limited to (i) any Party's right to file a motion for relief from the automatic stay to file or support a motion for appointment of a chapter 11 trustee or conversion of this case to a case under chapter 7 of the Bankruptcy Code; and (ii) Debtor's right to oppose any such motion.

15. This Stipulation may be executed in any number of identical counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and same instrument. Signatures to this Stipulation transmitted by e-mail shall be sufficient to bind the signing party and shall have the same force and effect as an original.

DATED October 21, 2015

MACDONALD | FERNANDEZ LLP        WRIGHT GINSBERG BRUSILOW P.C.

By: _____         By: _____
    Matthew J. Olson                   E. P. Keiffer
    Attorneys for AQH, LLC              Attorneys for Fortis Advisors LLC, as
                                        Collateral Agent and Future Electronics
                                        Corporation

OPPENHEIMER WOLFF & DONNELLY, LLP

By: _____
    David B. Galle
    Attorneys for Emergent Systems Exchange, LLC

7

3144561 v.2