Matthew J. Olson
MACDONALD | FERNANDEZ LLP
221 Sansome Street, Third Floor
San Francisco, CA 94104
(415) 362-0449 Ext. 205
matt@macfern.com

ATTORNEYS FOR THE DEBTOR

E. P. Keiffer
WRIGHT GINSBERG BRUSILOW P.C.
325 North St. Paul Street, Suite 4150
Dallas, TX 75201
(214) 651-6500
pkeiffer@wgblawfirm.com

Kathryn Diemer
DIEMER, WHITMAN & CARDOSI, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
(408) 971-6270
kdiemer@diemerwhitman.com

ATTORNEYS FOR COLLATERAL AGENT AND FE

David B. Galle
Oppenheimer Wolff & Donnelly, LLP
222 South 9th Street
Suite 200
Minneapolis, MN 55402
DGalle@oppenheimer.com

ATTORNEYS FOR EMERGENT SYSTEMS, INC.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In re

AQH, LLC,

Debtor.

Case No. 15-50553-11-SLJ
Chapter 11

DECLARATION OF CHRISTOPHER CUNNINGHAM IN SUPPORT OF MOTION TO APPROVE PLAN SUPPORT AND CLAIMS SETTLEMENT AGREEMENT

I, Christopher Cunningham, declare:

1. I am the duly appointed responsible individual for AQH, LLC, Debtor in Possession herein. I am familiar with the Debtor's business. I am over the age of 18. The following facts are true and correct of my own personal knowledge. If called as a witness, I could and would competently testify as follows.

**Background Regarding the Plan Support and Claims Settlement Agreement**

2. Prior to the filing of the petition, the Debtor purchased certain specialized computer servers to use in providing security for the global Bitcoin blockchain. The servers, Cointerra TerraMiners, were purchased by the Debtor through Emergent Systems Exchange, LLC ("**ESE**").

3. Both Fortis Advisors LLC, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement[1] and other applicable Transaction Documents ("**Collateral Agent**") Future Electronics Corporation ("**FE**" sometimes collectively these parties are "**CA/FE**"), held perfected security interests in the TerraMiners based upon certain agreements between them and Cointerra.

4. As noted in the various motions and pleadings filed with the Court, there was a significant difference between what CA/FE, ESE, and the Debtor regarding the validity and secured status of the various claims.

5. After significant negotiations, discussions and teleconferences, CA/FE, Emergent and the Debtor filed a stipulation [DKT #141] (the "**Stipulation**") that: a) resolved certain aspects of the issues addressed in the Objection as they related to issues of entitlement to adequate protection payments already made; and b) set forth the parameters that these parties are now

[1] Any capitalized terms not defined herein are as defined in the Cointerra, Inc. Security and Pledge Agreement, the Collateral Agent Agreement and multiple Secured Convertible Notes all dated August 1, 2014.

Case: 15-50553 Doc# 153-1 Filed: 12/07/15 Entered: 12/07/15 17:55:09 Page 2 of 7

coming to the Court for approval regarding CA/FE and Emergent's competing claims and the value of the underlying collateral.

6. Thereafter, discussions moved forward to include what would be a plan treatment that CA/FE and Emergent might find palatable as to those claims, if a plan could be confirmed in this case. Those discussions were wide ranging and detailed. Various proposals were exchanged and the ultimately morphed into the terms set forth in the Plan Support and Claims Settlement Agreement that is attached as Exhibit "A" to the Motion. The Agreement settles all of the disputes between AQH on the one hand and ESE and CA/FE on the other.

**Rationale for the Claims Settlement**

7. The principal rationale for the resolutions sought by the AQH, Emergent, and CA/FE is to resolve by agreement, what would otherwise be a lengthy and expensive litigation around: a) whether or not Emergent or CA/FE is the party with the proper security interest in the TerraMiners; b) whether or not Emergent or CA/FE have any security interest in the TerraMiners; c) the amount of the claim of Emergent, whether secured or not; d) the prospect that CA/FE could be secured and Emergent unsecured, increasing the total amount of claims which would be asserted against the Debtor by over $1,000,000; and e) issues concerning the value of the TerraMiners at specific points in time, including at any confirmation hearing.

*Probability of Success if Litigated*

8. Emergent, CA/FE and the Debtor are each reasonably confident that their position would succeed at a trial on the merits in an adversary proceeding before this Court. The resolution of the central dispute (was the sale of TerraMiners authorized under the two security agreements) will be factually intensive and could expand the claims in this case by at least

Case: 15-50553 Doc# 153-1 Filed: 12/07/15 Entered: 12/07/15 17:55:09 Page 3 of 7

$1,000,000. The resolution of whether or not Emergent's security interest is avoidable could also have a similar claim expanding effect.

9. The Debtor will need to prevail on all of its theories to avoid the prospect of expanding the amount of claims in this case. Moreover, there is the issue of valuation of operating equipment that is the subject of the lien dispute that the Debtor has utilized in its operations since the Petition Date which will have to be addressed if either Emergent or CA/FE wins the dispute over whose security interest is paramount. Because of the complexity of the issues, the multiple possible scenarios that could result, it is difficult to determine which party is likely to succeed, and the settlement is within the range of possible results.

*Difficulties, if any, Regarding Collection*

10. The Debtor is not aware of any aspect of the disputes that would entail dealing with issues of collection or of either Emergent or CA/FE's financial condition. This factor weighs in favor of approval in light of the lack of applicability.

*Litigation Complexity, Expense, Inconvenience and Delay*

11. The litigation that would otherwise ensue has not been initiated. But such litigation would entail significant discovery, briefing, and a full evidentiary hearing, involving a significant amount of time by all parties to prepare for trial. There may well be both an adversary proceeding as well as additional motion practice to address all of the issues resolved in the Claims Settlement portion of the Agreement. Approval of the Claims Settlement avoids the significant expense, inconvenience, and delay of proceeding with trial, and allows the Debtor to move quickly to plan confirmation.

///

///

Case: 15-50553 Doc# 153-1 Filed: 12/07/15 Entered: 12/07/15 17:55:09 Page 4 of 7

*Paramount Interest of Creditors with Proper Deference to their Reasonable Views*

12. Other than the specifically settling creditors, who favor the resolution proposed, resolving these multiple disputes vastly improves the Debtor's prospects for confirming a plan of reorganization. Moreover, the Debtor's obligations are limited to a single amount that it had originally contracted for and eliminates the prospect of two claims resulting, all of which improves the Debtor's functional financial condition and will enhance the Debtor's ability to pay both these and other claims in the case. The Debtors anticipate that creditors will not oppose approval of the Agreement.

13. Therefore, the Debtor submits that the proposed settlement in the best interest of creditors and the estate.

**The Underlying Issues – Plan Support**

14. In discussions regarding how to address the conflicting claims of Emergent, CA/FE and the Debtor as to amounts of claims, extent of collateral and its value and dividing the end claim and the proposed security for same amongst the competing claimants Emergent and CA/FE, logically the discussions would drift to whether or not the effort to resolve these issues would be able to be translated into a means for the putatively resolved claims to be addressed in a plan. Such is the course of a proper Chapter 11 proceeding.

15. As noted above, the discussions between the parties as to this aspect of the case proceeded quickly after the initial split of the claim (so that the Debtor would not be out more than what it had contracted to pay Emergent) was agreed to in principal. These discussions covered a wide range of possible plan provisions that could address the issues that would be present assuming the claims resolution was approved.

Case: 15-50553 Doc# 153-1 Filed: 12/07/15 Entered: 12/07/15 17:55:09 Page 5 of 7

16. After review and assessment of these varying options, Emergent, CA/FE and the Debtor arrived at an agreement on what plan terms in this case would be seen as probable and reasonable if the plan proceeded to the point of solicitation of votes for approval.

**The Plan Support Provisions**

17. The terms of the Plan Support and Claims Settlement Agreement can be summarized as follows:

a. the Debtor shall use its best efforts to file its Disclosure Statement and Plan of Reorganization (the "**Debtor's Plan Package**"), to file Debtor's Plan Package prior to any deadline applicable to a small business debtor, as such deadline may be extended (this has been done);

b. The Debtor's Plan Package shall provide for the payment of the ESE Allowed Secured Claim and CA/FE Allowed Secured Claim as follows:

i. the Debtor delivering two (2) promissory notes, "**ESE Settlement Note**" and the "**CA/FE Settlement Note**", each in the principal amount of Four Hundred Seventy Five Thousand and 00/100 Dollars ($475,000.00), each with interest accruing at the rate of six percent (6%) per annum from the Effective Date and each payable over a thirty-nine (39) month period per the payment schedule and each will be secured, *pari passu*, by the Debtor's interest in the TerraMiners, and all proceeds thereof;

ii. CA/FE and ESE's *pari passu* security interest in the TerraMiners shall be subject to an intercreditor agreement between the parties to be executed in conjunction with the ESE Settlement Note and CA/FE Settlement Note;

iii. Reorganized AQH will execute a security agreement and other documents as necessary to grant the security interest in the TerraMiners;

iv. Both ESE and CA/FE agree to timely tender a §1111(b) election to have their secured claims treated as fully secured with no resulting or remaining unsecured claim;

v. Both ESE and CA/FE agree that the payment terms detailed meet the requirements of a §1111(b) election to be treated as fully secured, by a class which consists of the ESE Allowed Secured Claim and the CA/FE Allowed Secured Claim; and

vi. nothing in the Plan Support Agreement requires or can require either ESE or CA/FE to vote in favor of whatever plan the Debtor may be permitted by the Bankruptcy Court to solicit acceptance of after the approval of any disclosure statement as may be required in the context of the Case.

18. In this case counsels for Emergent, CA/FE and the Debtor exchanged information and projections and reviewed or considered each other party's theories as to how the case could proceed to confirmation and came to a resolution on how the claims of Emergent and CA/FE should be proposed to be treated under a plan.

19. Approval of these provisions are within the Debtor's business judgment. The support provisions allow for the Debtor to move promptly toward plan confirmation, without imposing significant obligations on the Debtor. In fact, the Debtor has already met some of its obligations under the agreement by timely filing a plan of reorganization that provides for the claims in the agreed-upon manner.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 7th day of December, 2015, at Sherman Oaks, California.

/s/ Christopher Cunningham
Christopher Cunningham

Case: 15-50553 Doc# 153-1 Filed: 12/07/15 Entered: 12/07/15 17:55:09 Page 7 of 7