Matthew J. Olson
MACDONALD | FERNANDEZ LLP
221 Sansome Street, Third Floor
San Francisco, CA 94104
(415) 362-0449 Ext. 205
matt@macfern.com

ATTORNEYS FOR THE DEBTOR

E. P. Keiffer
WRIGHT GINSBERG BRUSILOW P.C.
325 North St. Paul Street, Suite 4150
Dallas, TX 75201
(214) 651-6500
pkeiffer@wgblawfirm.com

Kathryn Diemer
DIEMER, WHITMAN & CARDOSI, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
(408) 971-6270
kdiemer@diemerwhitman.com

ATTORNEYS FOR COLLATERAL AGENT AND FE

David B. Galle
Oppenheimer Wolff & Donnelly, LLP
222 South 9th Street
Suite 200
Minneapolis, MN 55402
DGalle@oppenheimer.com

ATTORNEYS FOR EMERGENT SYSTEMS, INC.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>AQH, LLC,<br><br>      Debtor. | Case No. 15-50553-11-SLJ<br>Chapter 11<br><br>NOTICE OF OPPORTUNITY FOR HEARING ON MOTION TO APPROVE PLAN SUPPORT AND CLAIMS SETTLEMENT AGREEMENT<br><br>Honorable Stephen L. Johnson |

NOTICE IS HEREBY GIVEN that 1) AQH. LLC ("**Debtor**"); 2) Fortis Advisors LLC, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement[1] and other applicable Transaction Documents ("**Collateral Agent**"); 3) Future Electronics Corporation ("**FE**" and collectively these two parties are "**CA/FE**"); and 4) Emergent Systems Exchange, LLC. ("**ESE**") filed their Motion to Approve Plan Support and Claims Settlement Agreement (the "**Motion**"). A copy of the Motion and its supporting pleadings may be obtained from the undersigned, the Clerk of Court, or the Court's CM/ECF website at https://ecf.canb.uscourts.gov.

As more fully set for the Motion and supporting pleadings, there was a significant difference between what CA/FE and Emergent initially asserted were the proper secured creditor as to specific items functionally acquired from Cointerra, Inc.; the Debtor had its own position on those issues as well which had been alluded to in early filings regarding use of cash collateral in this case. After significant subsequent negotiations, discussions and teleconferences, CA/FE, Emergent and the Debtor filed a stipulation [DKT #141] (the "**Stipulation**") that: a) resolved certain aspects of the issues addressed in the Objection as they related to issues of entitlement to adequate protection payments already made; and b) set forth the parameters that these parties are now coming to the Court for approval regarding CA/FE and Emergent's competing claims and the value of the underlying collateral.

In moving forward to address the drafting of the resolution and restatement of the claims of CA/FE and Emergent for approval by means of a Rule 9019 process as generally detailed in the Stipulation, necessarily and logically discussions moved forward to include what would be a plan treatment that CA/FE and Emergent might find palatable as to those claims, if a plan could be confirmed in this case. Those discussions, in this context, were wide ranging and detailed. The proposals that were being discussed would change and the ultimately morphed into the terms set forth in the Plan Support and Claims Settlement Agreement that is attached as Exhibit "A" to this Motion.

The terms of the Plan Support and Claims Settlement Agreement (the "Agreement") that address the issues referenced in the preceding paragraph can be summarized as follows: a) payments of adequate protection made to either Emergent or impounded with Debtor's counsel to be sent on to CA/FE consistent with the terms of the Stipulation, which total $81,900, shall be deducted from the agreed upon gross amount of the ESE Claim ($1,136,962.50) and rounded to equal a $1,055,000 remaining claim; b) both Emergent and CA/FE shall each have an allowed claim of Five Hundred Twenty Seven Thousand Five Hundred and 00/100 Dollars ($527,500) and an agreement that the value of the collateral securing each said claim equaling Four Hundred Seventy Five Thousand ($475,000); c) Emergent and CA/FE's lien rights shall be *pari passu*; and d) AQH agrees, by means of a release, that there are no claims or causes of action as between AQH and either Emergent or CA/FE that exist after the approval of the compromise and that all that remains is AQH's liability under the CA/FE Allowed Secured Claim and the ESE Allowed Secured Claim.

---

[1] Any capitalized terms not defined herein are as defined in the Cointerra, Inc. Security and Pledge Agreement, the Collateral Agent Agreement and multiple Secured Convertible Notes all dated August 1, 2014.

The principal rationale for the resolutions sought by the AQH, Emergent and CA/FE is to resolve by agreement, what would otherwise be a lengthy and expensive series of litigation scenarios regarding: a) whether or not Emergent or CA/FE is the party with the proper security interest in the TerraMiners; b) whether or not Emergent or CA/FE have any security interest in the TerraMiners; c) the amount of the claim of Emergent, whether secured or not; d) the prospect that CA/FE could be secured and Emergent unsecured, increasing the total amount of claims which would be asserted against the Debtor by over $1,000,000; and e) issues concerning the value of the TerraMiners at specific points in time, including at any confirmation hearing. None of the settling parties can reasonably predict the outcome of such litigation, as each has sufficient theories of the case which present a prospect for each party's most desired result. Moreover, there is the prospect that any such lengthy and expensive litigation would both be subject to subsequent appeals and would make confirming a plan of reorganization by the Debtor more difficult and cumbersome.

The Agreement should be approved because Emergent, CA/FE and the Debtor, each for their own specific reasons, after surveying the factual circumstances and the applicable law, are reasonably confident that their position would succeed at a trial on the merits in an adversary proceeding before this Court. Moreover, there is the issue of valuation of operating equipment that is the subject of the lien dispute that the Debtor has utilized in its operations since the Petition Date which will have to be addressed if either Emergent or CA/FE wins the dispute over whose security interest is paramount (while Emergent and CA/FE have settled *inter se* such settlement is not binding upon the Debtor absent approval of this Motion). Because of the complexity of the issues, the multiple possible scenarios that could result, it is difficult to determine which party is likely to succeed, and the settlement is within the range of possible results. The Debtor is not aware of any aspect of the disputes that would entail dealing with issues of collection or of either Emergent or CA/FE's financial condition. This factor weighs in favor of approval in light of the lack of applicability. While any litigation on these issues has not been initiated, any such litigation would entail significant discovery, briefing and a full evidentiary hearing and would likely take at least six months to get to trial. There may well be both an adversary proceeding as well as motion practice to address all of the issues resolved in the Claims Settlement portion of the Agreement. Approval of the Claims Settlement avoids the significant expense, inconvenience and delay of proceeding with trial. Finally, by resolving these multiple disputes the Debtor's prospects for confirming a plan of reorganization are vastly improved. Moreover, the Debtor's obligations are limited to a single amount that it had originally contracted for and eliminates the prospect of two claims resulting, all of which improves the Debtor's functional financial condition and will enhance the Debtor's ability to pay both these and other claims in the case.

Additionally, in discussions regarding how to address the conflicting claims of Emergent, CA/FE and the Debtor as to amounts of claims, extent of collateral and its value and dividing the end claim and the proposed security for same amongst the competing claimants Emergent and CA/FE, logically the discussions would drift to whether or not the effort to resolve these issues would be able to be translated into a means for the putatively resolved claims to be addressed in a plan. Such is the course of a proper Chapter 11 proceeding. These discussions covered a wide range of possible plan provisions that could address the issues that would be present assuming the claims resolution was approved. After review and assessment of these varying options, Emergent, CA/FE and the Debtor arrived at an agreement on what plan terms in this case would be seen as probable and reasonable if the plan proceeded to the point of solicitation of votes for approval.

3

Emergent and CA/FE and the Debtor, bearing in mind that not all of the aspects that would be able to be in a pre-petition plan support agreement garnered by otherwise applicable disclosures as referenced in §1125(g), can be in a post-petition plan support agreement.

The terms of the Plan Support and Claims Settlement Agreement that address the issues referenced in the preceding paragraph can be summarized as follows: a) the Debtor shall use its best efforts to file its Disclosure Statement and Plan of Reorganization (the "**Debtor's Plan Package**"), to file Debtor's Plan Package prior to any deadline applicable to a small business debtor, as such deadline may be extended (this has been done); b) The Debtor's Plan Package shall provide for the payment of the ESE Allowed Secured Claim and CA/FE Allowed Secured Claim as follows: (i) the Debtor delivering two (2) promissory notes, "**ESE Settlement Note**" and the "**CA/FE Settlement Note**", each in the principal amount of Four Hundred Seventy Five Thousand and 00/100 Dollars ($475,000.00), each with interest accruing at the rate of six percent (6%) per annum from the Effective Date and each payable over a thirty-nine (39) month period per the payment schedule and each will be secured, *pari passu*, by the Debtor's interest in the TerraMiners, and all proceeds thereof; (ii) CA/FE and ESE's *pari passu* security interest in the TerraMiners shall be subject to an intercreditor agreement between the parties to be executed in conjunction with the ESE Settlement Note and CA/FE Settlement Note; (iii) Reorganized AQH will execute a security agreement and other documents as necessary to grant the security interest in the TerraMiners; (iv) Both ESE and CA/FE agree to timely tender a §1111(b) election to have their secured claims treated as fully secured with no resulting or remaining unsecured claim; (v) Both ESE and CA/FE agree that the payment terms detailed meet the requirements of a §1111(b) election to be treated as fully secured, by a class which consists of the ESE Allowed Secured Claim and the CA/FE Allowed Secured Claim; and (vi) nothing in the Plan Support Agreement requires or can require either ESE or CA/FE to vote in favor of whatever plan the Debtor may be permitted by the Bankruptcy Court to solicit acceptance of after the approval of any disclosure statement as may be required in the context of the Case.

The Plan Support provisions of the Plan Support and Claims Settlement Agreement are a natural adjunct to the resolution of the claims issues as between Emergent, CA/FE and the Debtor, particularly when such resolution sought to be approved is reached within thirty (30) days of the plan and disclosure statement filing deadline that is set forth in §1121(e)(2) and in light of the burden of securing an extension under §1121(e)(3)(A)-(C). While the intended plan support provisions would be evidence that should be favorably looked upon of an attempt to secure and extension was needed, the Debtor intends and will be ready to file a plan by the 300th day (December 16, 2015).

NOTICE IS FURTHER GIVEN that, pursuant to Bankruptcy Local Rule 9014-1(b)(3) of the United States Bankruptcy Court for the Northern District of California:

Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;

Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;

If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default.

In the event of a timely objection or request for hearing, the initiating party will give at least seven days written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.

DATED December 7, 2015

MACDONALD | FERNANDEZ LLP　　　　WRIGHT GINSBERG BRUSILOW P.C.


By: */s/ Matthew J. Olson*　　　　　　By: */s/ E. P. Keiffer (by M. Olson by permission)*
　　Matthew J. Olson　　　　　　　　　　E. P. Keiffer
　　Attorneys for AQH. LLC　　　　　　　Attorneys for Fortis Advisors LLC, as
　　　　　　　　　　　　　　　　　　　Collateral Agent and Future Electronics
　　　　　　　　　　　　　　　　　　　Corporation

OPPENHEIMER WOLFF & DONNELLY, LLP


By: */s/ David B. Galle (by M. Olson by permission)*
　　David B. Galle
　　Attorneys for Emergent Systems Exchange, LLC

5

3144561 v.2