Matthew J. Olson
MACDONALD | FERNANDEZ LLP
221 Sansome Street, Third Floor
San Francisco, CA 94104
(415) 362-0449 Ext. 205
matt@macfern.com

ATTORNEYS FOR THE DEBTOR

E. P. Keiffer
WRIGHT GINSBERG BRUSILOW P.C.
325 North St. Paul Street, Suite 4150
Dallas, TX 75201
(214) 651-6500
pkeiffer@wgblawfirm.com

Kathryn Diemer
DIEMER, WHITMAN & CARDOSI, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
(408) 971-6270
kdiemer@diemerwhitman.com

ATTORNEYS FOR COLLATERAL AGENT AND FE

David B. Galle
Oppenheimer Wolff & Donnelly, LLP
222 South 9th Street
Suite 200
Minneapolis, MN 55402
DGalle@oppenheimer.com

ATTORNEYS FOR EMERGENT SYSTEMS, INC.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In re

AQH, LLC,

              Debtor.

Case No. 15-50553-11-SLJ
Chapter 11

DECLARATION OF MATTHEW J. OLSON IN SUPPORT OF REQUEST FOR ENTRY OF ORDER BY DEFAULT RE MOTION TO APPROVE PLAN SUPPORT AND CLAIMS SETTLEMENT AGREEMENT

1

I, Matthew J. Olson, declare:

1.     I am an associate attorney with Macdonald Fernandez LLP, counsel of record for AQH, LLC, debtor in possession herein.  The following facts are true and correct of my own personal knowledge.  If called upon as a witness, I would and could competently testify as follows.

2.     On December 7, 2015, the parties filed their Motion to Approve Plan Support and Claims Settlement Agreement (Doc. No. 153).  The Motion is supported by the Declaration of Christopher Cunningham, the Debtor's responsible individual, and a notice of opportunity for hearing on said Motion.  *See* Doc. Nos. 153–154. A true and correct copy of the Motion is attached as Exhibit "A" hereto.

3.     Service of the Motion was effectuated on December 7, 2015, by U.S. Mail and is proper pursuant to Federal Rule of Bankruptcy Procedure 2002, and a true and correct copy of the certificate of service (Doc. No. 154-1) is attached as Exhibit "B" hereto.

4.     More than 21 days has elapsed since the service of the Motion and the notice of opportunity for hearing.  As of this date, no opposition to the requested relief has been filed or served upon me or Macdonald Fernandez LLP.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 30th day of December, 2015, at Hayward, California.

/s/ Matthew J. Olson
MATTHEW J. OLSON

# EXHIBIT A

Matthew J. Olson
MACDONALD | FERNANDEZ LLP
221 Sansome Street, Third Floor
San Francisco, CA 94104
(415) 362-0449 Ext. 205
matt@macfern.com

ATTORNEYS FOR THE DEBTOR

E. P. Keiffer
WRIGHT GINSBERG BRUSILOW P.C.
325 North St. Paul Street, Suite 4150
Dallas, TX  75201
(214) 651-6500
pkeiffer@wgblawfirm.com

Kathryn Diemer
DIEMER, WHITMAN & CARDOSI, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
(408) 971-6270
kdiemer@diemerwhitman.com

ATTORNEYS FOR COLLATERAL AGENT AND FE

David B. Galle
Oppenheimer Wolff & Donnelly, LLP
222 South 9th Street
Suite 200
Minneapolis, MN 55402
DGalle@oppenheimer.com

ATTORNEYS FOR EMERGENT SYSTEMS, INC.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

| In re | Case No. 15-50553-11-SLJ |
| | Chapter 11 |
| AQH, LLC, | |
| | MOTION TO APPROVE PLAN SUPPORT |
| Debtor. | AND CLAIMS SETTLEMENT |
| | AGREEMENT |
| | |
| | Honorable Stephen L. Johnson |

1

COMES NOW: 1) AQH. LLC ("**Debtor**"); 2) Fortis Advisors LLC, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement[1] and other applicable Transaction Documents ("**Collateral Agent**"); 3) Future Electronics Corporation ("**FE**" and collectively these two parties are "**CA/FE**"); and 4) Emergent Systems Exchange, LLC. ("**ESE**") who file this Motion to Approve Plan Support and Claims Settlement Agreement (the "**Motion**") and would respectfully show the Court as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background Regarding the Plan Support and Claims Settlement Agreement

2. As noted in CA/FE's Section 105(a) Motion Requesting Review of Terms of Interlocutory Order and to Introduce Evidence in Support [DKT # 115] (the "**Objection**"), there was a significant difference between what CA/FE and Emergent initially asserted were the proper secured creditor as to specific items functionally acquired from Cointerra, Inc.; the Debtor had its own position on those issues as well which had been alluded to in early filings regarding use of cash collateral in this case. After significant subsequent negotiations, discussions and teleconferences, CA/FE, Emergent and the Debtor filed a stipulation [DKT #141] (the "**Stipulation**") that: a) resolved certain aspects of the issues addressed in the Objection as they related to issues of entitlement to adequate protection payments already made; and b) set forth the

---

[1] Any capitalized terms not defined herein are as defined in the Cointerra, Inc. Security and Pledge Agreement, the Collateral Agent Agreement and multiple Secured Convertible Notes all dated August 1, 2014.

parameters that these parties are now coming to the Court for approval regarding CA/FE and Emergent's competing claims and the value of the underlying collateral.

3.     In moving forward to address the drafting of the resolution and restatement of the claims of CA/FE and Emergent for approval by means of a Rule 9019 process as generally detailed in the Stipulation, necessarily and logically discussions moved forward to include what would be a plan treatment that CA/FE and Emergent might find palatable as to those claims, if a plan could be confirmed in this case. Those discussions, in this context, were wide ranging and detailed. The proposals that were being discussed would change and the ultimately morphed into the terms set forth in the Plan Support and Claims Settlement Agreement that is attached as Exhibit "A" to this Motion.

## The Underlying Issues – Claims Settlement

4.     The Debtor filed its voluntary Chapter 11 on February 19, 2015. No trustee has been appointed, there is no creditors committee and the Debtor is a debtor-in-possession operating its business and has admitted its small business status under Bankruptcy Code Section 101(51D).

5.     The Debtor, CA/FE and Emergent adopt and incorporate by reference the factual background detailed in paragraphs 3 through 8 of the Stipulation as if fully set forth at length herein (see the file stamped Stipulation attached as Exhibit "B"), as they detail the issues that exist and the circumstances that generated those facts. The portions of the Stipulation that requires approval per Rule 9019 as a compromise of controversy are: a) the ESE Claim[2] and the CA/FE Claims will be combined into a total allowed claim of $1,200,000; b) the now agreed to split of the Allowed Resolution Claim as between secured and unsecured portion as to both CA/FE an Emergent.

3

## The Claims Settlement Provisions – the Compromises

6. The terms of the Plan Support and Claims Settlement Agreement (the "Agreement") that address the issues referenced in the preceding paragraph can be summarized as follows: a) payments of adequate protection made to either Emergent or impounded with Debtor's counsel to be sent on to CA/FE consistent with the terms of the Stipulation, which total $81,900, shall be deducted from the agreed upon gross amount of the ESE Claim ($1,136,962.50) and rounded to equal a $1,055,000 remaining claim; b) both Emergent and CA/FE shall each have an allowed claim of Five Hundred Twenty Seven Thousand Five Hundred and 00/100 Dollars ($527,500) and an agreement that the value of the collateral securing each said claim equaling Four Hundred Seventy Five Thousand ($475,000); c) Emergent and CA/FE's lien rights shall be *pari passu*; and d) AQH agrees, by means of a release, that there are no claims or causes of action as between AQH and either Emergent or CA/FE that exist after the approval of the compromise and that all that remains is AQH's liability under the CA/FE Allowed Secured Claim and the ESE Allowed Secured Claim.

## Rationale for the Claims Settlement

7. The principal rationale for the resolutions sought by the AQH, Emergent and CA/FE is to resolve by agreement, what would otherwise be a lengthy and expensive series of litigation scenarios regarding: a) whether or not Emergent or CA/FE is the party with the proper security interest in the TerraMiners; b) whether or not Emergent or CA/FE have any security interest in the TerraMiners; c) the amount of the claim of Emergent, whether secured or not; d) the prospect that CA/FE could be secured and Emergent unsecured, increasing the total amount of claims which would be asserted against the Debtor by over $1,000,000; and e) issues concerning the value of the TerraMiners at specific points in time, including at any confirmation hearing.   None

---

[2] Terms not defined herein are as defined in the Stipulation

of the settling parties can reasonably predict the outcome of such litigation, as each has sufficient theories of the case which present a prospect for each party's most desired result. Moreover, there is the prospect that any such lengthy and expensive litigation would both be subject to subsequent appeals and would make confirming a plan of reorganization by the Debtor more difficult and cumbersome.

### Applicable Standards for Approval per Rule 9019

8.     Rule 9019(a) authorizes the Court to approve a compromise of controversy upon motion after a notice and a hearing. "The law favors compromise and not litigation for its own sake…." *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854 (1986). "The bankruptcy court has great latitude in approving compromise agreements" that are fair and equitable. *In re Woodson,* 839 F.2d 610, 620 (9th Cir. 1988). In deciding whether a settlement is fair and equitable and in the best interests of creditors, courts consider the following factors:

a.   The probability of success in the litigation;

b.   The difficulties, if any, to be encountered in the matter of collection;

c.   The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

d.   The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

9.     This Court need not conduct a "mini-trial" on the merits of the disputes to be compromised. *In re Blair*, 538 F.2d 849, 851-852 (9th Cir. 1976). The Court may approve a settlement if "(1) the claim has a 'substantial foundation' and is not 'clearly invalid as a matter of law', or (2) the outcome of the claim's litigation is 'doubtful.'" *In re Walsh Construction, Inc.,*

669 F.2d 1325, 1328 (9th Cir. 1982). The Court is not required to decide the questions of law or fact or conduct a trial on the merits; to the contrary, courts review the issues to determine whether the "settlement falls below the lowest point in a range of reasonableness." *In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 2000); *In re Energy Coop.,* 886 F.2d 921 (7th Cir. 1989); *In re Teltronics Services, Inc.,* 762 F.2d 185, 189 (2d Cir. 1985); *In re International Distribution Centers, Inc.,* 103 B.R. 420, 423 (S.D.N.Y. 1989).

10.     The Court may weigh the opinions of the Debtor, the parties and their attorneys, and may consider their belief that all of the factors bearing upon the appropriateness of the settlement have been explored and that the compromise is fair and equitable. *In re Blair*, 538 F.2d at 851. The Debtor has determined that the Settlement Agreement is fair and equitable and in the best interests of the estate.

*Probability of Success if Litigated*

11.     Emergent, CA/FE and the Debtor, each for their own specific reasons, after surveying the factual circumstances and the applicable law, are reasonably confident that their position would succeed at a trial on the merits in an adversary proceeding before this Court. The resolution of the central dispute (was the sale of TerraMiners authorized under the two (2) security agreements per those documents [obsolescence] or per the circumstances [ordinary course of business sale by the seller Cointerra]) will be factually intensive and depending upon what the trier of fact finds, there could well be an expansion of claims in this case of at least $1,000,000. The resolution of whether or not Emergent's security interest is avoidable could also have a similar claim expanding effect. The Debtor will need to prevail on all of its theories to avoid the prospect of expanding the amount of claims in this case. Moreover, there is the issue of valuation of operating equipment that is the subject of the lien dispute that the Debtor has utilized

6

in its operations since the Petition Date which will have to be addressed if either Emergent or CA/FE wins the dispute over whose security interest is paramount (while Emergent and CA/FE have settled *inter se* such settlement is not binding upon the Debtor absent approval of this Motion). Because of the complexity of the issues, the multiple possible scenarios that could result, it is difficult to determine which party is likely to succeed, and the settlement is within the range of possible results.

### *Difficulties, if any, Regarding Collection*

12. The Debtor is not aware of any aspect of the disputes that would entail dealing with issues of collection or of either Emergent or CA/FE's financial condition. This factor weighs in favor of approval in light of the lack of applicability.

### *Litigation Complexity, Expense, Inconvenience and Delay*

13. The litigation that would otherwise ensue has not been initiated. But such litigation would entail significant discovery, briefing and a full evidentiary hearing and would likely take at least six (6) months to get to trial. There may well be both an adversary proceeding as well as motion practice to address all of the issues resolved in the Claims Settlement portion of the Agreement. Approval of the Claims Settlement avoids the significant expense, inconvenience and delay of proceeding with trial.

### *Paramount Interest of Creditors with Proper Deference to their Reasonable Views*

14. Other than the specifically settling creditors, who favor the resolution proposed, the parties to the Agreement assert that by resolving these multiple disputes the Debtor's prospects for confirming a plan of reorganization are vastly improved. Moreover, the Debtor's obligations are limited to a single amount that it had originally contracted for and eliminates the prospect of two claims resulting, all of which improves the Debtor's functional financial condition and will

7

enhance the Debtor's ability to pay both these and other claims in the case. The Debtors anticipate that creditors will not oppose approval of the Agreement.

### The Underlying Issues – Plan Support

15.     In discussions regarding how to address the conflicting claims of Emergent, CA/FE and the Debtor as to amounts of claims, extent of collateral and its value and dividing the end claim and the proposed security for same amongst the competing claimants Emergent and CA/FE, logically the discussions would drift to whether or not the effort to resolve these issues would be able to be translated into a means for the putatively resolved claims to be addressed in a plan. Such is the course of a proper Chapter 11 proceeding. As noted above, the discussions between the parties as to this aspect of the case proceeded quickly after the initial split of the claim (so that the Debtor would not be out more than what it had contracted to pay Emergent) was agreed to in principal. These discussions covered a wide range of possible plan provisions that could address the issues that would be present assuming the claims resolution was approved. After review and assessment of these varying options, Emergent, CA/FE and the Debtor arrived at an agreement on what plan terms in this case would be seen as probable and reasonable if the plan proceeded to the point of solicitation of votes for approval. Emergent and CA/FE and the Debtor, bearing in mind that not all of the aspects that would be able to be in a pre-petition plan support agreement garnered by otherwise applicable disclosures as referenced in §1125(g), can be in a post-petition plan support agreement.

### The Plan Support Provisions

16.     The terms of the Plan Support and Claims Settlement Agreement that address the issues referenced in the preceding paragraph can be summarized as follows: a) the Debtor shall use its best efforts to file its Disclosure Statement and Plan of Reorganization (the "**Debtor's**

8

**Plan Package**"), to file Debtor's Plan Package prior to any deadline applicable to a small business debtor, as such deadline may be extended (this has been done); b) The Debtor's Plan Package shall provide for the payment of the ESE Allowed Secured Claim and CA/FE Allowed Secured Claim as follows: (i) the Debtor delivering two (2) promissory notes, "**ESE Settlement Note**" and the "**CA/FE Settlement Note**", each in the principal amount of Four Hundred Seventy Five Thousand and 00/100 Dollars ($475,000.00), each with interest accruing at the rate of six percent (6%) per annum from the Effective Date and each payable over a thirty-nine (39) month period per the payment schedule and each will be secured, *pari passu*, by the Debtor's interest in the TerraMiners, and all proceeds thereof; (ii) CA/FE and ESE's *pari passu* security interest in the TerraMiners shall be subject to an intercreditor agreement between the parties to be executed in conjunction with the ESE Settlement Note and CA/FE Settlement Note; (iii) Reorganized AQH will execute a security agreement and other documents as necessary to grant the security interest in the TerraMiners; (iv) Both ESE and CA/FE agree to timely tender a §1111(b) election to have their secured claims treated as fully secured with no resulting or remaining unsecured claim; (v) Both ESE and CA/FE agree that the payment terms detailed meet the requirements of a §1111(b) election to be treated as fully secured, by a class which consists of the ESE Allowed Secured Claim and the CA/FE Allowed Secured Claim; and (vi) nothing in the Plan Support Agreement requires or can require either ESE or CA/FE to vote in favor of whatever plan the Debtor may be permitted by the Bankruptcy Court to solicit acceptance of after the approval of any disclosure statement as may be required in the context of the Case.

### Rationale for the Plan Support Provisions

17.     The Plan Support provisions of the Plan Support and Claims Settlement Agreement are a natural adjunct to the resolution of the claims issues as between Emergent, CA/FE and the

Debtor, particularly when such resolution sought to be approved is reached within thirty (30) days of the plan and disclosure statement filing deadline that is set forth in §1121(e)(2) and in light of the burden of securing an extension under §1121(e)(3)(A)-(C). While the intended plan support provisions would be evidence that should be favorably looked upon of an attempt to secure and extension was needed, the Debtor intends and will be ready to file a plan by the 300th day (December 16, 2015).

## Applicable Standards for Approval of Post-Petition Plan Support Agreement

18.    Post-petition plan support agreements have been addressed by various courts in the past, though the vast majority of the cases come from the bankruptcy courts in the Southern District of New York or Delaware. Generally a debtor's authority to enter into such an agreement as detailed in portions of Exhibit "1" is grounded in §363(b)(1) with regard to transactions not in the ordinary course of business. Clearly any agreement which would address certain of the issues that would be otherwise addressed in a plan of reorganization qualifies in that regard. As noted in the fine discussion of a similar, but more complicated post-petition plan support agreement in *In re Residential Capital, LLC* 2013 WL 3286198, pp.18-19, (Bankr. S.D. N.Y. -2013), the court discusses the application of §363(b) standards and noted in that case, that the process to come to the end results in the agreement (there a mediation) were sufficiently extensive and the constituents to agreement were properly represented such that all factors bearing on the good business reason for the entry into the agreement, which must be addressed when any request under §363(b) is made, were met in that case.

19.    In this case counsels for Emergent, CA/FE and the Debtor, in varying stages over an extended period of time, exchanged information and projections and reviewed or considered each other party's theories as to how the case could proceed to confirmation and came to a resolution

10

on how the claims of Emergent and CA/FE should be proposed to be treated under a plan. In those discussions and assessments, all parties remained cognizant of the restrictions as to solicitation under §1125.

20.     As also detailed in *Residential Capital* at p.19 various courts have addressed the issue of whether a post-petition plan support agreement runs afoul of §1125 requirements[3]. Generally, solicitation is not a defined term.   Nevertheless, case law indicates that solicitation relates to the formal polling and balloting process in which a form of disclosure and a request that a party vote in favor of a plan and should not be read to chill a debtor's plan negotiations with creditors, citing *In re Dow Corning Corp.*, 227 B.R. 111, 118 (Bankr.E.D.Mich.1998); *In re Kellogg Square P'ship*, 160 B.R. 336 (Bankr.D.Minn.1993) and *In re Century Glove, Inc.* 860 F.2d 94, 101-02 (3rd Cir. 1988).

21.     Certain cases later referenced in *Residential Capital* at p. 20 show where the post-petition plan support agreements cross the line because those agreements "included specific performance provisions, expressly providing that monetary damages could not compensate a breach of the agreement, meaning the creditors could not later reconsider their preliminary decision after receiving adequate information." Citing 7 COLLIER ON BANKRUPTCY ¶ 1125[1][b] which in turn cited *In re The Heritage Org., LLC,* 376 B.R. 783, 794 n.13 (Bankr.N.D.Tex.2007).  Because the problematic agreements examined, if enforced, could require a specific vote irrespective of what was later sent out in a court approved disclosure statement, such agreements were held to be improper and violative of §1125.

---

[3] The Ninth Circuit BAP in *In re California Fidelity, Inc.*, 198 B.R. 567 (BAP 9th Cir. – 1996) and other cases have addressed the issue of the scope and meaning of solicitation in the context of determining if actions complained of were violative of §1125 and the parties assert that the Plan Support Agreement does not run afoul of the any of the concerns that the facts of *California Fidelity* generated.

22.     But, as noted in the *Residential Capital* case and as specifically stated in the Plan Support and Claims Settlement Agreement, no one can be compelled to vote or to vote in favor of the plan.  The right of Emergent and CA/FE to change their minds remains.  This feature, along with the other points discussed above, is what enabled the court in *Residential Capital* to approve a similar agreement in that case. The Debtor, Emergent and CA/FE assert that such provision, along with how the parties arrived at such agreement, should enable this Court to approve the Plan Support portion of the Plan Support and Claims Settlement Agreement.

## Conclusion

23.     The Debtor, Emergent and CA/FE request this Court, after notice and hearing as maybe proper under the circumstances: a) approve both the resolution of the claim amounts and secured status of Emergent and CA/FE as detailed herein and as set forth in Exhibit "1" under FRBP Rule 9019; b) approve the Debtor's entry into the Plan Support provisions detailed herein and as set forth in Exhibit "1" under §363(b) and find that the Plan Support provisions do not violate the restriction or the requirements of §1125; and c) grant such other and further relief to which these parties may show themselves justly entitled to, at law or in equity.

DATED December 2, 2015

MACDONALD | FERNANDEZ LLP            WRIGHT GINSBERG BRUSILOW P.C.


By: */s/ Matthew J. Olson*            By: */s/ E. P. Keiffer (by M. Olson by permission)*
    Matthew J. Olson                       E. P. Keiffer
    Attorneys for AQH. LLC                 Attorneys for Fortis Advisors LLC, as
                                           Collateral Agent and Future Electronics
                                           Corporation

12

OPPENHEIMER WOLFF & DONNELLY, LLP

By: /s/ David B. Galle (by M. Olson by permission)
    David B. Galle
    Attorneys for Emergent Systems Exchange, LLC

13

3144561 v.2

# EXHIBIT A

## PLAN SUPPORT AND CLAIMS SETTLEMENT AGREEMENT

This Plan Support and Settlement Agreement (the "**Agreement**") is entered into by and between AQH LLC ("**AQH**" or the "**Debtor**"), Emergent System Exchange, LLC ("**ESE**"), Fortis Advisors LLC, as Collateral Agent for the ratable benefit of certain secured lenders of CoinTerra, LLC ("**Fortis**"), and Future Electronics Corporation ("**FE**")(the latter two collectively "**CA/FE**") (each, a "**Party**" and collectively, the "**Parties**").

## RECITALS

**WHEREAS**, pre-petition ESE provided financing for AQH to purchase over 2,000 CoinTerra TerraMiners, as well as ancillary parts, from Cointerra (the "**Seller**") in November 2014 (collectively the "**TerraMiners**"). The TerraMiners transaction was completed shortly thereafter (the "**TerraMiner Sale**").

**WHEREAS,** on January 24, 2015, the Seller filed a voluntary petition for relief under Chapter 7 pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Western District of Texas (Case No. 15-10109). Fortis and FE both filed proofs of claims as secured creditors in the Seller's Chapter 7 case.

**WHEREAS**, on February 19, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 pursuant to title 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") (Case No. 15-50553 – the "**Case**").

**WHEREAS** the listed Petition Date value of the Terraminers, per the Debtor's schedules, is $1,200,000 (See amended Schedule B filed on March 23, 2015 [#59]).

**WHEREAS**, pursuant to two Interlocutory Orders [DKT #69 (April 8, 2015) and #89 (May 7, 2015)] regarding use of cash collateral and providing for adequate protection to applicable secured creditors, ESE received a total of $64,980 in adequate protection payments (the "**ESE AP Payments**").

**WHEREAS**, ESE filed a $1,136,962.50 secured proof of claim [#9] regarding the TerraMiner Sale (the "**ESE POC**").

**WHEREAS** on July 23, 2015 a Stipulation for Authority to Use Cash Collateral and for Adequate Protection was filed [DKT#107] (the "**Stipulation**") which provided, among other things, that future adequate protection payments to ESE would be held in Debtor's counsel's Impound Account as defined in that document. Since then $16,950 has been deposited in the Impound Account (the "**Impound Funds**").

**WHEREAS**, Fortis and FE filed secured proofs of claim [#12 (July 29, 2015) and #13 (August 13, 2015)] which collectively assert an *in rem* claim that equals the value TerraMiners on the Petition Date (the "**CA/FE POCs**").

**WHEREAS**, CA/FE claim prior superior security interests in the TerraMiners based upon grants of security interests by the Seller that CA/FE assert were superior and such interests were not released nor sold in the ordinary course of Seller's business.

**WHEREAS**, on August 17, 2015, Fortis and FE jointly filed their Section 105(a) Motion Requesting Review of Terms of Interlocutory Order and to Introduce Evidence in Support (the "**Objection**") pursuant to which Fortis and FE challenged ESE's right to the ESE AP Payments and asserted its priority security interest in TerraMiners.

**WHEREAS**, on October 21, 2015, AQH, Fortis, FE, and ESE filed a joint stipulation [DKT #141] (the "**AP Stipulation**"), pursuant to which the Parties resolved issues as to the distribution of the ESE AP Payments and the Impound Funds and set forth the terms for the resolution of the ESE POC and CA/FE POCs to be made binding on the Debtor and parties in interest in this case in a subsequently filed motion to compromise controversy that would also address the value of the collateral securing the ESE POC and CA/FE POCs.

**WHEREAS**, the Parties agree that it is in their mutual interests to avoid the uncertainty and expense of potential litigation over the amounts of the ESE POC, the CA/FE POCs, the value of the collateral securing same and any other dispute they may have between them that would affect or impact same to settle and resolve all such issues as to the ESE POC and the CA/FE POCs (the resulting approval after notice and hearing of same generates the ESE Allowed Secured Claim and the CA/FE Allowed Secured Claim as defined below)

**WHEREAS**, in the context of the negotiations that led to the AP Stipulation, the Debtor, ESE and CA/FE have exchanged proposals regarding possible treatment of the anticipated resulting ESE Allowed Secured Claim and the CA/FE Allowed Secured Claim in the Debtor's soon to be filed Plan of Reorganization and have reached an accord as to what will be the proposed treatment of the ESE Allowed Secured Claim and the CA/FE Secured Claim (collectively the "**Plan Support Provisions**").

**NOW, THEREFORE**, in consideration of the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties covenant and agree, subject to the approval of this Agreement by the Bankruptcy Court, after notice and hearing as is appropriate under the circumstances, as follows:

## TERMS

1.      **Points Common to Resolution of ESE POC and CA/FE POC:**  ESE and CA/FE both agree that: a) transfers of the ESE AP Payments; and b) the Impound Fund (totaling $81,950) shall be deducted from the ESE POC amount, which forms the basis, consistent with applicable terms of the Stipulation, for the base amount of the claim that will be evenly split between ESE and CA/FE.  The net rounded amount of $1,055,000 will be known as the baseline cumulative settlement amount (the "**BCSA**").  Nothing in the Stipulation with regard to how ESE and CA/FE will equalize the payments received by each as to adequate protection payments to date is affected by this Agreement.  All other aspects of the Stipulation as between ESE and CA/FE that are contrary to any portion of this Agreement shall be controlled by the terms of this Agreement.

Case: 15-50553   Doc# 161-1 Filed: 12/30/15 Entered: 12/30/15 15:19:36 Page 19 of 38

2.      **Resolution of the ESE POC:**   ESE agrees to compromise and settle the ESE POC in exchange for: a) an allowed claim of Five Hundred Twenty Seven Thousand Five Hundred and 00/100 Dollars ($527,500.00); b) with the collateral securing said claim equaling Four Hundred Seventy Five Thousand ($475,000); and c) the retention of the ESE AP Payments (collectively the "**ESE Allowed Secured Claim**").

3.      **Resolution of the CA/FE POCs:**   CA/FE agree to compromise and settle the CA/FE POC in exchange for: a) an allowed claim of Five Hundred Twenty Seven Thousand Five Hundred and 00/100 Dollars ($527,500.00); b) with the collateral securing said claim equaling Four Hundred Seventy Five Thousand ($475,000); and c) the retention/transfer of the Impound Fund (collectively the "**CA/FE Allowed Secured Claim**").

4.      **Releases:**   The following "Releases" shall be effective upon entry of an order of the Bankruptcy Court in the Case approving this Agreement:

AQH, for itself and for the debtor-in-possession releases and forever discharges ESE and CA/FE and their successors, parents, subsidiaries, affiliates, assignees, transferees, representatives, partners, principals, agents, directors, officers, executors, administrators, employees, attorneys, insurers, members, shareholders, and subcontractors, as applicable, from and against all actions, causes of action, claims, suits, invoices, attorneys' fees, costs, debts, liens, damages, judgments, and demands, whether matured or unmatured, whether at law or in equity, whether known or unknown which relate in any way to the TerraMiners, the ESE Claim, the CA/FE Claim, including any claims based upon the use of any powers under Chapter 5 of the Bankruptcy Code.

Except for the rights and obligations created by this Agreement, the Debtor's Plan of Reorganization, or the AP Stipulation, ESE and CA/FE release and forever discharge AQH and their successors, parents, subsidiaries, affiliates, assignees, transferees, representatives, partners, principals, agents, directors, officers, executors, administrators, employees, attorneys, insurers, members, shareholders, and subcontractors, as applicable, from and against all actions, causes of action, claims, suits, invoices, attorneys' fees, costs, debts, liens, damages, judgments, and demands, whether matured or unmatured, whether at law or in equity, whether known or unknown which relate in any way to the TerraMiners, the ESE Claim, the CA/FE Claim, including any claims based upon the use of any powers under Chapter 5 of the Bankruptcy Code.

Except for the rights obligations created by this Agreement, the Debtor's Plan of Reorganization, or the AP Stipulation, each of the parties expressly waives all rights under California Civil Code § 1542 which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO THE CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH DEBTOR.

The releases set forth above shall be in full and final settlement of any and all claims and causes of action between (i) AQH and ESE or (ii) AQH and CA/FE, whether the action, causes of action, claims, liabilities, losses or demand are currently known, unknown, foreseen, or unforeseen, and the parties expressly waive the benefits of § 1542. In connection with the waiver and relinquishment, each of the parties acknowledges that it is aware that it may hereafter discover claims presently unknown or unsuspected, of facts in addition to or different from those which it knows or believes to be true, with respect to the matters released. Nevertheless, it is the intention of each party, through this Agreement, and with the advice of counsel, to fully, finally, and forever settle and release all such matters and all related claims, which now exist, may exist, or may have existed between the parties. In furtherance of this intention, the release given shall be and remain in effect as a full and complete release of these matters notwithstanding discovery or existence of any such additional or different claims or facts.

Upon approval of the Debtor's Plan that incorporates the terms of the Agreement, ESE and CA/FE will be bound by the terms of the Plan and the extent of the discharge provided therein.

**5.** **Plan Support Provisions**. The Debtor shall use its best efforts to file its Disclosure Statement and Plan of Reorganization (the "**Debtor's Plan Package**"), incorporating the following terms and to file Debtor's Plan Package prior to any deadline applicable to a small business debtor, as such deadline may be extended.

a. **Secured Promissory Notes**. The Debtor's Plan Package shall provide for the payment of the ESE Allowed Secured Claim and CA/FE Allowed Secured Claim as follows:

(i) The Debtor's Plan Package shall provide for the Debtor delivering two (2) promissory notes, each in the principal amount of Four Hundred Fifty Thousand and 00/100 Dollars ($475,000.00), each with interest accruing at the rate of six percent (6%) per annum from the Effective Date and each payable over a thirty-nine (39) month period per the payment schedule attached hereto as Exhibit A. The promissory notes will be denominated as the "**ESE Settlement Note**" and the "**CA/FE Settlement Note**" and each will be secured, *pari passu*, by the Debtor's interest in the TerraMiners, and all proceeds thereof; and

(ii) CA/FE and ESE's *pari passu* security interest in the TerraMiners shall be subject to an intercreditor agreement between the parties to be executed in conjunction with the ESE Settlement Note and CA/FE Settlement Note. Reorganized AQH will also execute a security agreement and other documents as necessary to grant the security interest in the TerraMiners;

Case: 15-50553   Doc# 161-1   Filed: 12/30/15   Entered: 12/30/15 17:55:36   Page 21 of 38

(iii)    Both ESE and CA/FE agree to timely tender a 11 U.S.C. §1111(b) election to have their secured claims treated as fully secured with no resulting or remaining unsecured claim;

(iv)    Both ESE and CA/FE agree that the payment terms detailed in 5(a)(i) meet the requirements of a §1111(b) election to be treated as fully secured, by a class which consists of the ESE Allowed Secured Claim and the CA/FE Allowed Secured Claim; and

(v)    Nothing in this Plan Support Agreement requires or can require either ESE or CA/FE to vote in favor of whatever plan the Debtor may be permitted by the Bankruptcy Court to solicit acceptance of after the approval of any disclosure statement as may be required in the context of the Case. ESE and CA/FE agree not to object to confirmation of any plan that incorporates the terms of this Agreement provided that each of them has been properly solicited pursuant to 11 U.S.C. §§ 1125 and 1126.

**6.    Court Approval; Binding; Effective Date; Termination.** This Agreement is subject to, and shall only become effective upon the Bankruptcy Court's entry of an order approving this Agreement. The Debtor shall use its best efforts to obtain such approval as promptly as practicable after the date of this Agreement by filing an appropriate motion or motions to secure the approval of all elements of this Agreement.   If this Agreement does not become effective, (a) this Agreement shall terminate and be null and void for all purposes, (b) all of the statements, admissions, consents and agreements contained in the Agreement shall be null and void, and (c) the Parties may not use or rely on any such statement, admission, consent or agreement in any public statement or litigation involving another Party.

**7.    Non-Disparagement**:  Each of the Parties agree that, in the future, they will make no derogatory, critical or disparaging statements, remarks or communications whatsoever to any third party which shall include any individual or individuals, organization, entity, private or governmental agency, administrative body or organization, or any regulatory or enforcement body, agency or department, bureau or service of any kind or any nature whatsoever regarding any other Party to this Agreement.

**8.    Representations and Warranties**:  Subject to Bankruptcy Court approval of this Agreement as described above, each Party specifically warrants and represents to the other Parties that it has full authority to act for and to enter into this Agreement.  ESE and CA/FE specifically warrant and represent to the Debtor that:   (a) prior to the execution of this Agreement, neither has assigned, pledged, or otherwise sold or transferred, either by instrument or otherwise, to any person or entity, all or any portion of their respective Proofs of Claim;  and (b) the claims asserted in the respective Proofs of Claim are owned by ESE and CA/FE and are completely free of any encumbrances (though there are sharing provisions amongst these claims and within the CA/FE claim which are the subject of orders of courts of competent jurisdiction. Each of the Parties specifically warrants and represents that it has been fully informed of its terms, contents, conditions, and effects regarding the same, that it has had a full and complete opportunity to discuss this Agreement, including the settlement and the release, with its attorney

Case: 15-50553   Doc# 161-1   Filed: 12/30/15   Entered: 12/30/15 15:10:36   Page 22 of 38

or attorneys, that it is not relying in any respect on any statement or representation made by the other Party, and that no promise or representation of any kind has been made to such Party separate and apart from what is expressly contained in this Agreement.

**9.** **No Duress**: Each of the Parties acknowledges that it has carefully read and fully understands the provisions of this Agreement, that the Party has been given a reasonable period of time to consider the terms of this Agreement, that each of the Parties has consulted with counsel regarding this Agreement, and that the Party enters into this Agreement knowingly and voluntarily and not as a result of any pressure, coercion, or duress.

**10.** **No Evidence / No Admission of Liability**: Neither this Agreement, nor any of its terms, nor any of the negotiations connected with this Agreement, shall be offered by any person or received in any forum as evidence for any purpose other than for purposes of settlement, its effectuation, and/or the enforcement of this Agreement. Under no circumstances shall this Agreement, its terms or any of the negotiations connected with this Agreement be used in any proceeding as an admission of liability or wrongdoing whatsoever on the part of any Party. The Parties acknowledge and agree that this Agreement is entered without any admission of guilt or liability, and nothing contained herein shall be deemed an admission of guilt or liability.

**11.** **Further Assurances**: Should any additional instruments be necessary or desirable to accomplish the purpose(s) of this Agreement or to establish the right or discharge the obligations of any Party hereto, such additional instruments will be promptly executed and delivered upon the request of the other Party or Parties.

**12.** **Survival of Representations**: The representations set forth herein shall survive the completion of all actions contemplated herein. Other provisions hereof which require action after execution shall survive the execution hereof.

**13.** **Headings**: The headings of this Agreement are intended solely as a matter of convenience and for reference and do not define, limit or describe the scope of this Agreement or the scope or content of any of this Agreement's provisions.

**14.** **No Reliance**: In entering this Agreement, the Parties acknowledge that they have not relied on any promise, agreement, representation or statement, whether oral or written, that is not expressly set forth in this Agreement.

**15.** **Choice of Law**: This Agreement shall be governed by and construed in accordance with the laws of the State of California (without regard to the principle of conflicts of law thereof).

**16.** **Continuing Jurisdiction**: The Bankruptcy Court shall retain jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or other actions to interpret, administer, or enforce the terms and provisions of this Agreement. Any motion or application brought before the Bankruptcy Court to resolve a dispute arising from or related to this Agreement shall be brought on proper notice and in accordance with relevant Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court.

6

**17.** **Ambiguous Language**: This Agreement has been negotiated jointly by and between the Parties. The principle of contract interpretation that ambiguous language is construed against the drafter shall not apply to the interpretation of this Agreement. Neither party shall be considered the drafter of this Agreement.

**18.** **Expenses**: Each Party shall be solely responsible for the attorneys' fees, costs and expenses, if any, incurred by that Party in connection with the claims described herein or this Agreement, as applicable.

**19.** **Materiality**: The statements, representations and acknowledgments of this Agreement are not mere recitations; rather, they are understood and relied upon as part of this Agreement by the Parties and are material thereto.

**20.** **Multiple Counterparts**: This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute a single agreement and shall be binding upon delivery to all Parties. Facsimile signatures and/or scanned and emailed signatures shall be deemed originals.

**21.** **No Modifications**: This Agreement may not be amended or modified except in a writing signed by all Parties.

**22.** **Entire, Final and Binding Agreement**: Each of the Parties acknowledges and agrees that this Agreement is the final and binding Agreement between the Parties concerning the matters released. This writing contains the entire Agreement of the Parties and, in entering into this Agreement, each of the Parties acknowledges that it has not relied on any promise, agreement, representation or statement, whether oral or written, that is not expressly set forth in this Agreement.

*THIS SECTION LEFT INTENTIONALLY BLANK*
*SIGNATURE PAGE(S) TO FOLLOW*

3147407 v.3

**SO AGREED ON THIS \_\_\_\_ DAY OF NOVEMBER, 2015:**

**Emergent Systems Exchange, LLC**

By: _____

Its: _____

**Fortis Advisors LLC**, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement and      other applicable Transaction Documents

By: _____
    Rick Fink, CEO and Managing Director

**Future Electronics Corp.**

By:_____
    Joseph Prudente, V.P. Worldwide Credit

**AQH, LLC**

By: _____
    Christopher Cunningham,
    Responsible Individual

**SO AGREED ON THIS \_\_\_\_ DAY OF NOVEMBER, 2015:**

Emergent Systems Exchange, LLC

By: _____

Its: HENRY CORNELIUS
_____ PRESIDENT _____

**Fortis Advisors LLC**, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement and other applicable Transaction Documents

By: _____
Rick Fink, CEO and Managing Director

**Future Electronics Corp.**

By:_____
Joseph Prudente, V.P. Worldwide Credit

**AQH, LLC**

By: _____
Christopher Cunningham,
Responsible Individual

**SO AGREED ON THIS \_\_\_\_ DAY OF NOVEMBER, 2015:**

**Emergent Systems Exchange, LLC**

By: _____

Its: _____

**Fortis Advisors LLC**, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement and other applicable Transaction Documents

By: _____
    Rick Fink, CEO and Managing Director

**Future Electronics Corp.**

By:_____
    Joseph Prudente, V.P. Worldwide Credit

**AQH, LLC**

By: _____
    Christopher Cunningham,
    Responsible Individual

**SO AGREED ON THIS _____ DAY OF NOVEMBER, 2015:**

**Emergent Systems Exchange, LLC**

By: _____

Its: _____

**Fortis Advisors LLC**, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement and other applicable Transaction Documents

By: _____
    Rick Fink, CEO and Managing Director

**Future Electronics Corp.**

By: _____
    Joseph Prudente, V.P. Worldwide Credit

**AQH, LLC**

By: _____
    Christopher Cunningham,
    Responsible Individual

8

**SO AGREED ON THIS \_\_\_\_ DAY OF NOVEMBER, 2015:**

**Emergent Systems Exchange, LLC**

By: _____

Its: _____

**Fortis Advisors LLC**, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement and     other applicable Transaction Documents

By: _____
    Rick Fink, CEO and Managing Director

**Future Electronics Corp.**

By: _____
    Joseph Prudente, V.P. Worldwide Credit

**AQH, LLC**

By: _____
    Christopher Cunningham,
    Responsible Individual

8

**EXHIBIT "1"**

**<u>Payment Terms Applicable to the ESE Settlement Note and the CA/FE Settlement Note</u>**

Payments on each of the two notes will be: a) $10,000 per month for the first 12 months; b) $15,000 per month for the next 26 months; and C) a final payment of $14,035.

The first payment is due on 30 days after entry of an order confirming the plan, and all subsequent monthly payment will be due on the same day each month.

# EXHIBIT B

Matthew J. Olson
MACDONALD | FERNANDEZ LLP
221 Sansome Street, Third Floor
San Francisco, CA 94104
(415) 362-0449 Ext. 205
matt@macfern.com

ATTORNEYS FOR THE DEBTOR

E. P. Keiffer
WRIGHT GINSBERG BRUSILOW P.C.
325 North St. Paul Street, Suite 4150
Dallas, TX 75201
(214) 651-6500
pkeiffer@wgblawfirm.com

Kathryn Diemer
DIEMER, WHITMAN & CARDOSI, LLP
75 East Santa Clara Street, Suite 290
San Jose, CA 95113
(408) 971-6270
kdiemer@diemerwhitman.com

ATTORNEYS FOR COLLATERAL AGENT AND FE

David B. Galle
Oppenheimer Wolff & Donnelly, LLP
222 South 9th Street
Suite 200
Minneapolis, MN 55402
DGalle@oppenheimer.com

ATTORNEYS FOR EMERGENT SYSTEMS, INC.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 15-50553-11-SLJ |
| | Chapter 11 |
| AQH, LLC, | |
| | CERTIFICATE OF SERVICE |
| | Honorable Stephen L. Johnson |
| Debtor. | |

I, the undersigned, hereby certify that I am a citizen of the United States of America and employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; that my business address is 221 Sansome Street, Third Floor, San Francisco, California 94104-2323.

On the date hereof, I served the following documents:
1. MOTION TO APPROVE PLAN SUPPORT AND CLAIMS SETTLEMENT AGREEMENT
2. DECLARATION OF CHRISTOPHER CUNNINGHAM IN SUPPORT OF MOTION TO APPROVE PLAN SUPPORT AND CLAIMS SETTLEMENT AGREEMENT
3. NOTICE OF OPPORTUNITY FOR HEARING ON MOTION TO APPROVE PLAN SUPPORT AND CLAIMS SETTLEMENT AGREEMENT

Upon the following persons and/or entities:

| | |
|---|---|
| Cheryl C. Rouse<br>Law Offices of Rouse & Bahlert<br>345 Franklin Street<br>San Francisco, California 94102 | Churchwell White LLP<br>Attn: Karl Schweikert<br>1414 K Street, 3rd Floor<br>Sacramento, CA 95814 |
| Diemer, Whitman & Cardosi, LLP<br>75 E. Santa Clara Street, # 290<br>San Jose, CA 95113 | E. P. Keiffer<br>Wright Ginsberg Brusilow P.C.<br>325 North Saint Paul Street, Suite 4150<br>Dallas, TX 75201 |
| Office of the U.S. Trustee / SJ<br>Attn: Shining J. Hsu<br>U.S. Federal Bldg.<br>280 S 1st St. #268<br>San Jose, CA 95113-3004 | Stephen D. Finestone<br>456 Montgomery Street, 20th Floor<br>San Francisco, CA 94104 |
| William L. Porter<br>Porter Law Group, Inc.<br>7801 Folsom Boulevard, Suite 101<br>Sacramento, CA 95826 | |

As follows:

[X] **By First Class U.S. Mail.** By placing a true and correct copy of said documents, enclosed in a sealed envelope, addressed as above, with postage thereon fully prepared to be placed in the United States mail at San Francisco, California.

On the date hereof, I served the following document:
1. NOTICE OF OPPORTUNITY FOR HEARING ON MOTION TO APPROVE PLAN SUPPORT AND CLAIMS SETTLEMENT AGREEMENT

///

///

///

2

1    Upon the following persons and/or entities on the attached mailing matrix, as follows:

2    ☒   By First Class U.S. Mail. By placing a true and correct copy of said document,
          enclosed in a sealed envelope, addressed as above, with postage thereon fully
3         prepared to be placed in the United States mail at San Francisco, California.

4         I declare under penalty of perjury under the laws of the State of California that the foregoing

5    is true and correct and that I am employed in the office of a member of the bar of this Court, at

6    whose direction the service was made.

7      EXECUTED: December 7, 2015              /s/ Samantha G. Brown

8                                              SAMANTHA G. BROWN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                                    3

Label Matrix for local noticing
0971-5
Case 15-50553
Northern District of California
San Jose
Mon Dec  7 17:29:22 PST 2015

A&A Portables
201 Roscoe Road
Modesto, CA 95357-1828

AQH, LLC
440 North Wolfe Road, #243
Sunnyvale, CA 94085-3869

Access Electric
1990 Foundry Court
Ceres, CA 95307-9223

Andrew L. Faris
4929 E. Sunny Slope Road
Edina, MN 55424-1166

Andy Faris
4929 E. Sunnyslope Rd.
Edina, MN 55424-1166

Anthony Steven Brough
1200 Dale Ave, Apt 78
Mountain View, CA 94040-3326

Austin Roberts
2312 Lavon Lane
Ceres, CA 95307-1616

Brian Friend
527 Terminal Ave.
Modesto, CA 95350-5950

CA Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

CA Franchise Tax Board
Attn: Special Procedures
P.O. Box 2952
Sacramento, CA 95812-2952

CHERYL C. ROUSE
LAW OFFICES OF ROUSE & BAHLERT
345 Franklin Street
San Francisco, California 94102-4427

Chris Cunningham
10033 Reevesbury Dr.
Beverly Hills, CA 90210-1422

Chris Kilday
450 Taraval St, #143
San Francisco, CA 94116-2530

Collins Electric
3412 Metro Drive
Stockton, CA 95215-9440

Collins Electrical Company, Inc.
C/O Herrig & Vogt, LLP
4210 Douglas Blvd
Suite 100
Granite Bay, CA 95746-5912

Collins Electrical Company, Inc.
HERRIG & VOGT, LLP
4210 Douglas Blvd.
Suite 100
Granite Bay, CA 95746-5912

CrimeTek Security
3448 North Golden State
Blvd.
Turlock, CA 95382-9709

DHL Global Forwarding
P.O. Box 742802
Los Angeles, CA 90074-2802

Lucile Darnell
c/o Stephen D. Finestone
456 Montgomery St., 20th Fl
San Francisco, CA 94104-1253

David B. Oshinsky
9415 Culver Boulevard
Culver City, CA 90232-2616

Diemer, Whitman & Cardosi, LLP
75 E. Santa Clara Street, # 290
San Jose, CA 95113-1826

E.P. Keiffer
Wright Ginsberg Brusilow P.C.
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201-3861

Elisa Research
48834 Kato Road Suite 101-A
Fremont, CA 94538-7368

Emergent Systems
Exchange
7160 Shady Oak
Eden Prairie, MN 55344-3517

Emergent Systems Exchange, LLC
7160 Shady Oak Road
Eden Prairie, MN 55344-3517

Employment Development Department
Bankruptcy Group MIC 92E, PO BOX 826880
Sacramento, CA 95814

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Andrew L Faris
c/o Law Offices of Rouse & Bahlert
345 Franklin Street
San Francisco, CA 94102-4427

Reno F.R. Fernandez
Macdonald Fernandez LLP
221 Sansome St. 3rd Fl.
San Francisco, CA 94104-2331

Stephen D. Finestone
Law Offices of Stephen D. Finestone
456 Montgomery St. 20th Fl.
San Francisco, CA 94104-1253

Fortis Advisors LLC
Collateral Agent (ratably)(CA) for Len
c/o Rick Fink
CEO and Managing Director
12526 High Bluff Drive, Suite 280
San Diego, CA 92130-3015

Fortis Advisors, LLC
c/o Diemer, Whitman & Cardosi, LLP
75 E. Santa Clara Street
Suite 290
San Jose, CA 95113-1826

Fortis Advisors, LLC
c/o E.P. Keiffer
Wright Ginsberg Brusilow, PC
325 North St Paul Street, Suite 4150
Dallas, TX 75201-3861

Franchise Tax Board
Bankruptcy Section, MS A-340
Post Office Box 2952
Sacramento, CA 95812-2952

Future Electronics Corp.
c/o E.P. Keiffer
325 N. St. Paul, Suite 4150
Dallas, TX 75201-3861

Future Electronics Corporation
c/o E. P. Keiffer
Wright Ginsberg Brusilow P.C.
325 N. St. Paul, Suite 4150
Dallas, TX 75201-3861

Gina L. Moyles/Anthony P. Fritz
HERRIG & VOGT, LLP
4210 Douglas Blvd., Suite 100
Granite Bay, CA 95746-5912

I Guard
3448 North Golden State
Blvd.
Turlock, CA 95382-9709

IRS
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
Post Office Box 7346
Philadelphia, PA 19101-7346

Jacob Lopez
1608 Don Pedro Road
Ceres, CA 95307-9594

John Walsh
120 59th
Burr Ridge, IL 60527-4905

Karl A. Schweikert
Churchwell White, LLP
1414 K Street, Third Floor
Sacramento, CA 95814-3967

Edwin Paul Keiffer
Wright Ginsberg Brusilow P.C.
325 N St. Paul St. #4150
Dallas, TX 75201-3861

Kelly Litigation Group, Inc.
3 Lagoon Drive, Ste. 225
Redwood City, CA 94065-5158

Tatiana Korolshteyn
c/o Stephen D. Finestone
456 Montgomery St., 20th Fl
San Francisco, CA 94104-1253

Lionakis, a California
corporation
915 13th Street
Modesto, CA 95354-0903

Lucile Darnell
824 Lyndon Street, Apt. G
Monterey, CA 93940-1976

Lucy Darnell
824 Lyndon Street, Apt. G
Monterey, CA 93940-1976

MACDONALD
FERNANDEZ LLP
MATTHEW J. OLSON (SBN 265908)
221 Sansome Street, Third Floor
San Francisco, CA 94104-2331

Michael Mengarelli
Kelly Litigation Group, Inc.
3 Lagoon Dr. #225
Redwood City, CA 94065-5158

Michael White
2824 Fowler Road
Ceres, CA 95307-2102

Gina L. Moyles
Herrig and Vogt, LLP
4210 Douglas Blvd. #100
Granite Bay, CA 95746-5912

New Concept Fleet
Management
9096 Elkmont Way
Elk Grove, CA 95624-9707

Office of the U.S. Trustee / SJ
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004

Matthew Jon Olson
Macdonald Fernandez LLP
221 Sansome St. 3rd Fl.
San Francisco, CA 94104-2331

PLN Architects
1720 G Street
Modesto, CA 95354-1214

Platt Electric
10605 Southwest Allen Blvd.
Beaverton, OR 97005-4896

William L. Porter
Law Offices of Porter and Cable
7801 Folsom Blvd. #350
Sacramento, CA 95826-2624

Rexel, Inc. dba Platt Electric Supply
600 University St.
Ste. 3300
Seattle, WA 98101-1129

Rick Fink
CEO and Managing Director
Fortis Advisors as Collateral Agent
12526 High Bluff Drive, Suite 280
San Diego, CA 92130-3015

Riverbank Local
Redevelopment Authority
5300 Claus Road, Suite 1
Modesto, CA 95357-1665

Riverbank Local Development Authority
Churchwell White, LLP
1414 K Street, Third Floor
Sacramento, CA 95814-3929

Riverbank Local Redevelopment Agency
c/o Debbie Olson, Executive Director
5300 Claus Road, Suite 1
Modesto, CA 95357-1665

Riverbank Local Redevelopment Authority
c/o S. Craig Hunter
Churchwell White LLP
1414 K Street, 3rd Floor
Sacramento, CA 95814-3967

Cheryl C. Rouse
Law Offices of Rouse and Bahlert
345 Franklin St.
San Francisco, CA 94102-4427

Karl Andrew Schweikert
Churchwell White LLP
1414 K Street, 3rd Fl
Sacramento, CA 95814-3967

Sean Walsh
1742 Kansas Street
Redwood City, CA 94061-2635

Seth Chastain c/o Levy - von Beck & Ass
600 University St.
Ste. 3300
Seattle, WA 98101-1129

Dominique Sopko
Diemer, Whitman & Cardosi, LLP
75 E Santa Clara St. #290
San Jose, CA 95113-1826

Southland Electrical Supply
147 North Main Street
Burlington, NC 27217-3901

(p)CALIFORNIA STATE BOARD OF EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029

State of California
Employment Development Dept.
Bankruptcy Special Procedures Group
P.O. Box 8268880 MIC 92E
Sacramento, CA 94280-0001

Stephen D. Finestone
456 Montgomery Street, 20th Floor
San Francisco, CA 94104-1253

Tatiana Korolshteyn
1742 Kansas Street
Redwood City, CA 94061-2635

The Law Offices of Peter Lively
Attn: Peter Lively
11268 W. Washington Blvd.
Culver City, CA 90230-4647

Thomas Bautista
1624 Palm Ave.
Redwood City, CA 94061-2647

Tricia Hayward
1125 East Monte Vista Ave.
Turlock, CA 95382-0405

U.S. Attorney
Civil Division
450 Golden Gate Ave.
San Francisco, CA 94102-3661

Vagada Holdings
18600 Castle Ridge Drive
Morgan Hill, CA 95037-8947

Vagada Holdings, LLC
Attn: Yan Ebyam
18600 Castle Ridge Drive
Morgan Hill, CA 95037-8947

W.W. Grainger, Inc.
100 Grainger Parkway
Lake Forest, IL 60045-5202

William L. Porter
Porter Law Group, Inc.
7801 Folsom Boulevard, Suite 101
Sacramento, CA 95826-2619

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

State Board of Equalization
Attn: Special Procedures Section, MIC:55
P.O. Box 942879
Sacramento, CA 94279

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)ACCESS ELECTRIC

(u)Baudler & Flanders

(d)Collins Electric
3412 Metro Drive
Stockton, CA 95215-9440


(d)CrimeTek Security
3448 North Golden State Blvd.
Turlock, CA 95382-9709

(u)Chris Cunningham

(u)DBMAC, Inc.


(d)Emergent Systems Exchange
7160 Shady Oak
Eden Prairie, MN 55344-3517

(d)I Guard
3448 North Golden State Blvd.
Turlock, CA 95382-9709

(d)Lionakis, a California corporation
915 13th Street
Modesto, CA 95354-0903


(d)New Concept Fleet Management
9096 Elkmont Way
Elk Grove, CA 95624-9707

(d)Riverbank Local Redevelopment Authority
5300 Claus Road, Suite 1
Modesto, CA 95357-1665

End of Label Matrix
Mailable recipients      83
Bypassed recipients      11
Total                    94