MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
221 Sansome Street, Third Floor
San Francisco, CA 94104-2323
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor in Possession,
AQH, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In Re:

AQH, LLC

    Debtor.

Case No. 15-50553-SLJ-11

Chapter 11

**DEBTOR'S MOTION TO COMPROMISE CONTROVERSY WITH CHRISTOPHER KILDAY**

[No Hearing Set]

COMES NOW AQH, LLC, the Debtor in Possession herein, who moves for entry of an order pursuant to Federal Rule of Bankruptcy Procedure 9019 approving compromise of a controversy between the estate and Christopher Kilday, and respectfully represents as follows:

### FACTS

The within bankruptcy case was commended by filing a voluntary Chapter 11 petition on February 19, 2015. A trustee has not been appointed, and the Debtor is in possession of its estate. Plaintiff AQH, LLC is the Debtor in Possession in the main bankruptcy case, Bankr. N.D. Cal. No. 15-50553-SLJ-11.

Background

Kilday asserts a claim against the AQH Bankruptcy Estate arising from an alleged breach of a contract between Kilday and AQH related to a commission that AQH allegedly agreed to pay him in connection with AQH's purchase of certain computer hardware from Emergent Systems Exchange L.L.C. In support of his claim, Kilday filed a proof of claim with the Bankruptcy Court,

1

and the claim is listed as claim number 6 on the Court's official registry of claims (the "Proof of Claim"), in which Kilday asserts he holds a total claim of $60,000, including a priority claim of $12,475 under Bankruptcy Code § 507(a)(4). AQH disputes the liability, priority, and amount of the Kilday claim, and contends that, as of the petition date, Kilday's claim was a contingent, general unsecured claim of not more than $23,423.14, and remained subject to certain setoff rights.

On February 21, 2015, Kilday was served with a copy of the Court's *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* by mail to his current address, and thereby received notice of the bankruptcy case. On February 26, 2015, Kilday was served with copies of AQH's motions to use cash collateral and for authority to pay pre-petition wages (the "First Day Motions") by mail to his current address, and thereby received notice of the bankruptcy case. Thereafter, Kilday participated in hearings on AQH's First Day Motions.

Proceedings in State Court

On March 9, 2015, Kilday commenced a civil action in the Superior Court of California, County of San Francisco (the "Superior Court") against Sean Walsh, Yan Ebyam, Anthony Brough, Emergent Systems Exchange L.L.C., Andy Faris, and Does 1 through 20, inclusive (the "State-Court Action"). The State-Court Action is styled *Kilday v. Walsh* and was assigned case number CGC-15-54459. At the time the complaint was filed, Walsh and Brough were officers and employees of AQH; Ebyam was an independent contractor working for AQH. The Complaint alleges that AQH breached its contract with Kilday and that Walsh, Ebyam, and Brough (the "AQH Defendants") are liable to Kilday for the alleged breach as "agents" of AQH. After the AQH Defendants filed a demurrer in the State-Court Action, Kilday filed an amended complaint. Kilday also commenced discovery in the State-Court Action. The AQH Defendants deny the material allegations of the complaint and the amended complaint in the State-Court Action.

The Adversary Proceeding

AQH commenced an adversary proceeding against Kilday on May 15, 2015, styled *AQH, LLC v. Kilday*, case number 15-05046-SLJ (the "Adversary Proceeding"), which remains pending before the Court. In the Adversary Proceeding, AQH alleges that Kilday violated the automatic stay of Bankruptcy Code § 362(a) by commencing the State-Court Action and engaging in other post-

petition collection actions. AQH sought damages for the alleged violations of the automatic stay and an injunction prohibiting prosecution of the State-Court Action. Kilday denies the material allegations of the complaint in the Adversary Proceeding.

After notice and a hearing, on May 28, 2015, the Court entered a temporary restraining order enjoining the prosecution of the State-Court Action pending a further hearing. Specifically, the Court found:

    i.    AQH had shown, at an early stage, a reasonable likelihood of successful reorganization;

    ii.    AQH was likely to suffer irreparable harm in the absence of preliminary relief because prosecution of the State-Court Action distracted AQH's management from the administration of the Bankruptcy Case, to the detriment of the Bankruptcy Estate and creditors, exposed the estate to unnecessary administrative expenses and claims from its officers and employees, and created risks that the estate will not be able to present its defenses to the Kilday claim and have conflicting judgments entered;

    iii.    the balance of equities tipped in AQH's favor because in the aforesaid risks to AQH outweighed the minor delay in payment of Kilday's allowed claim for money; and

    iv.    the public's interest was served by granting the motion because of the avoidance of duplicative litigation, the preservation of the priority scheme created by the Bankruptcy Code, and the preservation of this Court's jurisdiction.

*See* Doc. No. 16 at 2:6–18. Thereafter, the Parties stipulated to entry of a preliminary injunction enjoining the prosecution of the State-Court Action through and including the effective date of AQH's plan of reorganization. *See* Doc. No. 22.

The Settlement

The parties engaged in informal settlement discussions and reached a definitive settlement of the disputes between them. The Settlement Agreement, a copy of which is offered as Exhibit "A" to the Declaration of Sean Walsh, filed herewith, provides for a complete settlement of the claims asserted in the Adversary Proceeding, a general mutual releases between the parties (except for the obligations created by the Settlement Agreement), a waiver of the protections of California Civil

Code § 1542, allowance of a reduced priority unsecured claim in favor of Kilday, and an agreed-upon payment schedule for Kilday's allowed claim. Following approval of the Settlement Agreement and dismissal of the AQH Defendants (as that term is defined in the Settlement Agreement) from the State-Court Action, AQH and the Defendant will execute a stipulation for dismissal of the Adversary Proceeding with prejudice pursuant to Civil Rule 41(a)(1)(A)(ii).

## **ANALYSIS**

The Court is empowered to approve settlements between Debtor and third parties. Fed. R. Bankr. P. 9019(a). Approval of a compromise is within the discretion of the court. *United States v. Alaska Nat'l Bank of the North (In re Walsh Construction),* 669 F.2d 1325, 1328 (9th Cir. 1982). When a motion to approve compromise is presented to the Court, the Court makes an independent determination whether the settlement is appropriate. *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–425 (1968). In evaluating the acceptability of a compromise, courts evaluate four factors:

1. The probability of success in the litigation;
2. Any difficulties expected in collection;
3. The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and
4. The paramount interest of the creditors and a proper deference to their reasonable views.

*Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *Woodson v. Fireman's Fund Ins. Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1988). It is not necessary that each factor be satisfied as long as the factors as a whole favor approving the settlement. *In re WCI Cable, Inc.,* 282 B.R. 457, 473–74 (Bankr. D. Or. 2002).

This Court need not conduct a "mini-trial" on the merits of the disputes to be compromised. *Port O'Call Inv. Co. v. Blair (In re Blair)*, 538 F.2d 849, 851–852 (9th Cir. 1976). The Court may approve a settlement if "(1) the claim has a 'substantial foundation' and is not 'clearly invalid as a matter of law', or (2) the outcome of the claim's litigation is 'doubtful.'" *Walsh Construction*, 669 F.2d at 1328. The Court is not required to decide the questions of law or fact or conduct a trial on the merits; to the contrary, courts review the issues to determine whether the "settlement falls below

4

the lowest point in a range of reasonableness." *Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R. 119, 123 (D.N.J. 2000); *see also In re Energy Coop.*, 886 F.2d 921 (7th Cir. 1989); *Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Services, Inc.)*, 762 F.2d 185, 189 (2nd Cir. 1985); *Off. Comm. Of Unsecured Creditors of Intl. Distrib. Ctrs., Inc. (In re Intl. Distrib. Ctrs., Inc.)*, 103 B.R. 420, 423 (S.D.N.Y. 1989); *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991).

The Court may weigh the opinions of the debtor, the parties and their attorneys, and may consider their belief that all of the factors bearing upon the appropriateness of the settlement have been explored and that the compromise is fair and equitable. *Blair*, 538 F.2d at 851. Here, the settlement is fair and equitable and in the best interests of the estate.

Probability of Success

The Debtor believes the probability of success on the merits of the Adversary Proceeding are high, but the distraction caused by prosecution of the Adversary Proceeding and the risk of being forced to litigate issues before the Superior Court—which might expose the Debtor to claims from current and former employees—militates in favor of settlement. Kilday contends that the defendants granted him a personal guarantee of the obligations created by his contract with the Debtor and that the reduction in his commission from 5% to 2.5% was conditioned upon immediate payment. The edits Kilday made by hand to the agreement do not support this interpretation; there is no mention of a personal guarantee by any third party and payment of the commission remains subject to certain conditions precedent in the agreement. The commencement appears to be nothing more than an attempt to circumvent the automatic stay and pressure the Debtor's management to pay Kilday's claim immediately.

The proposed settlement provides as good a recovery for the estate as prosecuting the Adversary Proceeding because it fixes Kilday's claim at the amount contended by the Debtor ($23,423.14)—far less than the $60,000 figure advanced by Kilday, and then provides a $17,000 credit for the fees incurred by the estate in prosecuting the Adversary Proceeding and the AQH Defendants in defending the State-Court Action. This factor favors approval of the settlement.

///

5

### Difficulties in Collection

Collection of any judgment against Kilday may be difficult; the Debtor has no information on Kilday's financial position or his ability to make a settlement payment. This settlement does not provide for a payment by Kilday to the estate; rather, the settlement provides for a reduction in Kilday's allowed claim. This factor favors approval of the settlement.

### Complexity and Expense of Litigation

The costs of continued litigation would be excessive in light of the total amount of Kilday's claim, the risk of nonpayment of any judgment, and the fact that any recovery could be limited to actual administrative expenses incurred in correcting the violation of the stay, providing no real benefit to creditors. The settlement provides for a superior recovery to the estate because it avoids the expense and distraction of continued litigation while providing value to the estate. This factor favors approval of the settlement.

### Paramount Interest of Creditors

The proposed settlement is in the best interests of creditors because it represents the best opportunity to liquidate assets, minimize administrative expenses, and fund distributions to creditors under a plan of reorganization.

The costs, additional risks, and delay of litigation more than outweigh any prospect of improving upon the proposed compromise of the claims asserted in the Adversary Proceeding. The proposed settlement is within the range of reasonableness, and should be approved by the Court.

## CONCLUSION

WHEREFORE, the Debtor requests that the Court enter an order:

1. Approving the Settlement Agreement;

2. Authorizing the Debtor to consummate and carry out the actions reasonably necessary to consummate the Settlement Agreement; and

3. Granting such other and further relief as appropriate in the premises.

DATED: January 27, 2016　　　　　　　　　　MACDONALD | FERNANDEZ LLP

By: /s/ Matthew J. Olson
Matthew J. Olson
Attorneys for Debtor in Possession,
AQH, LLC

6