MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
221 Sansome Street, Third Floor
San Francisco, CA 94104-2323
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor in Possession,
AQH, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In Re:

AQH, LLC

          Debtor.

Case No. 15-50553-SLJ-11

Chapter 11

**DECLARATION OF SEAN WALSH IN SUPPORT OF DEBTOR'S MOTION TO COMPROMISE CONTROVERSY WITH CHRISTOPHER KILDAY**

[No Hearing Set]

I, Sean Walsh, declare:

1. I am the Managing Member of AQH, LLC, Debtor-in-Possession herein. I am familiar with the Debtor's business. I am over the age of 18. The following facts are true and correct of my own personal knowledge. If called as a witness, I could and would competently testify as follows.

2. Kilday asserts a claim against the AQH Bankruptcy Estate arising from an alleged breach of a contract between Kilday and AQH related to a commission that AQH allegedly agreed to pay him in connection with AQH's purchase of certain computer hardware from Emergent Systems Exchange L.L.C.

3. In support of his claim, Kilday filed a proof of claim with the Bankruptcy Court, and the claim is listed as claim number 6 on the Court's official registry of claims (the "Proof of Claim"), in which Kilday asserts he holds a total claim of $60,000, including a priority claim of

$12,475 under Bankruptcy Code § 507(a)(4). AQH disputes the liability, priority, and amount of the Kilday claim, and contends that, as of the petition date, Kilday's claim was a contingent, general unsecured claim of not more than $23,423.14, and remained subject to certain setoff rights.

4. On February 21, 2015, Kilday was served with a copy of the Court's *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* by mail to his current address, and thereby received notice of the bankruptcy case. On February 26, 2015, Kilday was served with copies of AQH's motions to use cash collateral and for authority to pay pre-petition wages (the "First Day Motions") by mail to his current address, and thereby received notice of the bankruptcy case. Thereafter, Kilday participated in hearings on AQH's First Day Motions.

5. On March 9, 2015, Kilday commenced a civil action in the Superior Court of California, County of San Francisco (the "Superior Court") against me, Yan Ebyam, Anthony Brough, Emergent Systems Exchange L.L.C., Andy Faris, and Does 1 through 20, inclusive (the "State-Court Action"). The State-Court Action is styled *Kilday v. Walsh* and was assigned case number CGC-15-54459. At the time of the filiing of the complaint, Brough and I were officers and employees of AQH; Ebyam was an independent contractor working for AQH.

6. The Complaint alleges that AQH breached its contract with Kilday and that Ebyam, Brough, and I (the "AQH Defendants") are liable to Kilday for the alleged breach as "agents" of AQH. After the AQH Defendants filed a demurrer in the State-Court Action, Kilday filed an amended complaint. Kilday also commenced discovery in the State-Court Action. The AQH Defendants deny the material allegations of the complaint and the amended complaint in the State-Court Action.

7. AQH commenced an adversary proceeding against Kilday on May 15, 2015, styled *AQH, LLC v. Kilday*, case number 15-05046-SLJ (the "Adversary Proceeding"), which remains pending before the Court. In the Adversary Proceeding, AQH alleges that Kilday violated the automatic stay of Bankruptcy Code § 362(a) by commencing the State-Court Action and engaging in other post-petition collection actions. AQH sought damages for the alleged violations of the automatic stay and an injunction prohibiting prosecution of the State-Court Action. Kilday denies the material allegations of the complaint in the Adversary Proceeding.

8. After notice and a hearing, on May 28, 2015, the Court entered a temporary restraining order enjoining the prosecution of the State-Court Action pending a further hearing. Specifically, the Court found:

    i. AQH had shown, at an early stage, a reasonable likelihood of successful reorganization;

    ii. AQH was likely to suffer irreparable harm in the absence of preliminary relief because prosecution of the State-Court Action distracted AQH's management from the administration of the Bankruptcy Case, to the detriment of the Bankruptcy Estate and creditors, exposed the estate to unnecessary administrative expenses and claims from its officers and employees, and created risks that the estate will not be able to present its defenses to the Kilday claim and have conflicting judgments entered;

    iii. the balance of equities tipped in AQH's favor because in the aforesaid risks to AQH outweighed the minor delay in payment of Kilday's allowed claim for money; and

    iv. the public's interest was served by granting the motion because of the avoidance of duplicative litigation, the preservation of the priority scheme created by the Bankruptcy Code, and the preservation of this Court's jurisdiction.

*See* Doc. No. 16 at 2:6–18. Thereafter, the Parties stipulated to entry of a preliminary injunction enjoining the prosecution of the State-Court Action through and including the effective date of AQH's plan of reorganization. *See* Doc. No. 22.

9. We have engaged in informal settlement discussions with Kilday and reached a definitive settlement of the disputes between them. The Settlement Agreement, a copy of which is offered as Exhibit "A" to this declaration, filed herewith, provides for a complete settlement of the claims asserted in the Adversary Proceeding, a general mutual releases between the parties (except for the obligations created by the Settlement Agreement), a waiver of the protections of California Civil Code § 1542, allowance of a reduced priority unsecured claim in favor of Kilday, and an agreed-upon payment schedule for Kilday's allowed claim.

10. I understand that following approval of the Settlement Agreement and dismissal of the AQH Defendants (as that term is defined in the Settlement Agreement) from the State-Court

3

Case: 15-50553    Doc# 168-1    Filed: 01/27/16    Entered: 01/27/16 16:53:51    Page 3 of 13

Action, AQH and the Defendant will execute a stipulation for dismissal of the Adversary Proceeding with prejudice pursuant to Civil Rule 41(a)(1)(A)(ii).

### Probability of Success

11. The Debtor's management believes the probability of success on the merits of the Adversary Proceeding are high, but the distraction caused by prosecution of the Adversary Proceeding and the risk of being forced to litigate issues before the Superior Court—which might expose the Debtor to claims from current and former employees—militates in favor of settlement. I understand that Kilday contends that the defendants in the State-Court Action granted him a personal guarantee of the obligations created by his contract with the Debtor and that the reduction in his commission from 5% to 2.5% was conditioned upon immediate payment.

12. The edits Kilday made by hand to the agreement do not support this interpretation; there is no mention of a personal guarantee by any third party and payment of the commission remains subject to certain conditions precedent in the agreement. The commencement appears to be nothing more than an attempt to circumvent the automatic stay and pressure the Debtor's management to pay Kilday's claim immediately.

13. In my opinion, the proposed settlement provides as good a recovery for the estate as prosecuting the Adversary Proceeding because it fixes Kilday's claim at the amount contended by the Debtor ($23,423.14)—far less than the $60,000 figure advanced by Kilday, and then provides a $17,000 credit for the fees incurred by the estate in prosecuting the Adversary Proceeding and the AQH Defendants in defending the State-Court Action. This factor favors approval of the settlement.

### Difficulties in Collection

14. Collection of any judgment against Kilday may be difficult; we have no information on Kilday's financial position or his ability to make a settlement payment. This settlement does not provide for a payment by Kilday to the estate; rather, the settlement provides for a reduction in Kilday's allowed claim. This factor favors approval of the settlement.

### Complexity and Expense of Litigation

15. The costs of continued litigation would be excessive in light of the total amount of Kilday's claim, the risk of nonpayment of any judgment, and the fact that any recovery could be

limited to actual administrative expenses incurred in correcting the violation of the stay, providing no real benefit to creditors. The settlement provides for a superior recovery to the estate because it avoids the expense and distraction of continued litigation while providing value to the estate. This factor favors approval of the settlement.

<u>Paramount Interest of Creditors</u>

16. The proposed settlement is in the best interests of creditors because it represents the best opportunity to liquidate assets, minimize administrative expenses, and fund distributions to creditors under a plan of reorganization.

17. In my business judgment, the costs, additional risks, and delay of litigation more than outweigh any prospect of improving upon the proposed compromise of the claims asserted in the Adversary Proceeding. The proposed settlement is within the range of reasonableness; is in the best interest of the Debtor, the estate, and creditors; and should be approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 26th day of January, 2016, at Denver, Colorado.

                                        /s/ Sean Walsh
                                        SEAN WALSH

# EXHIBIT A

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") dated December 18, 2015, is entered into by and between AQH, LLC, Debtor in Possession ("AQH") and CHRISTOPHER KILDAY ("Kilday," and collectively with AQH, the "Parties").

## Recitals

A. AQH filed a voluntary Chapter 11 petition on February 19, 2015, Case No. 15-50553-SLJ-11 (the "Bankruptcy Case"), pending in the San Jose Division of the U.S. Bankruptcy Court of the Northern District of California (the "Court"). A trustee has not been appointed, and AQH is in possession of its estate.

B. Kilday asserts a claim against the AQH Bankruptcy Estate arising from an alleged breach of a contract between Kilday and AQH related to a commission that AQH allegedly agreed to pay him in connection with AQH's purchase of certain computer hardware from Emergent Systems Exchange L.L.C. In support of his claim, Kilday filed a proof of claim with the Bankruptcy Court, and the claim is listed as claim number 6 on the Court's official registry of claims (the "Proof of Claim"), in which Kilday asserts he holds a total claim of $60,000, including a priority claim of $12,475 under Bankruptcy Code § 507(a)(4). AQH disputes the liability, priority, and amount of the Kilday claim, and contends that, as of the petition date, Kilday's claim was contingent, general unsecured claim subject to certain setoff rights.

C. On February 21, 2015, Kilday was served with a copy of the Court's *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* by mail to his current address, and thereby received notice of the bankruptcy case. On February 26, 2015, Kilday was served with copies of AQH's motions to use cash collateral and for authority to pay pre-petition wages (the "First Day Motions") by mail to his current address, and thereby received notice of the bankruptcy case. Thereafter, Kilday participated in hearings on AQH's First Day Motions.

D. On March 9, 2015, Kilday commenced a civil action in the Superior Court against Sean Walsh, Yan Ebyam, Anthony Brough, Emergent Systems Exchange L.L.C., Andy Faris, and Does 1 through 20, inclusive (the "State-Court Action"). The State-Court Action is styled *Kilday v. Walsh* and was assigned case number CGC-15-54459. Walsh and Brough are officers and employees of AQH; Ebyam is an independent contractor working for AQH. The Complaint alleges that AQH breached its contract with Kilday and that Walsh, Ebyam, and Brough (the "AQH Defendants") are liable to Kilday for the alleged breach as "agents" of AQH. After the AQH Defendants filed a demur in the State-Court Action, Kilday filed an amended complaint. Kilday also commenced discovery in the State-Court Action. The AQH Defendants deny the material allegations of the complaint and the amended complaint in the State-Court Action

E. AQH commenced an adversary proceeding against Kilday on May 15, 2015, styled *AQH, LLC v. Kilday*, case number 15-05046-SLJ (the "Adversary Proceeding"), which remains pending before the Court. In the Adversary Proceeding, AQH alleges that Kilday violated the automatic stay of Bankruptcy Code § 362(a) by commencing the State-Court Action and engaging in other post-petition collection actions. AQH sought damages for the alleged

1

violations of the automatic stay and an injunction prohibiting prosecution of the State-Court Action. Kilday denies the material allegations of the complaint in the Adversary Proceeding.

F. After notice and a hearing, on May 28, 2015, the Court entered a temporary restraining order enjoining the prosecution of the State-Court Action pending a further hearing. Thereafter, the Parties stipulated to entry of a preliminary injunction enjoining the prosecution of the State-Court Action through and including the effective date of AQH's plan of reorganization.

G. AQH and Kilday desire to resolve the disputes between them, including the dispute related to the claim and the Adversary Proceeding. This Agreement provides for a complete and final settlement by all the parties hereto of the claims or potential claims that each party may have against the other which arise from the Proof of Claim and the allegations described in the Adversary Proceeding, except for the performance of obligations under this Agreement and any written agreements being executed in connection with this Agreement.

## Agreement

NOW, THEREFORE, in consideration of mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledge, the Parties hereto agree as follows:

1. Recitals. The foregoing Recital paragraphs are incorporated herein by reference.

2. Bankruptcy Court Approval. This Agreement is subject to the approval of the Bankruptcy Court and is of no force or effect until approved by the Bankruptcy Court. Upon entry of an order of the Bankruptcy Court approving this agreement (that is not stayed), this agreement shall become immediately effective (the "Effective Date").

3. Allowed Claim. Upon approval by the Bankruptcy Court, Kilday's claim will be allowed as a priority claim in the total amount of $6,423.14. The allowed claim will be paid pursuant to AQH's plan of reorganization with interest at the federal judgment rate of interest as of the Plan's effective date, through 12 equal monthly installments of $536.68, unless the Parties agree to a different payment schedule. Notwithstanding any of the foregoing, AQH may elect, in its sole discretion, to prepay Kilday's claim, or any part thereof, without any penalty for prepayment.

4. Dismissal of State-Court Action. Within 15 calendar days after the Effective Date, Kilday shall dismiss, with prejudice, the AQH Defendants from the State-Court Action.

5. Dismissal of Adversary Proceeding. Within 15 calendar days after dismissal of the AQH Defendants from State-Court Action, the Parties shall execute a stipulation dismissing the Adversary Proceeding with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), as made applicable to the Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7041, approval as to the form of which shall not be unreasonably withheld.

6. **No Admission.** Each Party to this Agreement acknowledges and agrees: (a) that the facts and circumstances considered by the Parties in making this Agreement are in dispute; (b) that this Agreement is not intended to conclusively establish the truth of any matter, including the value of any property or the amount of any claim; and (c) each Party expressly denies any liability to the other Party and to third parties.

7. **General Mutual Releases.** Except for the rights and obligations created under this Agreement or AQH's confirmed plan of reorganization, each Party herein hereby releases the other Party and all persons, firms, associations, co-partners, co-venturers, subsidiaries, parents, affiliates, or corporations connected with each party, together with the agents, representatives, successors, assigns, heirs, personal representatives, and executors of such persons or entities, past, present, and future and each and all of them, from any and all claims, debts, liabilities, demands, obligations, costs, expenses, attorneys' fees, actions, and cause or causes of action of every nature, character, and description which the parties have held, now hold, or will hold, whether known or unknown, against each other arising up to the Effective Date. The Parties hereto acknowledge that this settlement includes all injuries and damages to person or property whatsoever, including economic injuries whether such injuries and damages whether known or unknown, foreseen or unforeseen, and whether they are patent, latent, or occur later.

8. **Civil Code Section 1542.** Except for the rights and obligations created under this Agreement, the parties hereto specifically waive the benefit of the provisions of Section 1542 of the Civil Code of the State of California which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The releases set forth above are in full and final settlement of any and all claims and causes of action, whether the action, causes of action, claims, liabilities, losses, or demands are currently known, unknown, foreseen or unforeseen, and the Parties expressly waive the benefits of Section 1542. In connection with the waiver and relinquishment, each of the Parties acknowledges that he, she, or it is aware that he, she, or it may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which he, she or it knows or believes to be true, with respect to the matters released. Nevertheless, it is the intention of each Party, through this Agreement, and with the advice of counsel, to fully, finally, and forever settle and release all such matters and all related claims which now exist, may exist, or may have existed between the Parties. In furtherance of this intention, the release given shall be and remain in effect as a full and complete release of these matters notwithstanding discovery or existence of any such additional or different claims or facts.

9. **Advice of Counsel.** The Parties acknowledge that they have read and considered this Agreement carefully, that it was negotiated with their express approval, that they have discussed it with their attorneys, that they have been given a reasonable period of time to consider this Agreement before signing, that they fully understand the extent and impact of its

3

provisions, and that they have executed it knowingly and voluntarily and without any coercion, undue influence, threat, or intimidation of any kind whatsoever.

10. <u>Entire Agreement.</u> No party or any officer, agent, employee, representative, or attorney of or for any party has made any statement or representation to any other party regarding any fact relied upon in entering into this Agreement, and no party relies upon any statement, representation, or promise of any other party or of any representative, agent, employee, officer, or attorney of any other party, in executing this Agreement, or making the settlement provided for herein, except as expressly stated in this Agreement. This Agreement constitutes the entire agreement between the parties.

11. <u>Restriction on Modifications.</u> It is expressly understood and agreed that this agreement may not be altered, amended, modified, or otherwise changed by authorized representatives of the parties hereto, unless by a signed writing specifying that it amends this Agreement. The parties hereto agree and acknowledge that they will make no claim at any time or place that this Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character. This Agreement may not be altered, amended, or extinguished, except by a writing executed by all of the Parties to this Agreement (or their successors-in-interest) that expressly refers to this Agreement. Any alteration, amendment, or extinguishment is subject to approval by the Bankruptcy Court.

12. <u>Authority to Sign.</u> The parties warrant that the persons signing below are authorized to sign the Agreement on their behalf and to bind them to the terms of the Agreement. The Buyer acknowledges that he has had an opportunity to consult with counsel regarding the terms of this Agreement.

13. <u>No Assignment.</u> Each Party warrants and represents to the other Party that: (a) the releasing Party is the sole and lawful owner of all rights, title, and interest in the claims and liens which he, she, or it is releasing; and (b) the releasing Party has not voluntarily, by operation of law or otherwise assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate, any of the claims or liens which he, she, or it is releasing.

14. <u>Indemnification.</u> The Parties shall indemnify, defend, and hold harmless the other Party from and against any claim, demand, damage, debt, liability, account, reckoning, obligation, cost, expense, lien, action, or cause of action (including payment of attorneys' fees and costs, expert witness fess, and copy, facsimile, and computer research fees incurred, whether or not mediation or litigation is commenced) arising out of the breach of any warranty or representation contained in Paragraphs 12 and 13 of this Agreement.

15. <u>Approval.</u> AQH shall take the necessary steps to obtain the Bankruptcy Court's approval of this Agreement, and Kilday shall cooperate with AQH in obtaining the Bankruptcy Court's approval of this Agreement. Bankruptcy Court approval shall be obtained within 60 calendar days of the full execution of this Agreement.

16. <u>Further Assurances.</u> The Parties shall execute all such documents and take all such actions as may be necessary and reasonable to effect the consummation of this Agreement

4

Case: 15-50553    Doc# 168-1    Filed: 01/27/16    Entered: 01/27/16 16:53:51    Page 10 of 13

and the transactions contemplated by this Agreement. Each Party agrees to take no action to hinder, delay, or frustrate the consummation of this Agreement and the transactions contemplated by this Agreement.

17. **Attorneys' Fees.** The parties agree to bear their own attorneys' fees and costs in connection with this Agreement. However, in the event of a breach of this Agreement by another party to this Agreement, the breaching party will pay reasonable attorneys' fees and costs of the non-breaching party incurred by reason of said breach. All disputes relating to the terms of this Agreement shall be resolved by the Court.

18. **Severability.** Should any provision of this Agreement be held in valid or illegal, such illegality shall not invalidate the whole of this Agreement, but, rather, the Agreement shall be construed as if it did not contain the illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

19. **Counterparts and Signatures.** The document may be executed in duplicate originals, each of which is equally admissible in evidence. The Agreement shall become effective when all parties have signed the same or separate copies thereof. A facsimile signature shall be deemed to have the same effect as an original, "wet" signature.

20. **Successors and Assigns.** This Agreement is binding upon and shall inure to the benefit of the parties hereto, their respective agents, employees, representatives, officers, divisions, directors, subsidiaries, affiliates, assigns, heirs and successors, including any successor trustee in the Bankruptcy Case.

21. **No Presumption Against Drafter.** For purposes of interpretation of the Agreement in the event of an ambiguity in any term or provision in the Agreement, neither party shall be deemed to have drafted this Agreement, but, instead, the Agreement shall be deemed to have been drafted by all parties hereto.

22. **Time.** Time is of the essence.

23. **Miscellaneous.** As used in this Agreement, the masculine, feminine, or neuter gender, or the singular or plural number, shall be deemed to include the other whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

24. **Choice of Law.** This Agreement shall be construed and enforced pursuant to the laws of the State of California.

25. **Choice of Forum; Personal Jurisdiction.** The Parties agree that any claim or dispute between them regarding the enforcement or interpretation of this Agreement must be resolved by the Court. The Parties expressly submit to the personal jurisdiction of the Bankruptcy Court for the purpose of litigation all such claims and disputes. In the event the

5

Case: 15-50553    Doc# 168-1    Filed: 01/27/16    Entered: 01/27/16 16:53:51    Page 11 of 13

Bankruptcy Court declines jurisdiction, the Parties agree that any such claim or dispute shall be resolved by the United States District Court for the Northern District of California. In the event the District Court declines jurisdiction, the Parties agree that any such claim or dispute shall be resolved by a court of competent jurisdiction located in the State of California.

In Witness Whereof, the Parties have approved and executed this Agreement on the dates beside their signatures below.

Dated: ~~December __, 2015~~ January 7, 2016

AQH, LLC, Debtor in Possession

_____
Christopher Cunningham
Responsible Individual

Dated: December __, 2015

_____
CHRISTOPHER KILDAY

APPROVED AS TO FORM AND CONTENT:

MACDONALD | FERNANDEZ LLP

_____
Matthew J. Olson,
Attorneys for Debtor in Possession
AQH, LLC

ASPELIN & BRIDGMAN LLP

_____
James C. Bridgman,
Attorneys for Creditor,
CHRISTOPHER KILDAY

Bankruptcy Court declines jurisdiction, the Parties agree that any such claim or dispute shall be resolved by the United States District Court for the Northern District of California. In the event the District Court declines jurisdiction, the Parties agree that any such claim or dispute shall be resolved by a court of competent jurisdiction located in the State of California.

In Witness Whereof, the Parties have approved and executed this Agreement on the dates beside their signatures below.

Dated: ~~December~~ __, 2015
January 6, 2016

AQH, LLC, Debtor in Possession

_____
Christopher Cunningham
Responsible Individual

Dated: December __, 2015
January 6th, 2016

_____
CHRISTOPHER KILDAY

APPROVED AS TO FORM AND CONTENT:

MACDONALD | FERNANDEZ LLP

_____
Matthew J. Olson,
Attorneys for Debtor in Possession
AQH, LLC

ASPELIN & BRIDGMAN LLP

_____
James C. Bridgman,
Attorneys for Creditor,
CHRISTOPHER KILDAY

6