MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
ROXANNE BAHADURJI (SBN 290117)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor in Possession,
AQH, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

AQH, LLC,

           Debtor.

Case No. 15-50553-SLJ-11

Chapter 11

**STATUS CONFERENCE STATEMENT**

Date: February 4, 2016
Time: 1:30 p.m.
Place: Courtroom 3099
       280 South First Street
       San Jose, California

Hon. Stephen L. Johnson

COME NOW AQH, LLC, the Debtor-in-Possession herein, and submits this Status Conference Statement, and respectfully represents as follows:

1. The within case was commenced by filing a voluntary chapter 11 petition on an emergency basis on February 19, 2015. A trustee has not been appointed and the Debtor is in possession of the estate.

2. This case is a small business case pursuant to Bankruptcy Code Section 101(51D).

3. The Court extended the last date by which the Debtor is to file its schedules, statement of financial affairs, and other related documents from March 5, 2015, to 12:00 p.m. on March 6, 2015. The Debtor filed its schedules on March 6, 2015. Amendments to the schedules and an amended petition were filed on March 23, 2015.

1

*Background*

4. The Debtor provides blockchain security for the Bitcoin global network. The within case was precipitated by a short-term cash flow shortage caused by delays in obtaining approvals to supply power to the Debtor's expanded facilities located at 5300 Claus Road, Buildings 5, 21, and 49, in Modesto, California.

5. Bitcoin is the world's first widespread digital currency. For the convenience of the Court and parties in interest, a treatise on Bitcoin is attached as Exhibit "A" to the Fernandez Decl. offered in support of the Debtor's motion to use cash collateral. *See* Dckt. No. 10-1. Bitcoin entails peer-to-peer transfers of value permanently recorded on a global public ledger of all transactions (called the "Blockchain") to prevent double-spending. The Debtor reserves the right to contend that Bitcoin is a currency, personal property or otherwise.

6. Unlike *fiat* currencies, new Bitcoin is not issued by governments, central banks, commercial banks, or companies. Instead, Bitcoin is issued to parties who contribute computer power to secure and maintain the extensive ledger (the Blockchain) described above. Specifically, the ledger is maintained and transactions are verified by using a public-key cryptography system (namely SHA-256) in which each Bitcoin account is assigned two keys—one private and one public. In a Bitcoin transaction, the payor sends the public key to the payee and "signs" it with his or her private key, which transaction is recorded, time-stamped, and added to a "block" of transactions in the Blockchain. Verifying vast numbers of such encrypted transactions by checking them against the Blockchain requires enormous computing power. Accordingly, transaction processors dedicate their highly-specialized computer servers to such work and receive newly-issued Bitcoin and small transaction fees in return.

7. In addition to the ordinary factors present in any business, the Debtor's income depends upon two external factors: (1) the cumulative processing speed of active Bitcoin transaction processors worldwide (the average global "hashrate," which is estimated at about 435 Petahashes/second as of October 28, 2015); and (2) the U.S. Dollar value of Bitcoin in the marketplace (one Bitcoin could be sold for approximately $381.87 as of January 28, 2016, at 2:40 p.m. PST). Like commodities, the value of Bitcoin can be volatile, with the value of one

2

Bitcoin ranging between approximately $461 and $362 in the past 30 days.

### *Initial Debtor Interview and Section 341(a) Meeting of Creditors*

8. The Debtor's Initial Debtor Interview was held on March 19, 2015. The Debtor's management appeared at the interview.

9. The Debtor's 341(a) Meeting of Creditors was held on March 25, 2015, the Debtor's responsible individual and management appeared, and the meeting was concluded.

### *Debtor's First Day Motions*

10. On March 4, 2015, the Court held interim hearings on the Motion for the Authority to Use Cash Collateral (Docket No. 10); Motion for Order Compelling Riverbank Local Redevelopment Agency to Provide Electricity Upon Payment of Adequate Assurance Deposit (Docket No. 22); Motion for Authority to Pay Pre-Petition Wages and Taxes (Docket No. 11); and Motion to Approve Loan to Pay Utility Deposit and Wages and Supplemental Motion to Authorize Use of Cash Collateral (Docket No. 21) (collectively "First Day Motions").

11. Cash Collateral: The Debtor contends that there is no cash collateral, but sought authority to use cash collateral in an abundance of caution. The Court entered its most recent order approving interim use of cash collateral on May 7, 2015, authoring use of cash collateral through July 31, 2015. The Debtor obtained consent by stipulation to use cash collateral through December 31, 2015.

12. Employees/Independent Contractors: As detailed in the Motion for Authority to Pay Pre-Petition Wages and Taxes, the Debtor has three employees and has entered into independent contractor agreements with seven individuals. On April 2, 2015, the Court entered an order approving the payment of pre-petition wages on an interim basis. The Debtor has since moved from using independent contractors toward hiring employees either directly or through staffing agencies.

13. Utilities: After extensive hearings, the Court ordered the Riverbank Local Redevelopment Authority (the "Riverbank LRA") to promptly connect the Debtor's electricity upon completion of certain safety checks and the payment of an adequate assurance deposit, unless the United States Army timely objected to the electrical improvements requested by the Debtor. The electricity safety checks and final electrical connection work was completed on March 31, 2015.

3

The Debtor provided the adequate assurance deposit on March 31, 2015, and the Riverbank LRA connected the Debtor's electricity on March 31, 2015. The Court entered its final order the Debtor's utility motion on April 17, 2015.

### *Debtor's Post-Petition Operations*

14. With the electricity connected to its new space, the Debtor is connecting additional servers to its network, adding additional capacity to its operations. The Debtor's efforts have been hampered by performance problems with the servers purchased from Emergent Systems Exchange, requiring the Debtor to invest substantial time repairing the servers. The servers are in many cases underperforming the benchmarks promised by Emergent Systems Exchange or may not be operable at all. The Debtor is attempted to work with Emergent Systems to obtain technical support to resolve technical problems with the servers, but those efforts were unsuccessful. Because these servers are underperforming and ultimately failed, the Debtor needs to purchase new servers to replace the failing servers so it may meet its long-term revenue projections.

15. As the Court knows from recent hearings, the Debtor has concluded an agreement with Beijing Canaan Creative Information Technology Co., Ltd. ("Avalon") for the purchase of Avalon 6 Bitcoin Servers on credit terms and for authority to resell the same servers and other Avalon products. The Court has approved the agreement on an interim basis (except for those provisions related to server hosting) pending a final hearing. Implementation of the agreement with Avalon will permit the Debtor to stabilize its operations and generate sufficient cash to propose a feasible plan of reorganization.

### *Professionals*

16. The Court entered an order approving the employment of Macdonald Fernandez LLP as the Debtor's general bankruptcy counsel on April 10, 2015.

17. The Court entered an order approving the employment of Michael Mengarelli of Kelly Litigation Group, Inc. to serve as the Debtor's special counsel related to litigation with the Riverbank LRA on April 16, 2015.

18. The Court entered an order approving the employment of Baudler and Flanders, CPAs to serve as the Debtor's accountant on April 21, 2015.

19. On June 19, 2015, the Court entered an order approving the employment of DBMAC, Inc. as consultant for the Debtor's relationships with certain local governmental entities.

20. The Debtor had anticipated employing special counsel to provide advice and counsel regarding certain employment law matters, but was able to resolve those matters without the need of special counsel.

### *Claim Objections*

21. The deadline for filing proofs of claim in the within bankruptcy case was June 23, 2015.

22. The Debtor's review of claims is ongoing, and the Debtor has not yet determined whether to bring objections to proofs of claim before or after the filing of its combined disclosure statement and chapter 11 plan.

23. After the filing of the petition, Fortis Advisors LLC, as Collateral Agent for the Ratable Benefit of the Lenders Under Certain Transaction Documents as Defined in the Cointerra, Inc. Security and Pledge Agreement and Other Applicable Transaction Documents, and Future Electronics Corporation asserted that they held perfected security interests in the Cointerra servers the Debtor purchased from Emergent Systems Exchange. The Debtor, Fortis, Future Electronics, and Emergent Systems Exchange entered into multi-lateral negotiations regarding the competing claims and entered into a settlement agreement related to allowance of their claims. The Court approved the agreement by order entered on January 19, 2016. *See* Doc. No. 167.

### *Disclosure Statement and Plan*

24. The Debtor is a small business debtor within the meaning of Bankruptcy Code Section 101(51D), and the Debtor elected to use a combined form of disclosure statement and chapter 11 plan as authorized provided in Bankruptcy Code Section 1125(f). The Debtor timely filed its proposed combined plan and disclosure statement, and filed a subsequent amendment. A hearing on approval of the disclosures contained in the proposed combined plan and disclosure statement is set concurrently with this status conference. The Debtor has been advised that at least one creditor anticipates filing objections to approval the disclosure statement.

///

### *Debtor-in-Possession Financing*

25. On March 13, 2015, the Court entered an order authorizing the Debtor to borrow up to $80,000 from certain family members of Sean Walsh, CEO and Managing Member of the Debtor, (the "Lenders") to pay a portion of the adequate assurance deposit to the Riverbank LRA and certain post-petition wages. The Lenders were granted junior liens on all of the Debtor's assets and the claim for repayment of the loan was determined to be an administrative expense pursuant to Bankruptcy Code § 364(c) but junior and subject to the allowed claims of any Chapter 7 trustee and his or her professionals.

26. The Debtor entered in to an agreement with Avalon for the purchase of Avalon 6 Bitcoin Servers on credit terms and for authority to resell the same servers and other Avalon products. The Court has approved the agreement (except for those provisions related to server hosting) and the Debtor has been performing under the agreement. The Debtor does not currently expect to seek additional Debtor in Possession financing.

### *Assumption of Unexpired Lease*

27. On May 14, 2015, the Debtor filed its motion, pursuant to Bankruptcy Code § 365(d)(4), to extend the time to assume or reject unexpired leases of non-residential real property, and the Court granted the motion by order entered on June 19, 2015. Pursuant to a subsequent stipulation between the Debtor and the Riverbank LRA, the deadline to assume or reject that certain Lease Agreement with the Riverbank LRA for the facilities described above is March 15, 2016. The Debtor intends to assume that certain Lease Agreement with the Riverbank LRA for the facilities described above, and the plan proposes to cure all monetary defaults.

### *Anticipated and Pending Litigation*

28. The Debtor is evaluating and anticipates bringing the adversary proceedings and motions described below:

    a. The Debtor's review of Faris's claims is ongoing, and the Debtor reserves the right to bring claims and counterclaims against Faris, including claims for violations of the automatic stay arising from Faris's attempts to collect his pre-petition debt post-petition. Faris has complied with the automatic stay since retaining counsel. The Debtor has determined that Faris

6

holds a properly perfected lien and does not anticipate filing any action challenging Faris's lien.

    b.  The Debtor is evaluating claims it may hold against the Riverbank LRA, including claims for willful violations of the automatic stay, breach of contract, breach of the covenant of good faith and fair dealing, intentional interference with prospective economic advantage, and related claims. The Debtor may seek sanctions, including sanctions to cover the cost of addressing the Riverbank LRA's refusal to provide electricity without full payment of its pre-petition claim.

    c.  The Debtor and Christopher Kilday (an unsecured creditor) recently entered into a settlement agreement resolving the Debtor's complaint against him for violations of the automatic stay (*see AQH, LLC v. Kilday*, A.P. No. 15-05046-SLJ) and a potential objection to his claim. A motion to approve the settlement has been filed and the Debtor anticipates no objections to approval of the settlement.

    WHEREFORE, the Debtor prays that the Court:

    1.  Enter an order continuing the status conference to a date in April 2016; and

    2.  For such further relief as is appropriate in the premise.

DATED: January 28, 2016        MACDONALD | FERNANDEZ LLP

                By: /s/ Matthew J. Olson
                   Matthew J. Olson
                   Attorneys for Debtor in Possession,
                   AQH, LLC