MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
ROXANNE BAHADURJI (SBN 290117)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor in Possession,
AQH, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

AQH, LLC,

          Debtor.

Case No. 15-50553-SLJ-11

Chapter 11

**STATUS CONFERENCE STATEMENT**

Date: March 3, 2016
Time: 1:30 p.m.
Place: Courtroom 3099
       280 South First Street
       San Jose, California

Hon. Stephen L. Johnson

COME NOW AQH, LLC, the Debtor-in-Possession herein, and submits this Status Conference Statement, and respectfully represents as follows:

1. The within case was commenced by filing a voluntary chapter 11 petition on an emergency basis on February 19, 2015. A trustee has not been appointed and the Debtor is in possession of the estate.

**<u>Background</u>**

2. The Debtor provides blockchain security for the Bitcoin global network. The within case was precipitated by a short-term cash flow shortage caused by delays in obtaining approvals to supply power to the Debtor's expanded facilities located at 5300 Claus Road, Buildings 5, 21, and 49, in Modesto, California.

3. Bitcoin is the world's first widespread digital currency. For the convenience of the Court and parties in interest, a treatise on Bitcoin is attached as Exhibit "A" to the Fernandez Decl. offered in support of the Debtor's motion to use cash collateral. *See* Dckt. No. 10-1. Bitcoin entails peer-to-peer transfers of value permanently recorded on a global public ledger of all transactions (called the "<u>Blockchain</u>") to prevent double-spending. The Debtor reserves the right to contend that Bitcoin is a currency, personal property or otherwise.

4. Unlike *fiat* currencies, new Bitcoin is not issued by governments, central banks, commercial banks, or companies. Instead, Bitcoin is issued to parties who contribute computer power to secure and maintain the extensive ledger (the Blockchain) described above. Specifically, the ledger is maintained and transactions are verified by using a public-key cryptography system (namely SHA-256) in which each Bitcoin account is assigned two keys—one private and one public. In a Bitcoin transaction, the payor sends the public key to the payee and "signs" it with his or her private key, which transaction is recorded, time-stamped, and added to a "block" of transactions in the Blockchain. Verifying vast numbers of such encrypted transactions by checking them against the Blockchain requires enormous computing power. Accordingly, transaction processors dedicate their highly-specialized computer servers to such work and receive newly-issued Bitcoin and small transaction fees in return.

5. In addition to the ordinary factors present in any business, the Debtor's income depends upon two external factors: (1) the cumulative processing speed of global Blockchain security and construction servers (the average global "hashrate," which is estimated at about 435 Petahashes/second as of October 28, 2015); and (2) the U.S. Dollar value of Bitcoin in the marketplace (one Bitcoin could be sold for approximately $423.67 as of February 25, 2016, at 3:50 p.m. PST). Like commodities, the value of Bitcoin can be volatile, with the value of one Bitcoin ranging between approximately $367 and $440 in the past 30 days.

### *Status of Debtor's Operations*

6. With the electricity connected to its new space, the Debtor is connecting additional servers to its network, adding additional capacity to its operations. The Debtor's efforts have been hampered by performance problems with the servers purchased from Emergent Systems Exchange,

requiring the Debtor to invest substantial time repairing the servers. The servers underperformed the benchmarks promised by Emergent Systems Exchange or did not operate at all. The Debtor attempted to work with Emergent Systems to obtain technical support to resolve technical problems with the servers, but those efforts were unsuccessful. Because these servers were underperforming and ultimately failed, the Debtor needed to purchase new servers to replace the failing servers so it may meet its long-term revenue projections.

7. As the Court knows from recent hearings, the Debtor has concluded an agreement with Beijing Canaan Creative Information Technology Co., Ltd. ("Avalon") for the purchase of Avalon 6 Bitcoin Servers on credit terms and for authority to resell the same servers and other Avalon products. The Court approved the agreement on an interim basis (except for those provisions related to server hosting) and thereafter on a final basis (except for those provisions related to server hosting). Implementation of the agreement with Avalon permitted the Debtor to stabilize its operations.

8. As noted at the last status conference, certain conditions in the wider Bitcoin market required the Debtor to reexamine its financial projections. These include greater than expected fluctuations in the average price of Bitcoins on the world market. Additionally, during the month of January 2016 there was an explosion in the size of the global network providing security for the Blockchain, which unexpectedly reduced the Debtor's relative share of the worldwide Bitcoin revenue. While the size of the global network providing security for the Blockchain has contracted during February 2016, the volatility in the number of servers providing security for the Blockchain and hence sharing in the revenues for newly issued Bitcoins required the Debtor to further examine its projections to ensure feasibility of its plan of reorganization.

9. Additionally, the Debtor obtained permission from the Riverbank Local Redevelopment Authority (the "Riverbank LRA") to energize the next phase, Phase 4b, of its datacenter at the facility in Riverbank. Pursuant to its disclosures to the Riverbank LRA, this latest phase brought the total capacity of the Riverbank datacenter to 5 megawatts. Following energization, despite knowing full well the capabilities of the new phase and prior commitments made to the Debtor, the Riverbank LRA instructed the Debtor that it could not draw the full 5

megawatts of electricity. Specifically, the Debtor has been able to draw an approximate total of 3.7-4.0 megawatts of electricity. The reduction apparently stems from delays the Riverbank LRA has suffered over the past 12 months in securing additional electricity from the Hetch Hetchy power station. The reduction in total power available to the Debtor undercuts its financial projections, which are based upon using the Riverbank datacenter at full capacity.

### *Disclosure Statement and Plan*

10. The Debtor elected to use a combined form of disclosure statement and chapter 11 plan. The Debtor timely filed its proposed combined plan and disclosure statement, and filed a subsequent amendment. The aforementioned circumstances in relation to the Debtor's operations in January and February 2016 forced the Debtor to reevaluate its plan and its projections to ensure it will be able to meet the financial commitments continued in the plan. While the Debtor anticipated filing an amended plan by February 12, 2016, the re-evaluation has required additional time. The Debtor expects to file the amended plan in advance of the Status Conference and will set a hearing on approval of the disclosures in the disclosure statement for April 7, 2016.

### *Assumption of Unexpired Lease*

11. On May 14, 2015, the Debtor filed its motion, pursuant to Bankruptcy Code § 365(d)(4), to extend the time to assume or reject unexpired leases of non-residential real property, and the Court granted the motion by order entered on June 19, 2015. Pursuant to a subsequent stipulation between the Debtor and the Riverbank LRA, the deadline to assume or reject that certain Lease Agreement with the Riverbank LRA for the facilities described above is March 15, 2016. The parties have agreed in principal to a further 90-day extension of time to assume the lease and a draft stipulation has been circulated by the Debtor. The Debtor intends to assume that certain Lease Agreement with the Riverbank LRA for the facilities described above and to cure all valid monetary defaults.

### *Anticipated and Pending Litigation*

12. The Debtor is evaluating and anticipates bringing the adversary proceedings and motions described below:

    a. The Debtor's review of Faris's claims is ongoing, and the Debtor reserves the

right to bring claims and counterclaims against Faris, including claims for violations of the automatic stay arising from Faris's attempts to collect his pre-petition debt post-petition. Faris has complied with the automatic stay since retaining counsel. The Debtor has determined that Faris holds a properly perfected lien and does not anticipate filing any action challenging Faris's lien.

   b. The Debtor is evaluating claims it may hold against the Riverbank LRA, including claims for willful violations of the automatic stay, breach of contract, breach of the covenant of good faith and fair dealing, intentional interference with prospective economic advantage, and related claims. The Debtor may seek sanctions, including sanctions to cover the cost of addressing the Riverbank LRA's refusal to provide electricity without full payment of its pre-petition claim.

   c. The Debtor and Christopher Kilday (an unsecured creditor) recently entered into a settlement agreement resolving the Debtor's complaint against him for violations of the automatic stay (*see AQH, LLC v. Kilday*, A.P. No. 15-05046-SLJ) and a potential objection to his claim. An order approving the settlement was entered on February 25, 2016.

 WHEREFORE, the Debtor prays that the Court:

 1. Enter an order continuing the status conference to a date in April 2016; and

 2. For such further relief as is appropriate in the premise.

DATED: January 28, 2016        MACDONALD | FERNANDEZ LLP

                By: /s/ Matthew J. Olson
                  Matthew J. Olson
                  Attorneys for Debtor in Possession,
                  AQH, LLC