S. Craig Hunter – SB# 125247
Karl A. Schweikert – SB# 291497
CHURCHWELL WHITE LLP
1414 K Street, 3rd Floor
Sacramento, CA 95814
(916) 468-0950 Phone
(916) 468-0951 Fax

Attorneys for Creditor
RIVERBANK LOCAL REDEVELOPMENT AUTHORITY

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>AQH, LLC,<br><br>        Debtor. | Case No.: 15-50553-11-SLJ<br><br>**RIVERBANK LOCAL REDEVELOPMENT AGENCY'S STATEMENT IN RESPONSE TO AQH, LLC's STATUS CONFERENCE STATEMENT**<br><br>Date:    March 3, 2016<br>Time:   1:30 p.m.<br>Place:  280 South First Street, Room 3099<br>           San Jose, California<br><br>Honorable Stephen L. Johnson |

## I. INTRODUCTION

Creditor Riverbank Local Redevelopment Authority ("RLRA") has generally refrained from responding to allegations made by Debtor AQH, LLC ("Debtor") in its non-adversarial filings. However, in light of the most recent Status Conference Statement filed by Debtor, RLRA seeks to clarify the factual background behind the actions alleged by Debtor. Also, RLRA requests the Court compel Debtor to comply with Bankruptcy Local Rule 2015(b) by filing its required Monthly Operating Reports for December 2015 and January 2016.

## II. LEGAL STANDARD

Federal Rules of Bankruptcy Procedure, rule 2015(a)(6), obligates Debtor to file by the 21st of each month the report required by Bankruptcy Code section 308. Bankruptcy Local Rule

Statement in Response to AQH, LLC's Status Conference Statement

2015-2(a)(1) confirms this reporting requirement applies to parties like Debtor who is a debtor-in-possession in a Chapter 11 case.

## III. DISCUSSION

### A. RLRA Seeks To Clarify Its Actions Regarding Additional Electrical Power

Debtor alleges RLRA acted in bad faith with respect to the amount of electrical power available for Phase 4b of Debtor's datacenter. RLRA seeks to clarify its actions which Debtor failed accurately described within paragraph 9 of the Status Conference Statement. Status Conference Statement, Docket # 177, 3:23-4:5.

RLRA is a master lessee of a former U.S. Army facility. The property will eventually be transferred to RLRA, but at this time, remains under U.S. Army control. Under the contract with the U.S. Army, RLRA receives its power from the Hetch Hetchy Water and Power System ("Hetch Hetchy"), which is controlled by the City of San Francisco. All power used on site must pass through RLRA's site substation.

Pursuant to the arrangement between the U.S. Army and Hetch Hetchy, RLRA receives an invoice for all electricity used at the property. In turn, RLRA pays the invoice and then bills its tenants for their pro rata share of the invoice.

**Electricity Availability**

On March 12, 2014, RLRA and Debtor entered into a lease. Section 1.16 placed Debtor on notice of RLRA's inability to provide Debtor more than 3600 amps (equivalent to 3 mega volt amps ("MVA")) of power without further infrastructure upgrades. Since RLRA does not own the property, nor does it control the supplier, increases to electrical services require the approval of the U.S. Army and a further agreement by Hetch Hetchy to provide the additional electricity.

In or about May 2014, RLRA received a quote to upgrade its infrastructure to increase the electrical supply to the property. In July of 2014, it paid the initial deposit for materials necessary for the upgrade. On December 11, 2014, RLRA and Debtor signed a lease amendment providing for the additional data center space which would require an increased amount of electricity. In the lease amendment, RLRA did not guarantee additional electricity capacity for Debtor. However, it continued to work in good faith towards supplying more electricity to the

property. By May of 2015, the additional transformer necessary for the infrastructure upgrade had arrived at the property. However, RLRA still needed authorization from Hetch Hetchy and the U.S. Army for installation and activation of the transformer.

On May 20, 2015, Debtor's attorney sent a formal request to RLRA for additional power, asserting, without support, that RLRA had committed to an additional 2 MVA for the expansion space (Phases 4a & 4b) called for in the lease amendment signed in December of 2014. Debtor also sought a commitment for an additional 5 MVA of power for the existing installation (Phases 1 thru 3) and an additional 3 MVA if they decided to lease additional space in Building 1.

On May 26, 2015, RLRA informed Debtor it could not guarantee Debtor that it would receive any additional power. RLRA explained its ability to provide additional was contingent upon the negotiations between Hetch Hetchy as the supplier and the U.S. Army as the owner of the property. At the time, RLRA noted that other tenants also sought additional power and a portion of the additional power would need to be allocated to the other tenants. However, RLRA did indicate it would likely be able to allocate an additional 2 MVA for the proposed buildout (Phase 4b) once the additional supply of power became available.

During the summer of 2015, Hetch Hetchy informed RLRA that it believed [correctly] that certain undocumented changes had been made to the RLRA substation by the U.S. Army that had not been communicated to or approved by Hetch Hetchy. As a prerequisite to providing additional electrical power, Hetch Hetchy required RLRA to recreate and provide the documentation for the prior changes. Over the summer, RLRA's high-voltage contractor performed the research work necessary to document the changes. In September of 2015, RLRA installed the additional transformer, but it failed RLRA's initial testing and required additional materials and work. On October 2, 2015, RLRA informed Debtor of its belief the additional work would be completed and additional power available around November 15, 2015. By November 16, 2015, repairs to the additional transformer were complete and the additional transformer had passed RLRA's inspection. RLRA requested Hetch Hetchy schedule final testing (a.k.a. witness testing) of the transformer. On November 19, 2015, Hetch Hetchy scheduled the testing for the end of January, 2016. RLRA followed up with Hetch Hetchy on January 8, 18, and 26, 2016, to

determine the necessary materials for final testing. On January 27, 2016, Hetch Hetchy reschedule the testing to the first week in March of 2016. RLRA followed up on January 28, 2016, again requesting detailed materials necessary to ensure a successful evaluation of the transformer. RLRA followed up again on February 16. Hetch Hetchy responded on February 25 with the list of materials necessary and also rescheduled the testing to March 7 & 8.

At this time, the final onsite inspection by Hetch Hetchy is scheduled for next week. However, this date is the third date provided by Hetch Hetchy and could be rescheduled by Hetch Hetchy. Presuming Hetch Hetchy approves the transformer, RLRA will schedule the earliest available connection date. If Hetch Hetchy disapproves any portion of infrastructure improvements, further delays will ensue.

**Phase 4b Improvement History**

Concurrently with RLRA's pursuit of additional power for the site, RLRA has assisted Debtor with connecting its necessary electrical infrastructure that allows Debtor to use the additional electricity when it becomes available. Debtor and RLRA participated in the plan review process until July 30, 2015, at which time three (3) remaining items[1] to complete the plan check remained incomplete. On October 2, 2015, Debtor's first communication regarding the plan check process since July 29, 2015, Debtor inquired about the open plan check issues. RLRA's plan check provider responded with the open items from July. About this time, Debtor also filed its motion with the Court requesting approval for an $800,000 loan for additional servers. RLRA, knowing the impacted nature of the high-voltage contractor's schedule, immediately requested the first available 3-day safety check and connection date, December 7-9, 2015.

In light of the Court's approval of the loan for new servers, Debtor and RLRA's agents (plan check provider and facilities management provider) worked closely to manage the connection schedule. On November 16, 2015, Debtor promises to have the final two tasks complete by December 1, 2015 for the December 7, 2015 connection date. Unfortunately, Debtor provided testing reports from Phase 4a instead of Phase 4b and the connection date had to be

---

[1] 1) Torque testing for anchor bolts; 2) Transformer testing; & 3) Secondary feeders inspection and test report.

Statement in Response to AQH, LLC's Status Conference Statement

rescheduled for January 27, 2016. On January 27, 2016, Debtor's substation initially failed safety checks but was ultimately repaired and energized on January 29, 2016.

**The Blackout**

With power connected to Phase 4b, Debtor increased its energy demands to such an extent the safety relay controlling electricity serving Debtor's and adjoining tenant's facilities flipped off, cutting power to Debtor's and adjoining tenant's facilities due to tenants as a whole drawing too much power. At that time, RLRA requested Debtor limit its electricity usage to 4 MVA, an amount 33% above the amount specifically provided by Debtor's lease. Additionally, RLRA is willing to provide additional power to Debtor based on availability, but remains adamant that such power must be allocated among all tenants and will not guarantee an amount exceeding that stated in Debtor's lease.

**B. RLRA Contests Debtor's Allegation It Violated The Automatic Stay**

In light of Debtor's statements in paragraph 9 and 12.b. of the Status Conference Statement, RLRA must dispute Debtor's allegations. Debtor insinuates it possess a claim against RLRA arising from the electrical power supplied to Debtor.

Debtor's electricity supply remains at or above pre-petition amounts. Unlike Debtor's claim, RLRA did not turn off or decrease Debtor's electricity supply. Debtor sought, but had not yet received as of the time of filing, additional power for a buildout of Phase 4a of its leased space. RLRA must adhere to the terms of the lease with Debtor. In order for RLRA to provide debtor with more electrical power, the lease required Debtor to first complete the tenant improvements necessary to receive the additional electricity and approval for those improvements. As such, Debtor's additional power request could not be granted prior to Debtor's compliance with the tenant improvement and permit requirements of lease.

The Court has already addressed this dispute. On March 9, 2015, Debtor and RLRA presented their issues and concerns to the Court. This Court ordered Debtor to comply with the plan and safety requirements. After RLRA received its adequate assurance payment and Debtor had passed the required safety checks of its tenant improvements, the Court ordered RLRA to provide the additional electricity for Debtor's additional leased space. This amounted to the

position taken by RLRA at the first hearing. The tenant improvements were safely connected on March 31, 2015 to provide the additional power.

Debtor's allegations of breach of contract, breach of the covenant of good faith and fair dealing, intentional interference with prospective economic advantage, and any assertions of sanctions to cover the cost of complying with the safety requirements are moot because this Court has already ruled in RLRA's favor by enforcing the safety requirements. Thus, any delay in providing additional power at the time of its bankruptcy filing lies squarely upon Debtor for its failure to comply with the safety and tenant improvement requirements contained within the lease.

**C. RLRA Objects To AQH's Failure To Submit Monthly Operating Reports**

Under Federal Rules of Bankruptcy Procedure, rule 2015, as modified by Bankruptcy Local Rule 2015(b), Debtor must file its monthly operating report by the 21th day of the month following the reporting month. Debtor's December Monthly Operating Report was due on January 21, 2015. At the February 4, 2016 status conference, Debtor asserted medical issues were the source of the delay, but that it would file one shortly. Debtor's Status Conference Statement, filed with this Court on February 25, 2016, Docket # 177, makes no reference to the missing Monthly Operating Report, now over one month overdue.

Debtor's January Monthly Operating Report was due on February 21, 2016. The Status Conference Statement, filed four (4) days later, makes no mention of the missing Report. Debtor provides no excuse for its failure to file the Reports.

As of the filing of this document, March 2, 2016, Debtor has not filed either Report, leaving the Reports 41 and 10 calendar days overdue. RLRA respectfully requests this Court order Debtor to show cause as to why it has not produced the required Reports.

//
//
//
//
//

## IV. CONCLUSION

RLRA has contested the factual statements contained within Debtor's most recent Status Conference Statement believing the document omits significant facts underlying the alleged actions. RLRA requests that the Court compel Debtor to file its mandated Monthly Operating Reports for December 2015 and January 2016.

DATED: March 2, 2016                                    CHURCHWELL WHITE LLP


                                                        ____/s/Karl A. Schweikert_____
                                                        KARL A. SCHWEIKERT
                                                        Attorneys for Riverbank Local
                                                        Redevelopment Authority