MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor in Possession,
AQH, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>AQH, LLC,<br><br>               Debtor. | Case No. 15-50553-SLJ-11<br><br>Chapter 11<br><br>**DEBTOR'S OPPOSITION TO THE UNITED STATES TRUSTEE'S MOTION TO DISMISS OR CONVERT CASE UNDER 11 U.S.C. § 1112(b)**<br><br>Date:  May 12, 2016<br>Time:  2:00 p.m.<br>Place:  280 S. First Street, Courtroom 3099<br>          San Jose, California<br><br>Hon. Stephen L. Johnson |

### **INTRODUCTION**

Based on a harsh reading of 11 U.S.C. § 1112 and an incomplete understanding of the facts in this case, the United States Trustee seeks the dismissal of this Chapter 11 case. The Court should deny the motion. The record demonstrates that there is no continuing diminution in the value of the estate because the Debtor's post-petition payables are one-third of what they were when the motion was filed and the debt was incurred to purchase new equipment which the Debtor is currently using in its facility—increasing the value of total assets owned by the Debtor. Additionally, while the Debtor may not be able to propose a plan of its own, nothing in the Bankruptcy Code prevents a creditor from offering and confirming a plan, and the circumstances of this case counsel against the draconian resolution suggested by the U.S. Trustee.

# FACTS

The within case was commenced by filing a voluntary chapter 11 petition on February 19, 2015. A trustee has not been appointed and the Debtor is in possession of its estate. Debtor timely filed a combined plan of reorganization and disclosure statement on November 25, 2015. Doc. No. 150. Following negotiations with certain creditors regarding the treatment of their claims and the disclosures in the combined plan and disclosure statement, the Debtor filed an amended plan and disclosure statement on December 24, 2015. Doc. No. 159. On January 7, 2016, the Court held a hearing on the plan and disclosure statement and continued the hearing to February 4, 2016.

During the interceding period, certain external forces required the Debtor to reevaluate the proposed plan, and the Court asked the Debtor to file an amended plan by February 12, 2016, for a hearing on March 3, 2016, or if the plan was filed after February 12, 2016, to set it for hearing on April 7, 2016. Doc. No. 184. After performing additional analysis, Debtor determined that proceeding with the plan as drafted was not feasible and that a sale of its core business as a going concern would likely generate the greatest return for creditors and the estate.

Debtor prepared a plan providing for such a process, and was prepared to file it on March 3, 2016. *Id.* At the status conference scheduled on that date the Court counseled against filing the plan, stating: "Stop thinking about a plan, get your business plan together, we'll put it on for a status conference and decide what to do with the case in a month or so." *Id.* at 6:49–7:05. Debtor followed that advice and retained a financial advisor to evaluate options and to develop an orderly process for the sale of the business as a going concern. *See* Motion to Approve Appointment of Financial Advisor, Doc. No. 197.

Debtor continues to operate, as is generating a profit on an accrual basis. For instance, the operating report for March 2016 reflects that during the first quarter of 2016, Debtor's operations generated net income of $256,863.95. *See* Doc. No. 201 at 40. Additionally, Debtor's unpaid bills as of March 31, 2016, were $393,143.81, of which $286,750 was owed to Beijing Canaan Creative Tech ("Avalon"). As reflected in the status conference statement filed on March 31, 2016, (shortly before the U.S. Trustee filed her motion) Debtor had made significant progress in reducing the outstanding payment in March 2016 and prior operating reports had erroneously reported higher than actual numbers because

of an accounting error. While there is an outstanding balance to Avalon as of March 31, 2016, Debtor understands that Avalon considers the account in good standing. Debtor is currently using the servers purchased from Avalon in its datacenter, the value of which exceeds the outstanding Avalon claim and has increased the total value of Debtor's assets. As the March 2016 monthly operating report reflects, Debtor is meeting its post-petition obligations on a going forward basis.

## ANALYSIS

Questions of conversion or dismissal must be dealt with a thorough, two-step analysis: "[f]irst, it must be determined that there is 'cause' to act[;] [s]econd, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'" *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (B.A.P. 9th Cir. 2006) (citing *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 877 (B.A.P. 9th Cir. 2002)). Hence, the moving party bears the burden of establishing cause for the Court to act before the Court is required to choose between conversion or dismissal. Even if cause exists to dismiss, the Court may decline to dismiss the case if unusual circumstances exist and (i) there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time, and (ii) the cause for seeking dismissal can be remedied (other than a substantial or continuing loss). 11 U.S.C. § 1112(b)(2).

The Court should deny the U.S. Trustee's motion in this case because (1) the record does not establish a substantial or continuing loss to the estate and (2) assuming, without conceding, that Debtor cannot file or confirm a plan, the ability of a creditor to confirm a plan within a reasonable time, coupled with the Debtor's efforts to sell its business as a going concern, meet the requirements of § 1112(b)(2).

I. BECAUSE THE DEBTOR IS MEETING ITS POST-PETITION OBLIGATIONS AND IS OPERATING PROFITABLY ON AN ACCRUAL BASIS, THE U.S. TRUSTEE HAS NOT DEMONSTRATED A SUBSTANTIAL OR CONTINUING LOSS TO THE ESTATE, AND CAUSE DOES NOT EXIST TO DISMISS THE CASE.

The U.S. Trustee's motion to dismiss the case for an alleged continuing post-petition loss to the estate is flawed because the record reflects that no such loss exists. Rather, Debtor is meeting its post-petition obligations on a going-forward basis and is increasing the value of the estate for creditors. There is no cause to dismiss the case.

Contrary to the assertions by the U.S. Trustee, the Debtor is meeting its post-petition obligations. The U.S. Trustee's motion focused in particular on the Debtor's obligations to Avalon. However, by the time the U.S. Trustee filed her motion, the outstanding obligation to Avalon had been reduced to $286,750, as noted in Debtor's March 31, 2016 status conference statement, not the $902,290.82 reported in the U.S. Trustee's motion. This alone—a $600,000 reduction in the account payable in a single month—undercuts the U.S. Trustee's argument. Moreover, as the March 2016 operating report demonstrates, Debtors operations have been improving since the Court's approval of the transaction with Avalon, allowing the Debtor to create additional value for creditors and the estate. The servers purchased from Avalon are valuable assets of the estate, and the total value of servers now owned by Debtor exceeds the outstanding debt on those servers, creating a net increase in value of the estate.

What's more, Debtor is meeting its post-petition obligations to other post-petition creditors. Debtor is making substantial, timely payments to the Riverbank Local Redevelopment Authority (the "Riverbank LRA") for ongoing electricity and rental charges. Payments to Riverbank LRA alone totaled nearly $165,000 in March 2016. *See* Doc. No. 201 at 10–11. Debtor also continues to make required tax deposits, adequate protection payments, and payments to trade creditors.

Debtor's operations continue to improve. As discussed in the March 31, 2016 status conference statement, Riverbank LRA advised Debtor that it would be able to fully energize its most recent expansion at the end of April 2016. *See* Doc. No. 188 at 3:8–16. This will allow the Debtor to add additional server capacity and increase its revenue with only a modest increase in total electricity expenses, allowing most of the increased revenue to flow directly to paying off any outstanding post-petition accounts payable and its bottom line. Debtor anticipates that its May 2016 operating report will reflect the increase in net income. Furthermore, Bitcoin has recently been valued at prices exceeding $440,[1] further supporting Debtor's profitability.

The U.S. Trustee has not demonstrated the existence of a substantial or continuing loss to the

---

[1] As of this writing, one Bitcoin is worth at least $443.30. *See*, *e.g.*, Coindesk, *Bitcoin Price Index Chart*, http://www.coindesk.com/price/#2016-04-26,2016-04-27,close,bpi,USD (last updated April 27, 2016).

4

estate. The motion to dismiss should be denied.

> II. THE ALLEGED INABILITY OF THE DEBTOR TO FILE A PLAN IS NOT CAUSE TO DISMISS THE CASE BECAUSE CREDITORS MAY FILE AND SEEK CONFIRMATION OF A PLAN.

The mere fact that a small business debtor cannot propose a plan of reorganization does not mandate the dismissal of this case. Assuming, without conceding, that Debtor cannot now file and obtain confirmation of a plan,[2] the expiration of such a deadline is not fatal to this case because the exclusivity period has expired and creditors are now empowered to file and seek confirmation of plans of their own. In fact the Debtor has had preliminary conversations with some creditors regarding the filing of a creditor plan in this case.

The restrictions of § 1121(e) only apply to a small business debtor; the restrictions do not apply to creditors in small business cases. *Thurner Indus., Inc. v. Gunnison Energy Corp. (In re Riviera Drilling & Exploration Co.)*, 502 B.R. 863, 874 (B.A.P. 10th Cir. 2013) ("*Riviera*"). As explained by the Tenth Circuit BAP, "Section 1121(e) should not be read in a vacuum." *Id.* (quoting *In re Aspen Limousine Serv. Inc.*, 193 B.R. 325, 333 (D. Colo. 1996). Hence, when reading § 1121 in full, despite the time limitations placed on a small-business debtor to file a plan, once the exclusivity period expires creditors in small-business cases are empowered to file and seek confirmation of plans. *Riviera*, 502 B.R. at 874 ("Non-debtor parties may file plans once the debtor has filed a plan and the exclusive period in which to confirm that plan has expired."). Because the limitations of § 1121(e) do not apply to creditor plans, it is still possible to confirm a plan in this case within a reasonable period of time. In fact, confirmation of a creditor plan following expiration of the time frame in § 1121(e) repeatedly happens in small business cases. *See Riviera*, 502 B.R. at 874–875 (affirming confirmation of a creditor plan filed outside of the 300-day period established by § 1121(e)); *see also In re Garcia*, No. 12-93049-E-11 (Bankr. E.D. Cal. Apr. 7, 2016) (confirming creditor plan in small-business case following expiration of time for debtor to file and confirm plan).

---

[2] As Riverbank LRA cogently argues in its own opposition to the U.S. Trustee's motion, the Court repeatedly continued the hearing on approval of the disclosure statement and plan in this case either on its own motion or the request of Debtor and directed the Debtor not to file a plan while the terms of a possible § 363 sale are developed. These facts support a conclusion that Debtor may still file a plan because the Court in essence authorized the continuance of the deadline.

Considering the facts of this case, it is likely that a plan will be confirmed in a reasonable period of time. Debtor is actively engaged in its reorganization efforts of a business that is fundamentally sound. Debtor has applied for Court approval of its chosen financial advisor and is working with its financial advisor on strategies to realize value for creditors. Once the Debtor's proposed § 363 sale or another amicable workout of this case is in place, a plan may be lawfully put forward to confirm the distribution of the sale proceeds and resolution of this case. As discussed in Debtor's March 31, 2016 status conference statement, Debtor anticipated that this process would require at least 120 days, but its efforts have been chilled by the U.S. Trustee's motion. In any event, it is likely that a confirmable plan could be proposed and confirmed within a reasonable period of time following denial of the U.S. Trustee's motion because it is likely that Debtor will present a motion under § 363 within a reasonable period of time and a plan may concurrently or thereafter be presented to provide for the distribution of any proceeds in accordance with the Bankruptcy Code.

It is also important to note that dismissal or conversion of the case is not in the best interest of creditors or the estate. As the Court is aware, Debtor's efforts to prosecute its plan of reorganization were derailed by market externalities beyond its control. Rather than pursue its plan at all costs, Debtor took a more reasoned approach to evaluate its choices to return the best value to creditors and the estate. Its current course of a court-supervised sale is in the best interest of creditors and the estate. Tellingly, creditors have been supportive of Debtor continued efforts to address this matter in Chapter 11 as demonstrated by comments by Fortis Advisors at the last status conference hearing, the subsequent adequate protection stipulation between Debtor, Fortis Advisors, and Emergent Systems Exchange (Doc. No. 194)—the joint holders of the largest secured claim in the case—and the opposition to the U.S. Trustee's motion filed by Riverbank LRA (Doc. No. 202).

Collectively, these facts support a finding of unusual circumstances to deny the U.S. Trustee's motion. 11 U.S.C. § 1112(b)(2). Because a plan may still be proposed in this case and confirmed in a reasonable period of time, the requirements of § 1112(b)(2)(A)–(B) have been met; the only surviving basis for the U.S. Trustee's motion is noncompliance with § 1121(e) which does not apply to creditor plans (which need only be confirmed within a reasonable period of time),

satisfying § 1112(b)(2)(A) and (B)(ii), and there is a reasonable justification for Debtor's alleged inability to propose a plan within the period required by § 1121(e), satisfying § 1112(b)(2)(B)(i). Even if the Court finds that a continuing loss to the estate exists, § 1112(b)(2)(B) eliminates diminution in value from the analysis, therefore the focus is on the likelihood of confirming a plan in this case. The Court should deny the motion.

## CONCLUSION

The U.S. Trustee's motion should be denied. There is no substantial or continuing loss to the estate. The most recent operating report demonstrates that Debtor continues to operate and meet its post-petition obligations, and generated a substantial accrual-basis net profit over the first quarter of 2016. Nor is the alleged noncompliance with § 1121(e) fatal to this case as a plan may still be proposed and confirmed within a reasonable period of time. Dismissal or conversion is not in the best interest of creditors or the estate; the special circumstances of this case call out for denial of the U.S. Trustee's motion.

DATED: April 27, 2016                                MACDONALD FERNANDEZ LLP

                                                     By: /s/ Matthew J. Olson
                                                         Matthew J. Olson
                                                         Attorneys for Debtor in Possession,
                                                         AQH, LLC