MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Administrative Claimant

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 15-50553-SLJ-11 |
| AQH, LLC, | Chapter 11 |
| Debtor. | FIRST AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES |
| | Date: September 7, 2016<br>Time: 1:30 p.m.<br>Place: Courtroom 3099<br>280 South First Street<br>San Jose, California |
| | Honorable Steven L. Johnson |

COMES NOW Macdonald Fernandez LLP (the "Applicant"), former attorneys to AQH, LLC and administrative claimant herein, who submits this first and final application for compensation pursuant to Bankruptcy Code Section 330 in the amount of $223,575.75 (voluntarily reduced from total fees and costs of $248,417.50) and for costs in the amount of $8,760.67, for total fees and costs in the amount of $232,336.42, and respectfully represents as follows:

1.     Debtor commenced this case by filing a voluntary Chapter 11 petition on February 19, 2015.  A trustee has not been appointed.

2.     Employment:  The Court authorized Debtor's employment of Macdonald Fernandez LLP by order entered on April 10, 2016 (Docket No. 71).

3.     Prior Compensation:  Applicant has not been awarded compensation previously in

Case: 15-50553    Doc# 224    Filed: 08/17/16    Entered: 08/17/16 17:53:37    Page 1 of 28

this case and has not submitted fee applications for its services.

4. <u>Current Compensation</u>:  Applicant has rendered services as counsel for debtor with a value of $248,417.50, as more fully set forth in the detailed time records filed with this application. As disclosed in its Rule 2016(b) Statement (Dckt. No. 41), Applicant received a $50,000 prepetition retainer from Debtor in connection with its representation of Debtor in this matter.  Additionally, Applicant is discounting its fees by $24,841.75 as a courtesy to the Estate, conditional upon approval of the Applicant's attorneys' fees and costs as requested at the initial hearing hereon.  Net of the retainer and voluntary reduction, Applicant seeks total fees of $173,575.75.

5. <u>Expenses</u>:  During the same time period, Applicant also incurred expenses of $8,760.67, as itemized under the heading of "Breakdown of Expenses."

6. <u>Compliance with Guidelines</u>:  As a general rule, Applicant's billing practices and hourly rates are identical for bankruptcy and non-bankruptcy clients.  The costs charged to bankruptcy estates are either identical to or less than the costs charged to non-bankruptcy clients. This application is in compliance with this court's Guidelines for Compensation and Expense Reimbursement of Professionals ("Guidelines for Professionals").  Applicant does not include word processing costs in its expenses, nor mark-up its expenses.

7. <u>2016(b) Statement</u>:  Applicant has not agreed to share any compensation to be awarded herein with any other person. Applicant has neither received nor been promised other compensation for its services as counsel for Debtor herein, other than as may be awarded by the Court herein.

8. <u>Status of the Estate</u>:  Following commencement of the case, Debtor prosecuted a plan of reorganization, a motion for post-petition financing, employed various professionals, prosecuted an adversary proceeding against a creditor for violation of the automatic stay, entered into various settlement agreements, and secured continued utility service for is Riverbank datacenter.  The Court dismissed the bankruptcy case on the U.S. Trustee's motion by order entered on June 20, 2016.

9. <u>Funds Available and Claims of Professionals</u>: Based upon the last filed operating report (May 2016), Debtor had cash on hand of $191,574.88.  Debtor also had substantial other assets valued $328,425, without valuing Debtor's leasehold in the Riverbank datacenter.

## CHAPTER 11 FEE APPLICATION

Pursuant to Bankruptcy Code §§ 330 and 331, Bankruptcy Rule 2016(a), and the Court's *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees*, Applicant requests that this court allow the sum of $223,575.75 as compensation for services (voluntarily reduced from total fees and costs of $248,417.50) and $8,760.67 as reimbursement of expenses, and authorize immediate payment of said sums (net of the $50,000 retainer and $24,841.75 voluntary discount) for a total payment of $182,336.42.

## SUMMARY OF SERVICES RENDERED BY APPLICANT

Debtor is a Bitcoin transaction processor. The within case was precipitated by a short-term cash flow shortage caused by delays in obtaining permits to supply power to Debtor's expanded facilities located at 5300 Claus Road, Buildings 5, 21, and 49, in Modesto, California. Bitcoin is the world's first widespread digital currency. For the convenience of the Court and parties in interest, a treatise on Bitcoin is attached as Exhibit "A" to the Fernandez Decl. offered in support of Debtor's motion to use cash collateral. See Dckt. No. 10-1. Bitcoin entails peer-to-peer transfers of value permanently recorded on a global public ledger of all transactions (called the "Blockchain") to prevent double-spending.

Unlike fiat currencies, new Bitcoin is not issued by governments, central banks, commercial banks, or companies. Instead, Bitcoin is issued to transaction processors (sometimes called "miners") who contribute computer power to maintain and secure the extensive ledger (the Blockchain) described above. Specifically, the ledger is maintained and transactions are verified by using a public-key cryptography system (namely SHA-256) in which each Bitcoin account is assigned two keys—one private and one public. In a Bitcoin transaction, the payor sends the public key to the payee and "signs" it with his or her private key, which transaction is recorded, time-stamped, and added to a "block" of transactions in the Blockchain. Verifying vast numbers of such encrypted transactions by checking them against the Blockchain requires enormous computing power. Accordingly, transaction processors dedicate their highly-specialized computer servers to such work and receive newly-issued Bitcoin and small transaction fees in return. In addition to the ordinary factors present in any business, Debtor's income depends upon two external factors: (1) the

cumulative processing speed of active Bitcoin transaction processors worldwide (the average global "hashrate"); and (2) the U.S. Dollar value of Bitcoin in the worldwide marketplace, which like commodities, can be volatile.

Once electricity was connected to Debtor's expanded space through Applicant's efforts, Debtor is connected additional servers to its network, adding additional capacity to its operations. Debtor's operations were hampered by performance problems with the servers purchased from Cointerra/Emergent Systems Exchange, requiring Debtor to invest substantial time repairing the servers. The servers underperformed the benchmarks promised by Cointerra/Emergent Systems Exchange or did not operate at all. Debtor attempted to work with Emergent to obtain technical support to resolve technical problems with the servers, but those efforts were unsuccessful. Because these servers were underperforming and ultimately failed, Debtor needed to purchase new servers to replace the failing servers so it may meet its long-term revenue projections.

Debtor ultimately concluded an agreement with Beijing Canaan Creative Information Technology Co., Ltd. ("Avalon") for the purchase of Avalon 6 Bitcoin Servers on credit terms and for authority to resell the same servers and other Avalon products. The Court approved the agreement on an interim basis (except for those provisions related to server hosting) and thereafter on a final basis (except for those provisions related to server hosting). Implementation of the agreement with Avalon permitted Debtor to stabilize its operations.

After filing the plan of reorganization, certain conditions in the wider Bitcoin market required Debtor to reexamine its financial projections. These conditions included greater than expected fluctuations in the average price of Bitcoins on the world market. Additionally, during the month of January 2016 there was an explosion in the size of the global network providing security for the Blockchain, which unexpectedly reduced Debtor's relative share of the worldwide Bitcoin revenue. While the size of the global network providing security for the Blockchain contracted during February 2016, the volatility in the number of servers providing security for the Blockchain, and large swings in the value of individual Bitcoins required Debtor to further examine its projections and, ultimately, caused Debtor to withdrawal its plan of reorganization and seek to sell its assets as a going concern.

4

Applicant's work added significant value to Debtor and the Estate. In particular, Debtor would have been evicted from its Riverbank datacenter and had its electricity service permanently disconnected on or about February 23, 2015, but for Applicant's assistance. The value of Applicant's work is also reflected in the agreements, settlements, and other restructuring tasks accomplished, the benefits of which were preserved by order of the Court notwithstanding dismissal. The strategy of withdrawal of Debtor's plan after its financial projections failed which resulted in dismissal of the case was pursued with Debtor's knowledge, approval, and instruction.

(1)     COMMENCEMENT OF CASE

Among other things, Macdonald Fernandez LLP assisted Debtor in preparing and filing the voluntary chapter 11 petition and in preparing and filing the schedules, statement of financial affairs and other initial documents. The Applicant further assisted Debtor by appearing at the Initial Debtor Interview and the Section 341(a) Meeting of Creditors, responding to inquiries regarding commencement of the case from creditors and the United States Trustee, and the Applicant also advised Debtor in opening debtor-in-possession accounts

In connection with this category, Applicant incurred $23,267.50 in fees, as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Iain A. Macdonald | IAM | 4.50 | $590 | $2,655.00 |
| Reno Fernandez | RF | 32.20 | $475 | $15,295.00 |
| Matthew J. Olson | MJO | 3.70 | $375 | $1,387.50 |
| Roxanne Bahadurji | RB | 11.40 | $325 | $3,705.00 |
| Samantha G. Brown | SGB | 1.50 | $150 | $225.00 |
| SUBTOTAL | | 53.30 | | $23,267.50 |

Although this category exceeds $20,000, it would be impractical to break it down in to further categories as the excess is small and reasonable in light of the overall request and the complexity of the case.

/ / /

5

(2)     UTILITIES MOTION

Prior to commencement of the case, Debtor had expanded into additional leased space at its Riverbank location and had expended significant sums making various tenant improvements to allow for the operation of additional Bitcoin servers.  Key to this expansion was the provision of electrical service for the new space so that the additional Bitcoin servers would operate and generate additional income for Debtor.  Debtor had been experiencing difficulties in obtaining approvals from its landlord, Riverbank Local Redevelopment Authority, (who also supplied Debtor with electricity) to energize its expanded leased space because of purportedly new requirements imposed by the landlord and Debtor's delinquency on its obligations to the landlord.

Following commencement of the case, Macdonald Fernandez successfully prosecuted a motion to compel Debtor's landlord to provide utility service after lodging of an adequate assurance deposit and the connection of electrical service to Debtor's expanded datacenter in the Riverbank facility.  The motion was of critical importance; it required extensive briefing and repeated hearings before the Court, and it required extensive efforts out of court working with the landlord and special counsel to resolve the various issues connected to the motion, including certain engineering issues. In connection with this category, Applicant incurred $24,717.50 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Iain A. Macdonald | IAM | 0.50 | $590 | $295.00 |
| Reno Fernandez | RF | 26.90 | $475 | $12,777.50 |
| Matthew J. Olson | MJO | 13.20 | $375 | $4,950.00 |
| Roxanne Bahadurji | RB | 20.60 | $325 | $6,695.00 |
| SUBTOTAL | | 61.20 | | $24,717.50 |

Although this category exceeds $20,000, it would be impractical to break it down in to further categories as the excess is small and reasonable in light of the overall request and the complexity of the case.

/ / /

6

(3)     CASH COLLATERAL AND OTHER FIRST DAY MOTIONS

Because of certain creditor actions and Debtor's delinquency on its rent and utility obligations to its landlord, Debtor's case was commenced with very little bankruptcy planning. This necessitated Debtor immediately seeking Court approval to pay its employees and contractors for their priority prepetition claims so that these individuals—who were each key to Debtor's operations—would continue to work. Because of Debtor's minimal cash position, Debtor required an immediate infusion of cash to fund the required adequate assurance deposit and certain other obligations. Additionally, the creditors holding secured claims against Debtor's assets had threated to foreclose on their security prepetition, so Debtor immediately moved for authority to use cash collateral to fund its continuing operations rather than entering into potentially fruitless negotiations with creditors. These immediate actions were necessary to protect Debtor's operations.

Following commencement of the case, Macdonald Fernandez successfully prosecuted motions to authorize the use of cash collateral, to pay priority wage and tax claims, and to approve the first round of debtor in possession financing to fund these disbursements and the adequate assurance deposit related to the Utilities Motion. These motions required repeated hearings before the Court to obtain authority on an emergency basis followed by final approval after full notice and extensive analysis of various matters in light of the fact that Debtor's petition was filed on an emergency basis and Applicant was operating without the benefit of fully prepared schedules. In connection with this category, Applicant incurred $21,444.00 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Iain A. Macdonald | IAM | 10.60 | $590 | $6,254.00 |
| Reno Fernandez | RF | 18.50 | $475 | $8,787.50 |
| Roxanne Bahadurji | RB | 19.70 | $325 | $6,402.50 |
| SUBTOTAL | | 48.80 | | $21,444.00 |

Although this category exceeds $20,000, it would be impractical to break it down in to further categories as the excess is small and reasonable in light of the overall request and the

7

1  complexity of the case.

2          (4)     RETENTION OF PROFESSIONALS

3          Debtor's affairs were complex and Debtor required various professional persons to advise

4  management on Debtor's operations.  In addition to bankruptcy counsel, Debtor required an outside

5  accountant (Donna Flanders) to assist Debtor with its reporting obligations under the Bankruptcy

6  Code, special counsel (Mike Mengarelli) to advise Debtor with respect to various matters and

7  disputes with its landlord, a political consultant (Darren McDaniels) to advise and advocate on

8  behalf of Debtor with respect to its landlord (a public entity) and potential future investment in the

9  region, special counsel (Dennis Sullivan) to advise Debtor on certain issues connected with the

10  resale of Avalon servers, and a financial advisor (Arch Beam Global, LLC) to advise Debtor with

11  respect to the contemplated sale of the business as a going concern.

12          Among other things, Macdonald Fernandez successfully applied for and received

13  appointment of itself as general bankruptcy counsel, Kelly Litigation Group (Mike Mengarelli) as

14  special counsel, Baudler & Flanders CPAs (Donna Flanders) as accountants to Debtor, DBMAC,

15  Inc. (Darren McDaniels) as a consultant to Debtor, and Dennis Sullivan as special counsel to Debtor,

16  including successfully defending certain objections to those applications.  Applicant also assisted

17  Kelly Litigation Group and Baudler & Flanders CPAs in preparing and obtaining court approval of

18  interim fee applications.  Subsequently, Applicant also sought court approval of Arch Beam Global,

19  LLC as financial advisor to Debtor, which application remained pending when the case was

20  dismissed.

21          In connection with this category, Applicant incurred $13,207.50 in fees, broken down as

22  follows:

23  / / /

24

25

26

27

28

8

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Reno Fernandez | RF | 6.90 | $475 | $3,277.50 |
| Matthew J. Olson | MJO | 24.50 | $375 | $9,187.50 |
| Roxanne Bahadurji | RB | 1.10 | $325 | $357.50 |
| Samantha G. Brown | SGB | 2.20 | $175 | $385.00 |
| SUBTOTAL | | 34.70 | | $13,207.50 |

(5)    AVALON FINANCING

During the pendency of the case, Debtor required additional financing to purchase new servers.  Debtor was unable to obtain financing on the traditional credit markets or distressed lenders.  Debtor, however, negotiated a credit agreement with one of its suppliers, Beijing Canaan Creative Information Technology Co., Ltd. ("Avalon"), whereby Avalon would sell a substantial number of Bitcoin servers to Debtor on credit terms, who would both operate the Bitcoin servers and resell them to third parties, thereby substantially increasing its operating income.

Macdonald Fernandez assisted Debtor with analyzing issues connected with the potential financing from Avalon, including a presentation to Avalon representatives regarding certain issues connected with Debtor's case and analysis of issues connected to the resale of the equipment purchased from Avalon.  Applicant also prepared and successfully prosecuted a motion to approve the financing and resale components of Debtor's the agreement with Avalon over the objection of certain creditors, including Debtor's landlord.

In connection with this category, Applicant incurred $16,930.00 in fees, broken down as follows:

/ / /

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Reno Fernandez | RF | 7.30 | $475 | $3,467.50 |
| Matthew J. Olson | MJO | 35.90 | $375 | $13,462.50 |
| SUBTOTAL | | 43.20 | | $16,930.00 |

(6)     USE, SALE OR LEASE OF ASSETS

During the pendency of the case, Debtor required additional financing to purchase additional Bitcoin servers to supplement its operations and take advantage of the expanded space in its Riverbank datacenter.  To this end and at Debtor's request, Applicant met with various potential lenders regarding Debtor's operations and financing needs.  Additionally, after it was determined that Debtor could not move forward with its plan of reorganization, Applicant advised Debtor regarding a sale of the business operations as a going concern to preserve the maximum value for the estate and creditors.

Macdonald Fernandez assisted Debtor with analysis of various other debtor-in-possession financing options, including a potential sale-leaseback arraignment, and negotiated with secured lenders regarding the financing issues, including new lending by the existing secured lenders. Applicant also analyzed issues with sale of the business as a going concern outside of a plan of reorganization.

In connection with this category, Applicant incurred $11,317.50 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Reno Fernandez | RF | 3.30 | $475 | $1,567.50 |
| Matthew J. Olson | MJO | 26.00 | $375 | $9,750.00 |
| SUBTOTAL | | 29.30 | | $11,317.50 |

/ / /

/ / /

10

(7)     KILDAY LITIGATION

Prior to commencement of the case, Christopher Kilday assisted Debtor with acquiring certain Bitcoin servers from Cointerra, a manufacture and operator of Bitcoin servers.  Under the transaction, the Cointerra servers were purchased by Emergent Systems Exchange and then resold by Emergent to Debtor on credit terms at a markup.  Under an agreement between Kilday and Debtor, Kilday was to receive a commission once certain conditions precedent were met.  During the negotiations related to the purchase of the Cointerra servers, the parties—including Kilday—agreed that Kilday's commission would be reduced.  Following the filing of the bankruptcy case, Kilday made repeated demands for payment of his commission in violation of the automatic stay and despite the fact that the conditions precedent for his commission had not been satisfied. Additionally, Kilday harassed Debtor's management immediately prior to the hearing on Debtor's first day motions and attempted to interrupt a conference between Debtor's management and Applicant, such that Debtor eventually summoned Court Security Officers.  Thereafter, and with full knowledge of the automatic stay, Kilday commenced an action, obstinately against Debtor's management in their individual capacities, as an attempt to intimidate Debtor into making an immediate payment on Kilday's claim.

Macdonald Fernandez analyzed issues related to Kilday's violation of the automatic stay and his commencement of a case against Debtor's management in state court.  Applicant prosecuted an adversary proceeding for violation of the automatic stay and to impose an injunction prohibiting prosecution of Kilday's state-court complaint.  Applicant successfully obtained a temporary restraining order followed by a stipulated preliminary injunction prohibiting Kilday from prosecuting his claims in state court.  Eventually, Applicant successfully negotiated a settlement of the Kilday litigation which reduced Kilday's allowed claim against the estate and required dismissal with prejudice of the claims in state court against Debtor's management.

In connection with this category, Applicant incurred $15,945.00 in fees, broken down as follows:

/ / /

/ / /

11

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Reno Fernandez | RF | 2.20 | $475 | $1,045.00 |
| Matthew J. Olson | MJO | 39.30 | $375 | $14,737.50 |
| Roxanne Bahadurji | RB | 0.50 | $325 | $162.50 |
| Samantha G. Brown | SGB | 0.00 | $150 | $0.00 |
| SUBTOTAL | | 42.00 | | $15,945.00 |

(8)    OTHER ADVERSARY PROCEEDINGS/CONTESTED MATTERS

In the schedules, Debtor asserted claims against various creditors, including Andrew Faris, Emergent Systems Exchange, and Debtor's landlord.  These claims arose from Debtor's prepetition interactions with these creditors.  Additionally, Debtor asserted claims against these parties for certain post-petition actions.  Debtor also faced a post-petition claim for unemployment benefits filed by one of its contractors who asserted that he was in fact an employee.  Finally, Debtor required assistance in defending the U.S. Trustee's motion to dismiss or convert the case following the withdrawal of Debtor's plan.

Macdonald Fernandez assisted Debtor in analyzing various claims against third parties, certain post-petition claims against Debtor, and defended the U.S. Trustee's motion to dismiss or convert.

In connection with this category, Applicant incurred $13,157.50 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Reno Fernandez | RF | 7.60 | $475 | $3,610.00 |
| Matthew J. Olson | MJO | 25.20 | $375 | $9,450.00 |
| Roxanne Bahadurji | RB | 0.30 | $325 | $97.50 |
| SUBTOTAL | | 33.10 | | $13,157.50 |

/ / /

12

(9)     PLAN AND DISCLOSURE STATEMENT

Debtor's operations and debt structure were complex and required extensive analysis to develop a restructuring plan that would meet Debtor's obligations under the Bankruptcy Code while fitting within Debtor's ability to generate cash to fund its operations.  Debtor timely filed a plan of reorganization which it amended following comments from its landlord regarding the proposed treatment.  Shortly thereafter, however, Debtor was forced to withdrawal the plan because the financial projections upon which the plan relied had become untenable following a drop in the price of Bitcoin, the sale of which formed the core of Debtor's operations, Debtor was unable to develop a confirmable reorganization plan, and it was impossible to show that the price of Bitcoin would recover sufficiently to support the financial projections.  By the time Debtor was forced to withdrawal it plan, the statutory deadline to file a plan had passed, preventing Debtor from seeking an extension of that deadline.  Instead, Debtor was forced to explore the sale of its assets as a going concern either through § 363 sale or a subsequent plan.  Debtor was unable to execute on this strategy because of the U.S. Trustee's intervening motion to dismiss.

Macdonald Fernandez assisted Debtor in preparing three Chapter 11 plans and engaged in significant analysis of financial issues and projections to ensure that Debtor complied with the obligations under the Bankruptcy Code.  Specifically, Applicant advised Debtor on its obligations to timely file and prosecute a plan, how claims of creditors could be treated and classified, and other issues connected with obtaining confirmation of the Plan.

In connection with this category, Applicant incurred $26,357.50 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Reno Fernandez | RF | 22.60 | $475 | $10,735.00 |
| Matthew J. Olson | MJO | 41.40 | $375 | $15,525.00 |
| Roxanne Bahadurji | RB | 0.30 | $325 | $97.50 |
| SUBTOTAL | | 64.30 | | $26,357.50 |

13

Although this category exceeds $20,000, it would be impractical to break it down in to further categories as the excess is small and reasonable in light of the overall request and the complexity of the case.

(10)    MONTHLY OPERATING REPORTS

Debtor's operations were complex and involved both the generation of income from its primary Bitcoin operations and the subsequent selling of Avalon servers. Additionally, the case involved multiple sophisticated creditors who analyzed the operating reports. Macdonald Fernandez advised Debtor with respect to its duties to prepare and file monthly operating reports and payment of U.S. Trustee fees and assisted Debtor with respect to reviewing and revising draft reports prepared by the Estate's other professionals.

In connection with this category, Applicant incurred $8,007.50 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Reno Fernandez | RF | 0.40 | $475 | $190.00 |
| Matthew J. Olson | MJO | 16.30 | $375 | $6,112.50 |
| Kelly H. Jones | KHJ | 10.00 | $150 | $1,500.00 |
| Samantha G. Brown | SGB | 1.00 | $175 | $175.00 |
| Samantha G. Brown | SGB | 0.20 | $150 | $150.00 |
| SUBTOTAL | | 27.90 | | $8,007.50 |

(11)    STATUS CONFERENCES

Given the complexity of Debtor's case and the transition of this matter following Judge Weissbrodt's retirement, the case required multiple status conferences and the preparation of associated status conference statements to keep the Court abreast of the status of the case. Macdonald Fernandez advised Debtor with respect to, prepared for, and attended multiple status conferences conducted in the case.

In connection with this category, Applicant incurred $5,560.00 in fees, broken down as

14

follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Reno Fernandez | RF | 1.60 | $475 | $760.00 |
| Matthew J. Olson | MJO | 12.80 | $375 | $4,800.00 |
| SUBTOTAL | | 14.40 | | $5,560.00 |

(12)    CASE ADMINISTRATION

Macdonald Fernandez advised and assisted Debtor with substantially all aspects of the administration of the within case, including by advising Debtor with respect to its duties as debtor in possession, coordination of strategy for addressing various issues which arose in the case, responding to various inquiries from creditors and other stakeholders, analysis of issues connected with prepetition tax returns, and other miscellaneous matters.

In connection with this category, Applicant incurred $17,765.50 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Iain A. Macdonald | IAM | 3.70 | $590 | $2,183.00 |
| Reno Fernandez | RF | 4.60 | $475 | $2,185.00 |
| Matthew J. Olson | MJO | 34.90 | $375 | $13,087.50 |
| Roxanne Bahadurji | RB | 0.40 | $325 | $130.00 |
| Kelly H. Jones | KHJ | 1.20 | $150 | $180.00 |
| SUBTOTAL | | 44.80 | | $17,765.50 |

(13)    AUTOMATIC STAY MATTERS

Following the commencement of the case, several creditors continued with aggressive collection actions. Macdonald Fernandez advised and assisted Debtor with respect to the automatic stay and analyzed these potential violations of the stay by various creditors, including sending cease-

and-desist letters. Applicant was able to resolve these automatic stay issues without the assistance of the bankruptcy court.

In connection with this category, Applicant incurred $1,967.50 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Iain A. Macdonald | IAM | 0.50 | $590 | $295.00 |
| Reno Fernandez | RF | 2.50 | $475 | $1,187.50 |
| Matthew J. Olson | MJO | 0.60 | $375 | $225.00 |
| Roxanne Bahadurji | RB | 0.80 | $325 | $260.00 |
| SUBTOTAL | | 4.40 | | $1,967.50 |

(14)     EMERGENT/FORTIS SETTLEMENT

Prior to filing of the petition, Debtor purchased Bitcoin servers from Cointerra, a transaction that was facilitated by Emergent Systems Exchange. Under the agreement with Emergent, Debtor was to make payments for the Cointerra servers to Emergent on a set payment schedule and Emergent's claim for payments was to be secured by the Cointerra servers. Debtor defaulted on the payment schedule and Emergent sought to foreclose on its purported lien. Part of Debtor's financial troubles arose from technical problems with the Cointerra servers, which Debtor asserted Emergent had a duty to address. Finally, Fortis Advisors, as collateral agent, and Future Electronics, held perfected security interests in the Cointerra servers despite representations to Debtor that the Cointerra servers were unencumbered.

Macdonald Fernandez advised Debtor with respect to claims asserted against it by Emergent Systems Exchange, Fortis Advisors, as collateral agent, and Future Electronics. Specifically, Applicant reviewed and analyzed the claims presented by these creditors, the validity of the liens they asserted in the Cointerra servers, and potential defenses and counterclaims. Applicant also engaged in extensive discussions with these creditors which resulted in a settlement agreement concerning the allowance of the claims against the Estate, treatment of the claims under a proposed plan, resolution of adequate protection issues, and support by these creditors for Debtor's proposed

16

plan.

In connection with this category, Applicant incurred $22,310.00 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Reno Fernandez | RF | 8.40 | $475 | $3,990.00 |
| Matthew J. Olson | MJO | 41.40 | $375 | $15,525.00 |
| Roxanne Bahadurji | RB | 8.60 | $325 | $2,795.00 |
| SUBTOTAL | | 58.40 | | $22,310.00 |

Although this category exceeds $20,000, it would be impractical to break it down in to further categories as the excess is small and reasonable in light of the overall request and the complexity of the case.

(15)    CLAIMS, ANALYSIS & OBJECTIONS

Macdonald Fernandez LLP assisted Debtor in reviewing, analyzing, addressing and responding to questions regarding claims and proofs of claim, among other things, including tax claims, trade claims, mechanic's liens, and the entitlement of creditors to assert claims for attorneys' fees and costs in connection with the bankruptcy case.

In connection with this category, Applicant incurred $4,662.50 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Iain A. Macdonald | IAM | 0.50 | $590 | $295.00 |
| Reno Fernandez | RF | 3.70 | $475 | $1,757.50 |
| Matthew J. Olson | MJO | 5.80 | $375 | $2,175.00 |
| Roxanne Bahadurji | RB | 1.20 | $325 | $390.00 |
| Kelly H. Jones | KHJ | 0.30 | $150 | $45.00 |
| SUBTOTAL | | 11.50 | | $4,662.50 |

Case: 15-50553   Doc# 224   Filed: 08/17/16   Entered: 08/17/16 17:53:37   Page 17 of 28

(16)     ASSUMPTION/REJECTION OF EXECUTORY CONTRACTS

Prior to filing of the petition, Debtor entered into a long-term lease with Riverbank Local Redevelopment Authority for its Riverbank datacenter. Maintaining the lease for the Riverbank datacenter was essential for Debtor's operations as Debtor's competitive advantage was derived in large part from the lease costs and low electricity rates that Debtor secured in Riverbank. Given the significant prepetition defaults under the lease, Debtor required assistance in developing a plan to cure the lease obligations upon assumption of the lease agreement with the landlord. The required repeated continuance of the deadline as Debtor worked through structuring its plan of reorganization. Additionally, various postpetition disputes arose between Debtor and landlord, including access to water in the lease premises, the provision of electricity to the final expansion of Debtor's leased premises, and certain access issues.

Macdonald Fernandez LLP advised Debtor with respect to its obligation to timely assume or reject executory contracts, and in particular the lease agreement with Riverbank Local Redevelopment Authority. Applicant obtained court approval of an extension of time to assume or reject the aforesaid lease, and subsequently negotiated several stipulations for further extensions of time. Applicant also assisted Debtor in analyzing and addressing various issues that arose during the course of the case between Debtor and landlord, including water access and power connections issues subsequent to the Court's granting of the Utilities Motion.

In connection with this category, Applicant incurred $16,823.00 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Iain A. Macdonald | IAM | 5.20 | $590 | $3,068.00 |
| Reno Fernandez | RF | 5.70 | $475 | $2,707.50 |
| Matthew J. Olson | MJO | 28.90 | $375 | $10,837.50 |
| Roxanne Bahadurji | RB | 0.60 | $325 | $195.00 |
| Samantha G. Brown | SGB | 0.10 | $150 | $15.00 |
| SUBTOTAL | | 40.50 | | $16,823.00 |

18

(17)     FEE APPLICATIONS

Macdonald Fernandez LLP reviewed its billing entries in preparation for this fee application and analyzed the Court's post-dismissal jurisdiction to hear and resolve fee applications.

In connection with this category, Applicant incurred $2,640.00 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Iain A. Macdonald | IAM | 0.50 | $590 | $295.00 |
| Reno Fernandez | RF | 1.70 | $475 | $807.50 |
| Matthew J. Olson | MJO | 4.10 | $375 | $1,537.50 |
| SUBTOTAL | | 6.30 | | $2,640.00 |

(18)     ASSET INVESTIGATION

Macdonald Fernandez LLP analyzed Debtor's books, records, and other documents to determine the nature and extent of Debtor's assets, including the value of the Cointerra bitcoin miners, the lease agreement with Riverbank Local Redevelopment Authority, and potential insurance claims.

In connection with this category, Applicant incurred $2,337.50 in fees, broken down as follows:

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Reno Fernandez | RF | 3.60 | $475 | $1,710.00 |
| Matthew J. Olson | MJO | 1.50 | $375 | $562.50 |
| Roxanne Bahadurji | RB | 0.20 | $325 | $65.00 |
| SUBTOTAL | | 5.30 | | $2,337.50 |

TIME EXPENDED FOR A PARTICULAR TASK

As set forth in detail in Exhibit "A" attached hereto, Applicant has provided substantial and

19

valuable services to Debtor and the estate. Pursuant to this Court's Compensation Guidelines, Applicant has prepared the following breakdown of its services to show the time spent per professional in each of eight categories during the period covered by this application.

| SERVICES | IAM | RF | MJO | RB | KHJ | SGB | TOTAL |
|---|---|---|---|---|---|---|---|
| 1. Commencement of Case | 4.50 | 32.20 | 3.70 | 11.40 | 0.00 | 1.50 | 53.30 |
| 2. Utilities Motion | 0.50 | 26.90 | 13.20 | 20.60 | 0.00 | 0.00 | 61.20 |
| 3. Cash Collateral & First Day Motions | 10.60 | 18.50 | 0.00 | 19.70 | 0.00 | 0.00 | 48.80 |
| 4. Retention of Professionals | 0.00 | 6.90 | 24.50 | 1.10 | 2.20 | 0.00 | 34.70 |
| 5. Avalon Financing | 0.00 | 7.30 | 35.90 | 0.00 | 0.00 | 0.00 | 43.20 |
| 6. Use, Sale or Lease of Assets | 0.00 | 3.30 | 26.00 | 0.00 | 0.00 | 0.00 | 29.30 |
| 7. Kilday Litigation | 0.00 | 2.20 | 39.30 | 0.50 | 0.00 | 0.00 | 42.00 |
| 8. Other Adversary Proceedings/ Contested Matters | 0.00 | 7.60 | 25.20 | 0.30 | 0.00 | 0.00 | 33.10 |
| 9. Plan & Disclosure Statement | 0.00 | 22.60 | 41.40 | 0.30 | 0.00 | 0.00 | 64.30 |
| 10. Monthly Operating Reports | 0.00 | 0.40 | 16.30 | 0.00 | 10.00 | 1.20 | 27.90 |
| 11. Status Conferences | 0.00 | 1.60 | 12.80 | 0.00 | 0.00 | 0.00 | 14.40 |
| 12. Case Administration | 3.70 | 4.60 | 34.90 | 0.40 | 1.20 | 0.00 | 44.80 |
| 13. Automatic Stay Matters | 0.50 | 2.50 | 0.60 | 0.80 | 0.00 | 0.00 | 4.40 |
| 14. Emergent/Fortis Settlement | 0.00 | 8.40 | 41.40 | 8.60 | 0.00 | 0.00 | 58.40 |
| 15. Claims, Analysis & Objections | 0.50 | 3.70 | 5.80 | 1.20 | 0.30 | 0.00 | 11.50 |
| 16. Assumption/Rejection of Executory Contracts | 5.20 | 5.70 | 28.90 | 0.60 | 0.00 | 0.10 | 40.50 |
| 17. Fee Application | 0.50 | 1.70 | 4.10 | 0.00 | 0.00 | 0.00 | 6.30 |
| 18. Asset Investigation | 0.00 | 3.60 | 1.50 | 0.20 | 0.00 | 0.00 | 5.30 |
| TOTALS | 26.00 | 159.70 | 355.50 | 65.70 | 11.50 | 5.00 | 623.40 |

## BREAKDOWN OF TIME SPENT BY PROFESSIONAL

The legal services provided by Applicant from February 1, 2015, through July 6, 2016, have been broken down by attorney and time expended in the chart below, as required by the Guidelines for Professionals.

| PROFESSIONAL | INITIALS | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Iain A. Macdonald | IAM | 26.00 | $590 | $15,340.00 |
| Reno Fernandez | RF | 159.70 | $475 | $75,857.50 |
| Matthew J. Olson | MJO | 355.50 | $375 | $133,312.50 |
| Roxanne Bahadurji | RB | 65.70 | $325 | $21,352.50 |
| Kelly H. Jones | KHJ | 11.50 | $150 | $1,725.00 |
| Samantha G. Brown | SGB | 3.20 | $175 | $560.00 |
| Samantha G. Brown | SGB | 1.80 | $150 | $270.00 |
| SUBTOTAL | | 623.40 | | $248,417.50 |

Based upon the foregoing, Applicant has incurred $248,417.50 in legal fees from February 1, 2015, through July 6, 2016. After applying the $50,000 retainer and $24,841.75 voluntary reduction, Applicant seeks a net payment of $173,575.75 for fees.

## BREAKDOWN OF EXPENSES INCURRED

Applicant has incurred the following expenses during the period February 1, 2015, through July 6, 2016:

/ / /

| DESCRIPTION | EXPENSE |
|---|---|
| Telephone Conference Bridge Fees | $28.35 |
| Court Filing/Certified Copy Fees | $2,149.00 |
| CourtCall | $383.20 |
| Facsimile (@ $0.20 per page) | $1.00 |
| Federal Express | $2,820.83 |
| PACER | $69.70 |
| Internal Photocopying (@ $0.20 per page) | $2,230.40 |
| Postage | $669.51 |
| Parking, Mileage, and Travel | $395.68 |
| Wire Transfer Fees | $13.00 |
| TOTAL | $8,760.67 |

Applicant's policy is to charge clients $.20 per page for internal photocopying and actual costs for external photocopying. Applicant's policy is to charge clients $.20 per page for outgoing and incoming facsimile transmissions, in accordance with this Court's Guidelines. As with external photocopying, Applicant charges its actual costs associated with postage, court fees, and research (includes PACER, Westlaw, and Lexis).

ESTABLISHMENT OF FEES

Section 330(a)(1) permits the court to award "reasonable compensation" for "actual, necessary services" rendered by a trustee, examiner or properly employed professional person. 11 U.S.C. § 330(a)(1)(A).

Resolution of fee applications are proceedings which do not exist outside of bankruptcy and, hence, are core proceedings. *Schultz v. Chandler*, 765 F.3d 945, 948 (9th Cir. 2014). Notwithstanding the dismissal, the bankruptcy court may still properly resolve requests for professional fees. *St. Angelo v. Victoria Farms, Inc. (In re Victoria Farms, Inc.)*, 38 F.3d 1525, 1533 (9th Cir. 1994) ("A court may properly award fees even after a bankruptcy case has been dismissed."). "The bankruptcy court retains subject matter jurisdiction to interpret orders entered

prior to dismissal and to dispose of ancillary matters such as an application for an award of attorney's fees." *In re Valley Process Systems, Inc.*, No. 13-51936-ASW-11, 2014 WL 3635367, at *1 (Bankr. N.D. Cal. July 23, 2014) (citing *Lawson v. Tilem (In re Lawson)*, 156 B.R. 43, 46 (B.A.P. 9th Cir. 1993); *Beneficial Trust Deeds v. Franklin (In re Franklin)*, 802 F.2d 324, 326–27 (9th Cir. 1986); and *U.S.A. Motel Corp. v. Danning (In re U.S.A. Motel Corp.)*, 521 F.2d 117 (9th Cir. 1975)).

In determining "reasonable compensation," the court must consider the nature, extent and value of the services, taking into account "all relevant factors," including: (1) time spent on the services (11 U.S.C. § 330(a)(3)(A)); (2) rates charged for the services (11 U.S.C. § 330(a)(3)(B)); (3) whether the services were: (i) necessary to the administration of the bankruptcy case; or (ii) beneficial at the time the services were rendered toward completion of the case (11 U.S.C. § 330(a)(3)(C)); (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed (11 U.S.C. § 330(a)(3)(D)); (5) with respect to a professional person, whether the person is board certified or has otherwise demonstrated skill and experience in the bankruptcy field (11 U.S.C. § 330(a)(3)(E)); and (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in nonbankruptcy cases (11 U.S.C. § 330(a)(3)(F)). A compensation award based on a reasonable hourly rate multiplied by the number of hours actually and reasonably expended is presumptively a reasonable fee. *Burgess v. Klenske (In re Manoa Fin. Co.)*, 853 F.2d 687, 689 (9th Cir. 1988).

Whether services were necessary to the administration of the case or beneficial to the estate is determined, not in hindsight, but objectively with reference to the time the services were rendered. 11 U.S.C. § 330(a)(3)(A) & (C); *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswid Drug Co. (In re Mednet)*, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000); *In re Circle K Corp.*, 294 B.R. 111, 125 (Bankr. D Ariz. 2003). Furthermore, § 330 does not require that the services result in a material benefit to the estate. It need only be shown that the services were reasonably likely to benefit the estate at the time the services were rendered. *Mednet*, 251 B.R. at 108; *Lobel & Opera v. U.S. Trustee (In re Auto Parts Club, Inc.)*, 211 B.R. 29, 33 (B.A.P. 9th Cir. 1997).

While a bankruptcy court has a duty to review a fee application even in the absence of an

objection, the court should not, "not without evidence to the contrary, . . . change the facts initially presented to it in an otherwise complete fee application . . [and] on its own, second guess counsel in deciding whether this conference or that phone call were necessary, whose participation was appropriate, what the market generally pays for the time and services of counsel and its staff or how it reimburses certain expenses." *In re Hunt's Health Care, Inc.*, 161 B.R. 971, 981 (Bankr. N.D. Ind. 1993). As the court observed in *Hunt's Health Care*:

> Without being presented with facts beyond those contained in an otherwise sufficient fee application, the court should not reduce an attorney's hourly rate or decide what is or is not to be characterized as overhead or how certain expenses are properly billed. Neither should the court take the approach that, just because it frequently reviews a multitude of fee applications, it is somehow in a better position to determine the reasonableness of a requested fee than the market. An attorney's customary billing practices are presumptively correct. While they may not be dispositive, departing from them requires a reason and information which would warrant the conclusion that the presumption accorded to counsel's regular practice should not be followed. Thus, the burden is on the objector "to establish a good reason why a lower rate is essential to access a 'reasonable attorney's fee.'"

> A party objecting to a fee application may not do so based on the general proposition that the fee sought is simply too much. It should go beyond this assertion to articulate a reason why and, if necessary, present evidence in support thereof. . . The objector must, at some point, identify any allegedly improper, insufficient, or excessive entries and direct the court's attention to them. The objector should also be able to identify a reason why the hourly rates involved and the time charged are not reasonable or why the market would place a lower value on counsel's labors and offer evidence supporting its position.

*Id.* at 982 (citations omitted). Attorneys' fees should not be reduced based on "inarticulable and unsubstantiated dissatisfaction with the lawyers' efforts to economize on their time and expenses." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). In short, once an applicant has documented the hours expended and submitted evidence in support of the hours worked, "there is a strong presumption that the lodestar represents a reasonable fee." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1993). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence challenging the hours charged or facts asserted" in the application. *Id.* at 1397–1398.

Applicant's services in this matter were performed by Iain A. Macdonald, Reno F.R. Fernandez III, and Matthew J. Olson, Roxanne Bahadurji, Kelly H. Jones, and Samantha G. Brown.

Iain A. Macdonald earned his law degree from University of San Francisco School of Law in

1971 and was admitted to the bar in 1972. Mr. Macdonald has represented Chapter 11 and 7 Trustees, Creditors' Committees, and creditors and debtors in large and complex bankruptcy cases in the Bay Area. Mr. Macdonald was a partner in the firm of Goldberg, Stinnett & Macdonald for 12 years and is a partner in the firm of Macdonald Fernandez LLP, a firm specializing in bankruptcy and related litigation since November 1, 1993.

Frank R. Fernandez III (known by his nickname as "Reno F.R. Fernandez III") is a partner with Macdonald Fernandez LLP. He earned his law degree from Golden Gate University School of Law in 2007 and was admitted to the bar in the same year. Mr. Fernandez has obtained confirmation of Chapter 11 plans in at least nine cases and appeared in many more, including in the Northern and Eastern Districts of California, the District of Delaware, and the Southern District of New York. Mr. Fernandez has represented at least three Chapter 7 trustees in several cases; confirmed at least one Chapter 13 plan and appeared in several other Chapter 13 cases; prosecuted and defended avoidance actions, nondischargeability actions and relief-from-stay trials; represented several secured and unsecured creditors, including a national bank; obtained the appointment of a receiver; represented a large dissenting creditor in an assignment for the benefit of creditors; and appeared before the Superior Courts of the Counties of San Francisco, Marin and Stanislaus. Mr. Fernandez is formerly the chairperson of the Commercial Law & Bankruptcy Section of the Bar Association of San Francisco ("BASF"), chair-elect of the Insolvency Law Committee of the State Bar of California, and a former member of the board of directors of the Bay Area Bankruptcy Forum, among other roles.

Matthew J. Olson is an associate attorney with Macdonald Fernandez LLP. He earned his law degree, with distinction, from University of the Pacific McGeorge School of Law in 2009 and was admitted to the bar that same year. From February 2010 through September 2012, Mr. Olson served as law clerk to the Honorable Ronald H. Sargis of the U.S. Bankruptcy Court for the Eastern District of California. He has experience with bankruptcy cases pending under Chapters 7, 11, 12, and 13 of the bankruptcy code and related adversary proceedings. While attending law school Mr. Olson served as a budget officer for the housing and dining unit of an independent university in Northern California and externed with the Stockton City Attorney and Governor Arnold

Schwarzenegger's office. Mr. Olson is co-chair of the Business, Commercial and Bankruptcy Law Section of the Barristers Club of San Francisco, Secretary of the Commercial Law and Bankruptcy Section of the Bar Association of San Francisco, and is a member of the Bankruptcy Court Clerk's Advisory Committee for the Eastern District of California, the Turnaround Management Association, and the National Association of Consumer Bankruptcy Attorneys. Mr. Olson joined the firm in 2012.

Roxanne Bahadurji was an associate attorney with Macdonald Fernandez LLP. She earned her law degree from Boston College Law School in 2011 and was admitted to the Massachusetts bar that year; she was admitted to the California bar in June, 2013. Ms. Bahadurji served as law clerk to Bankruptcy Judge Julia W. Brand for one year and as a summer judicial extern to Bankruptcy Judge Catherine E. Bauer, both of the Central District of California. Ms. Bahadurji also previously served as consultant with a Northern California hard money lender, and she staffed a community enterprise clinic (drafting corporate documents for nonprofits and advised on compliance) and a civil litigation clinic in Massachusetts. She is a former member of the executive committee of the Business, Commercial & Bankruptcy Section of BASF's Barristers Club. Ms. Bahadurji joined the firm in 2014.

Kelley H. Jones was a law clerk with Macdonald Fernandez, LLP from 2013 to 2015. She earned her law degree from Indiana University Robert H. McKinney School of Law in 2013 and applied for admission to the California State Bar. Mrs. Jones also holds a Masters of Business Administration from Sullivan University, a Bachelor of Science from University of South Carolina Upstate, and an Associates Paralegal Degree from Greenville Technical College. Mrs. Jones has over ten years of experience preparing chapter 7, 13, 11 and involuntary bankruptcy petitions. She has held a Federal Internship with Judge Jane Magnus-Stinson of the United States District Court for the Southern District of Indiana; she held a State Court Externship at the Marion County, Indiana Superior Court; she was as a Certified Legal Intern at the Civil Practice Clinic of Indiana University Robert H. McKinney School of Law; she was as a Paralegal/Debtor Practice Manager at Skinner Law Firm, LLC, in Greenville, South Carolina; and she has served in various other firms in the capacity of a paralegal and/or legal assistant in South Carolina, Kentucky, and Indiana. Mrs. Jones

has assisted with several chapter 11 cases in the Northern District of California, and her work was instrumental to the successful administration and conclusion of this case. A copy of her resume is attached to the Olson Declaration as Exhibit "B."

Samantha G. Brown is a paralegal at Macdonald Fernandez LLP and has worked for Applicant since December 2011. Ms. Brown earned a Bachelor's Degree in Psychology from Loyola Marymount University in 2010. Prior to her employment with Applicant, Ms. Brown was certified as a credit and housing counselor for a non-profit agency aiding clients in financial crises. Ms. Brown has comprehensive experience with bankruptcy matters, particularly the preparation of bankruptcy petitions, schedules, and various postpetition motions and other pleadings. A copy of Ms. Brown's resume is attached to the Olson Declaration as Exhibit "C."

CONCLUSION AND PRAYER

Based upon the foregoing, Applicant requests that this Court:

(a)     Approve and allow compensation for the period February 1, 2015, through July 6, 2016, in the amount of $223,575.75 (voluntarily reduced from $248,417.50) and reimbursement of expenses for the same period in the amount of $8,760.67;

(b)     Authorize the Applicant to apply the $50,000 retainer to the approved fees;

(c)     Authorize Debtor to pay the balance of the approved but unpaid fees and costs in the total amount of $182,336.42; and

(d)     For such other and further relief as is proper in the premises.

DATED: August 17, 2016                    MACDONALD | FERNANDEZ LLP

                                          By: /s/ Matthew J. Olson
                                              Matthew J. Olson
                                              Administrative Claimant


CERTIFICATION

I, Matthew J. Olson, have read the foregoing Application. To the best of my knowledge, information and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought is in conformity with the Guidelines for Professionals, except as specifically noted above. The compensation and expense reimbursement requested are billed at rates, and in

accordance with practices, no less favorable than those customarily employed by Applicant and generally accepted by Applicant's clients.

/s/ Matthew J. Olson
MATTHEW J. OLSON