BAUDLER & FLANDERS, CPAS
1120 14th Street, Suite 2
Modesto, CA 95354
Telephone: (209) 575-2653
Facsimile: (209) 575-0629

Former Accountants for Debtor,
AQH, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 15-50553-SLJ-11 |
| AQH, LLC, | Chapter 11 |
| Debtor. | FIRST AND FINAL APPLICATION OF BAUDLER & FLANDERS CPAs FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES |
| | Date: October 19, 2016<br>Time: 1:30 p.m.<br>Place: Courtroom 3099<br>280 South First Street<br>San Jose, California |
| | Honorable Steven L. Johnson |

COMES NOW Baudler & Flanders, CPAs (the "Applicant"), former accountants to AQH, LLC and administrative claimant herein, who submits this first and final application for compensation pursuant to Bankruptcy Code Section 330 in the amount of $15,486.85 and for costs in the amount of $0.00, for total fees and costs in the amount of $15,486.85, and respectfully represents as follows:

1. Debtor commenced this case by filing a voluntary Chapter 11 petition on February 19, 2015. A trustee has not been appointed.

2. Employment: The Court authorized Debtor's employment of Applicant by order entered on April 21, 2015 (Docket No. 78).

3. Prior Compensation: Applicant has not been awarded compensation previously in

this case and has not submitted fee applications for its services.

4. <u>Current Compensation</u>: Applicant has rendered services as accountants for debtor with a value of $15,486.85, as more fully set forth in the detailed time records filed with this application. As authorized by the order approving the appointment of Applicant, Applicant received a $5,000 postpetition retainer from Debtor in connection with its work on behalf Debtor in this matter. Applicant also received an interest payment of $2.45 on account of the deposit of the retainer in an interest bearing account. Net of the retainer and interest payment, Applicant seeks total fees of $10,484.40.

5. <u>Expenses</u>: During the same time period, Applicant also incurred expenses of $0.00.

6. <u>Compliance with Guidelines</u>: As a general rule, Applicant's billing practices and hourly rates are identical for bankruptcy and non-bankruptcy clients. The costs charged to bankruptcy estates are either identical to or less than the costs charged to non-bankruptcy clients. This application is in compliance with this court's Guidelines for Compensation and Expense Reimbursement of Professionals ("Guidelines for Professionals"). Applicant does not include word processing costs in its expenses, nor mark-up its expenses.

7. <u>2016(b) Statement</u>: Applicant has not agreed to share any compensation to be awarded herein with any other person. Applicant has neither received nor been promised other compensation for its services as counsel for Debtor herein, other than as may be awarded by the Court herein.

8. <u>Status of the Estate</u>: Following commencement of the case, Debtor prosecuted a plan of reorganization, a motion for post-petition financing, employed various professionals, prosecuted an adversary proceeding against a creditor for violation of the automatic stay, entered into various settlement agreements, and secured continued utility service for is Riverbank datacenter. The Court dismissed the bankruptcy case on the U.S. Trustee's motion by order entered on June 20, 2016.

9. <u>Funds Available and Claims of Professionals</u>: Based upon the last filed operating report (May 2016), Debtor had cash on hand of $191,574.88. Debtor also had substantial other assets valued $328,425, without valuing Debtor's leasehold in the Riverbank datacenter.

/ / /

# CHAPTER 11 FEE APPLICATION

Pursuant to Bankruptcy Code §§ 330 and 331, Bankruptcy Rule 2016(a), and the Court's *Guidelines for Compensation and Expense Reimbursement of Professional and Trustees,* Applicant requests that this court allow the sum of $15,486.85 as compensation for services and $0.00 as reimbursement of expenses, and authorize immediate payment of said sums (net of the $5,000 retainer and $2.45 interest payment) for a total payment of $10,484.40.

# SUMMARY OF SERVICES RENDERED BY APPLICANT

Debtor is a Bitcoin transaction processor. The within case was precipitated by a short-term cash flow shortage caused by delays in obtaining permits to supply power to Debtor's expanded facilities located at 5300 Claus Road, Buildings 5, 21, and 49, in Modesto, California. Bitcoin is the world's first widespread digital currency. For the convenience of the Court and parties in interest, a treatise on Bitcoin is attached as Exhibit "A" to the Fernandez Decl. offered in support of Debtor's motion to use cash collateral. See Dckt. No. 10-1. Bitcoin entails peer-to-peer transfers of value permanently recorded on a global public ledger of all transactions (called the "Blockchain") to prevent double-spending.

Unlike fiat currencies, new Bitcoin is not issued by governments, central banks, commercial banks, or companies. Instead, Bitcoin is issued to transaction processors (sometimes called "miners") who contribute computer power to maintain and secure the extensive ledger (the Blockchain) described above. Specifically, the ledger is maintained and transactions are verified by using a public-key cryptography system (namely SHA-256) in which each Bitcoin account is assigned two keys—one private and one public. In a Bitcoin transaction, the payor sends the public key to the payee and "signs" it with his or her private key, which transaction is recorded, time-stamped, and added to a "block" of transactions in the Blockchain. Verifying vast numbers of such encrypted transactions by checking them against the Blockchain requires enormous computing power. Accordingly, transaction processors dedicate their highly-specialized computer servers to such work and receive newly-issued Bitcoin and small transaction fees in return. In addition to the ordinary factors present in any business, Debtor's income depends upon two external factors: (1) the cumulative processing speed of active Bitcoin transaction processors worldwide (the average global

"hashrate"); and (2) the U.S. Dollar value of Bitcoin in the worldwide marketplace, which like commodities, can be volatile.

Applicant's work added significant value to Debtor and the Estate. In particular, Applicant assisted Debtor with complying with Court-imposed reporting requirements, preparation and filing of various tax returns, and advise for certain business matters.

(1)  OPERATING REPORTS

Among other things, Applicant assisted Debtor in preparing financial statements and required Monthly Operating Reports. Applicant's efforts required review of Debtor's bookkeeping records, performing bank reconciliations, and producing reports in the form required by the Office of the United States Trustee and the Court.

In connection with this category, Applicant incurred $12,355.70 in fees, as follows:

| PROFESSIONAL | HOURS | HOURLY RATE | TOTAL |
| --- | --- | --- | --- |
| Donna E. Flanders, CPA | 130.06 | $95 | $12,355.70 |
| SUBTOTAL | 130.06 | | $12,355.70 |

(2)  TAX SERVICES

Among other things, Applicant provide advice to Debtor and his other professionals related to certain tax matters, including preparation of payroll tax returns and income tax returns, and advice regarding certain payroll matters.

In connection with this category, Applicant incurred $2,488.95 in fees, as follows:

| PROFESSIONAL | HOURS | HOURLY RATE | TOTAL |
| --- | --- | --- | --- |
| Donna E. Flanders, CPA | 5.45 | $175 | $953.75 |
| Donna E. Flanders, CPA | 11.91 | $95 | $1,131.45 |
| Ivy Au-Yung | 4.25 | $95 | $403.75 |
| SUBTOTAL | 21.61 | | $2,488.95 |

4

(3) FEE & EMPLOYMENT APPLICATIONS

Applicant conducted its initial due diligence related to its employment and reviewed its billing entries in preparation for this fee application and, with the assistance of Debtor's general bankruptcy counsel, prepared this fee application.

In connection with this category, Applicant incurred $642.20 in fees, broken down as follows:

| PROFESSIONAL | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|
| Donna E. Flanders, CPA | 6.76 | $95 | $642.20 |
| SUBTOTAL | 6.76 | | $642.20 |

## TIME EXPENDED FOR A PARTICULAR TASK

As set forth in detail in Exhibit "A" attached hereto, Applicant has provided substantial and valuable services to Debtor and the estate. Pursuant to this Court's Compensation Guidelines, Applicant has prepared the following breakdown of its services to show the time spent per professional in each of three categories during the period covered by this application.

| SERVICES | DEF ($95) | DEF ($175) | IA | TOTAL |
|---|---|---|---|---|
| 1. Operating Reports | 130.06 | 0.00 | 0.00 | 130.06 |
| 2. Tax Services | 11.91 | 5.45 | 4.25 | 21.61 |
| 3. Fee/Employment Applications | 6.76 | 0.00 | 0.00 | 6.76 |
| TOTALS | 148.73 | 5.45 | 4.25 | 158.43 |

## BREAKDOWN OF TIME SPENT BY PROFESSIONAL

The legal services provided by Applicant from March 1, 2015, through August 31, 2016, have been broken down by attorney and time expended in the chart below, as required by the Guidelines for Professionals.

5

| PROFESSIONAL | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|
| Donna E. Flanders, CPA | 5.45 | $175 | $953.75 |
| Donna E. Flanders, CPA | 148.73 | $95 | $14,129.35 |
| Ivy Au-Yung | 4.25 | $95 | $403.75 |
| TOTAL | 73.97 | | $15,486.85 |

Based upon the foregoing, Applicant has incurred $7,617.55 in fees from March 1, 2015, through August 31, 2016. After applying the $1,000 retainer, Applicant seeks a net payment of $6,617.55 for fees.

BREAKDOWN OF EXPENSES INCURRED

Applicant did not incur any expenses in this matter.

ESTABLISHMENT OF FEES

Section 330(a)(1) permits the court to award "reasonable compensation" for "actual, necessary services" rendered by a trustee, examiner or properly employed professional person. 11 U.S.C. § 330(a)(1)(A).

Resolution of fee applications are proceedings which do not exist outside of bankruptcy and, hence, are core proceedings. *Schultz v. Chandler*, 765 F.3d 945, 948 (9th Cir. 2014). Notwithstanding the dismissal, the bankruptcy court still has jurisdiction to resolve requests for professional fees. *St. Angelo v. Victoria Farms, Inc. (In re Victoria Farms, Inc.)*, 38 F.3d 1525, 1533 (9th Cir. 1994) ("A court may properly award fees even after a bankruptcy case has been dismissed."); *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 481 (9th Cir. 1989); *U.S.A. Motel Corp. v. Danning (In re U.S.A. Motel Corp.)*, 521 F.2d 117, 119 (9th Cir. 1975); *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 906 (B.A.P. 9th Cir. 1999).

In determining "reasonable compensation," the court must consider the nature, extent and value of the services, taking into account "all relevant factors," including: (1) time spent on the services (11 U.S.C. § 330(a)(3)(A)); (2) rates charged for the services (11 U.S.C. § 330(a)(3)(B)); (3) whether the services were: (i) necessary to the administration of the bankruptcy case; or (ii) beneficial at the time the services were rendered toward completion of the case (11 U.S.C. §

330(a)(3)(C)); (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed (11 U.S.C. § 330(a)(3)(D)); (5) with respect to a professional person, whether the person is board certified or has otherwise demonstrated skill and experience in the bankruptcy field (11 U.S.C. § 330(a)(3)(E)); and (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in nonbankruptcy cases (11 U.S.C. § 330(a)(3)(F)). A compensation award based on a reasonable hourly rate multiplied by the number of hours actually and reasonably expended is presumptively a reasonable fee. *Burgess v. Klenske (In re Manoa Fin. Co.)*, 853 F.2d 687, 689 (9th Cir. 1988).

Whether services were necessary to the administration of the case or beneficial to the estate is determined, not in hindsight, but objectively with reference to the time the services were rendered. 11 U.S.C. § 330(a)(3)(A) & (C); *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswid Drug Co. (In re Mednet)*, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000); *In re Circle K Corp.*, 294 B.R. 111, 125 (Bankr. D Ariz. 2003). Furthermore, § 330 does not require that the services result in a material benefit to the estate. It need only be shown that the services were reasonably likely to benefit the estate at the time the services were rendered. *Mednet*, 251 B.R. at 108; *Lobel & Opera v. U.S. Trustee (In re Auto Parts Club, Inc.)*, 211 B.R. 29, 33 (B.A.P. 9th Cir. 1997).

While a bankruptcy court has a duty to review a fee application even in the absence of an objection, the court should not, "not without evidence to the contrary, . . . change the facts initially presented to it in an otherwise complete fee application . . [and] on its own, second guess counsel in deciding whether this conference or that phone call were necessary, whose participation was appropriate, what the market generally pays for the time and services of counsel and its staff or how it reimburses certain expenses." *In re Hunt's Health Care, Inc.*, 161 B.R. 971, 981 (Bankr. N.D. Ind. 1993). As the court observed in *Hunt's Health Care*:

> Without being presented with facts beyond those contained in an otherwise sufficient fee application, the court should not reduce an attorney's hourly rate or decide what is or is not to be characterized as overhead or how certain expenses are properly billed. Neither should the court take the approach that, just because it frequently reviews a multitude of fee applications, it is somehow in a better position to determine the reasonableness of a requested fee than the market. An attorney's customary billing practices are presumptively correct. While they may not be dispositive, departing from them requires a reason and information which would

warrant the conclusion that the presumption accorded to counsel's regular practice should not be followed. Thus, the burden is on the objector "to establish a good reason why a lower rate is essential to access a 'reasonable attorney's fee.'"

> A party objecting to a fee application may not do so based on the general proposition that the fee sought is simply too much. It should go beyond this assertion to articulate a reason why and, if necessary, present evidence in support thereof. . . The objector must, at some point, identify any allegedly improper, insufficient, or excessive entries and direct the court's attention to them. The objector should also be able to identify a reason why the hourly rates involved and the time charged are not reasonable or why the market would place a lower value on counsel's labors and offer evidence supporting its position.

*Id.* at 982 (citations omitted). Professional fees should not be reduced based on "inarticulable and unsubstantiated dissatisfaction with the [professional's] efforts to economize on their time and expenses." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). In short, once an applicant has documented the hours expended and submitted evidence in support of the hours worked, "there is a strong presumption that the lodestar represents a reasonable fee." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1993). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence challenging the hours charged or facts asserted" in the application. *Id.* at 1397–1398.

Applicant's services in this matter were performed by Donna E. Flanders, CPA, and Ivy Au-Yeung, staff accountant.

<u>Donna E. Flanders</u> is a licensed certified public accountant and partner with Baudler & Flanders, CPAs, which was established in 1995. She earned a Bachelor of Science degree from University of California at Davis in 1975 and was licensed as a CPA in 1994. Ms. Flanders has experience with bankruptcy cases under Chapters 7 and 11 of the bankruptcy code. Prior to entering the accounting profession Ms. Flanders was employed by financial institutions, Home Savings and Loan and Delaware Charter Guarantee and Trust, as an appraiser, escrow officer and administrator. She is currently a member of the California Society of CPAs.

<u>Ivy Au-Yeung</u> is a staff accountant for Baudler & Flanders, CPAs. In this capacity she performs bookkeeping services for a variety of businesses and not-for-profit organizations. She is responsible for filing quarterly and year end payroll tax returns, including delinquent returns for the 2014 tax year. Ms. Yeung holds a Bachelor's of Arts in accounting from San Jose State University

and 30 years of bookkeeping and accounting experience, including 15 years with my Baudler & Flanders.

## CONCLUSION AND PRAYER

Based upon the foregoing, Applicant requests that this Court:

(a) Approve and allow compensation for the period March 1, 2015, through July 6, 2016, in the amount of $15,486.85 and reimbursement of expenses for the same period in the amount of $0.00;

(b) Authorize the Applicant to apply the $5,000 retainer and $2.45 interest payment to the approved fees;

(c) Authorize Debtor to pay the balance of the approved but unpaid fees and costs in the total amount of $10,484.40; and

(d) For such other and further relief as is proper in the premises.

DATED: September 22, 2016

BAUDLER & FLANDERS, CPAs

By: /s/ Donna E. Flanders
Donna E. Flanders
Former Accountants for Debtor,
AQH, LLC

## CERTIFICATION

I, Donna E. Flanders, have read the foregoing Application. To the best of my knowledge, information and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought is in conformity with the Guidelines for Professionals, except as specifically noted above. The compensation and expense reimbursement requested are billed at rates, and in accordance with practices, no less favorable than those customarily employed by Applicant and generally accepted by Applicant's clients.

/s/ Donna E. Flanders
DONNA E. FLANDERS